THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| BRADLEY F. PODLISKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 15-cv-2037 (RDM) |
| | ) |
| U.S. HOUSE OF REPRESENTATIVES | ) |
| SELECT COMMITTEE ON THE EVENTS | ) |
| SURROUNDING THE 2012 TERRORIST | ) |
| ATTACK IN BENGHAZI, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

**DEFENDANT U.S. HOUSE OF REPRESENTATIVES SELECT COMMITTEE ON THE
EVENTS SURROUNDING THE 2012 TERRORIST ATTACK IN BENGHAZI'S
MOTION TO DISMISS COUNTS I AND II OF THE COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant United

States House of Representatives Select Committee on the Events Surrounding the 2012 Terrorist

Attack in Benghazi ("Select Committee" or "Committee"), by undersigned counsel,[1] hereby

moves this Court to dismiss Counts I (discrimination) and II (retaliation) of the Complaint with

prejudice because (1) the Court lacks subject matter jurisdiction over these claims, and (2)

Plaintiff has failed to state claims upon which relief may be granted.[2]

---

[1]      As noted in an earlier filing, *see* ECF No. 18, the Select Committee is represented by the
Office of House Employment Counsel ("OHEC").  Solely with respect to the Constitutional
Speech or Debate arguments asserted in support of this Motion, the Select Committee is also
represented by the House Office of General Counsel ("OGC").

[2]      Counts IV and V assert claims solely against Chairman Trey Gowdy and, therefore, are
not addressed in this Motion.  This Motion also does not address Count III because, prior to
filing, the parties conferred on the viability of that claim in light of House personnel records
showing that Plaintiff received all of the retirement contributions and service credit to which he
is entitled under the law.  In an email dated January 12, 2016, Plaintiff, via counsel, stated the
following: "Plaintiff has stipulated that he intends to dismiss Count III of the Complaint with
prejudice regarding the claims brought pursuant to 38 U.S.C. 4318."  Because Plaintiff further

The grounds for this motion are set forth in the accompanying memorandum of points and authorities.  A proposed order is attached.

Respectfully submitted,

| | |
|---|---|
| *Counsel for Defendant the Select Committee on Benghazi of the U.S. House of Representatives* | *Of Counsel solely with respect to the Constitutional Speech or Debate Arguments and the Fields affidavits* |

By: /s/_____

GLORIA J. LETT (DC Bar #293365)
*Counsel*
RUSSELL H. GORE (DC Bar # 449231)
*Senior Associate Counsel*
MARK STEWART HAYES (DC Bar #976878)
*Senior Associate Counsel*

KERRY W. KIRCHER (DC Bar #386816)
*General Counsel*
WILLIAM PITTARD (DC Bar #482949)
*Deputy General Counsel*
TODD B. TATELMAN
*Senior Assistant Counsel*
ELENI M. ROUMEL
*Assistant Counsel*
ISAAC B. ROSENBERG (DC Bar #998900)
*Assistant Counsel*
KIMBERLY HAMM (DC Bar #1020989)
*Assistant Counsel*

Office of House Employment Counsel
U.S. House of Representatives
4300 O'Neill Federal Building
Washington, D.C. 20515
(202) 225-7075 (telephone)
(202) 225-7033 (facsimile)
Gloria.Lett@mail.house.gov
Russell.Gore@mail.house.gov
Mark.Hayes@mail.house.gov

Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
Kerry.Kircher@mail.house.gov
William.Pittard@mail.house.gov
Todd.Tatelman@mail.house.gov
Eleni.Roumel@mail.house.gov
Isaac.Rosenberg@mail.house.gov
Kimberly.Hamm@mail.house.gov

Dated:  February 5, 2016

---

õstipulates that he will dismiss Count III, regardless of whether the House Committee moves to dismiss Count III,ö the parties have agreed that it is unnecessary to respond to Count III, and the Select Committee declines to do so in the interests of efficiency and judicial economy.

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| BRADLEY F. PODLISKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          Case No. 15-cv-2037 (RDM) |
| | ) |
| U.S. HOUSE OF REPRESENTATIVES | ) |
| SELECT COMMITTEE ON THE EVENTS | ) |
| SURROUNDING THE 2012 TERRORIST | ) |
| ATTACK IN BENGHAZI, *et al.*, | ) |
| | ) |
| Defendants. | ) |

_____)

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant United States House of Representatives Select Committee on the Events

Surrounding the 2012 Terrorist Attack in Benghazi, by undersigned counsel, submits this

Memorandum of Points and Authorities in support of its Motion to Dismiss Counts I and II of

the Complaint.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................. 1

II.   BACKGROUND ............................................................................................ 3

III.  ARGUMENT ................................................................................................ 7

    A.  The Speech or Debate Clause Requires Dismissal of Plaintiff's
        Discrimination and Retaliation Claims (Counts I and II) .................................. 7

        1.  A Brief Overview of the Speech or Debate Clause ...................................... 7

        2.  In the Employment Context, the Speech or Debate Clause Bars
             Challenges to Legislative Branch Employment Decisions Taken
             Because of the Plaintiff's Performance or Non-Performance
             of Legislative Activities ........................................................................... 12

        3.  Because the Select Committee's Decision to End Plaintiff's Employment
             Was a Legislative Act, It Is Immune from Challenge under the
             Speech or Debate Clause .......................................................................... 17

        4.  Alternatively, the Non-Evidentiary Use and Non-Disclosure Aspects
             of the Speech or Debate Clause Privilege Require the Dismissal of
             Counts I and II ....................................................................................... 18

    B.  Counts I and II Should Be Dismissed Because Plaintiff Alleges that
        Military Animus Was Not the But-For/Sole Cause of the Alleged
        USERRA Violations ...................................................................................... 22

        1.  USERRA – as Incorporated by the CAA – Requires a Plaintiff
             to Show that Military Status or Service Was the But-For Cause
             of the Adverse Employment Actions Alleged ........................................... 24

        2.  The History of Congress's Amendments to USERRA and the CAA
             Confirms that the But-For Standard Applies under the CAA .................... 29

        3.  But-For Causation Means that the Unlawful Motive Must Be the
             Sole Cause of the Adverse Employment Action ........................................ 32

        4.  Plaintiff's Mixed Motive Allegations Foreclose Liability under the
             But-For/Sole Cause Standard .................................................................... 35

i

C.  Count II Must Be Dismissed for Failure to State a Plausible Claim
of Retaliation ................................................................................................. 35

    1.  Because the Select Committee's Separation Decision Indisputably
Predated Plaintiff's Alleged USERRA-Protected Activities, that
Decision Could Not Have Been Caused by His Alleged
USERRA-Protected Activities ................................................................. 37

    2.  Plaintiff's Allegations Demonstrate that the Select Committee Had No
Knowledge of His Alleged Protected Activities when the Termination
of His Employment Allegedly Became Effective on June 29, 2015 .......... 40

IV.  CONCLUSION ...................................................................................................... 44

# TABLE OF AUTHORITIES

## Cases

*Anyaso v. U.S. Capitol Police,*
  39 F. Supp. 3d 34 (D.D.C. 2014) ................................................................. 32, 33, 35, 39

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. 36

*Baloch v. Kempthorne,*
  550 F.3d 1191 (D.C. Cir. 2008) ................................................................................ 24

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 38-39

*Belt v. U.S. Dep't of Labor,*
  163 F. App'x 382 (6th Cir. 2006) .............................................................................. 38

*Bradshaw v. Office of Architect of Capitol,*
  856 F. Supp. 2d 126 (D.D.C. 2012) ...................................................................... 37-38

*Broderick v. Donaldson,*
  437 F.3d 1226 (D.C. Cir. 2006) ................................................................................ 42

*Brown & Williamson Tobacco Corp. v. Williams,*
  62 F.3d 408 (D.C. Cir. 1995) ............................................................................. passim

*Browning v. Clerk, U.S. House of Representatives,*
  789 F.2d 923 (D.C. Cir. 1986) ....................................................................... 12, 13, 14

*Burrage v. United States,*
  __ U.S. __, 134 S. Ct. 881 (2014) .................................................................... 29, 35

*Butler v. White,*
  67 F. Supp. 3d 59 (D.D.C. 2014) .............................................................................. 33

*Carter v. Greenspan,*
  304 F. Supp. 2d 13 (D.D.C. 2004) ............................................................................ 39

*Central Intelligence Agency v. Sims,*
  471 U.S. 159 (1985) ................................................................................................... 5

*Clark Cnty. Sch. Dist. v. Breeden,*
  532 U.S. 268 (2001) .................................................................................................. 43

*Connell v. Bank of Bos.*,
  924 F.2d 1169 (1st Cir. 1991) .................................................................... 43

*Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*
  515 F.2d 1341 (D.C. Cir. 1975) .................................................................. 21

*Davis v. Passman*,
  442 U.S. 228 (1979) ................................................................... 12-13, 14

*Davis v. Passman*,
  544 F.2d 865 (5th Cir. 1977) *rev'd, on other grounds,* 571 F.2d 793
  (5th Cir. 1978) (en banc), *rev'd,* 442 U.S. 228 (1979) ........................... 12-13

*Del. State Coll. v. Ricks*,
  449 U.S. 250 (1980) .......................................................................... 37, 38

*Dennis v. Sparks*,
  449 U.S. 24 (1980) .................................................................................. 12

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
  No. CV 10-476 (RMC), 2015 WL 5726601 (D.D.C. Sept. 30, 2015) ........................ 40

*Doe v. McMillan*,
  412 U.S. 306 (1973) ..................................................................... 8, 9, 11, 21

*Dombrowski v. Eastland*,
  387 U.S. 82 (1967) .................................................................................. 11

*DuBerry v. District of Columbia*,
  582 F. Supp. 2d 27 (D.D.C. 2008) ........................................................... 37

*Dye v. United States*,
  516 F. Supp. 2d 61 (D.D.C. 2007) ........................................................... 17

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ..................................................................... passim

*Erby v. United States*,
  424 F. Supp. 2d 180 (D.D.C. 2006) ........................................................ 17

*Ey v. Office of the Chief Admin. Officer of the U.S. House of Representatives*,
  967 F. Supp. 2d 337 (D.D.C. 2013) ...................................................... 23-24

*Farah v. Esquire Magazine*,
  736 F.3d 528 (D.C. Cir. 2013) ............................................................... 23

*Fields v. Office of Eddie Bernice Johnson,*
  459 F.3d 1 (D.C. Cir. 2006) (en banc) .............................................................. passim

*Flaherty v. Metromail Corp.,*
  235 F.3d 133 (2d Cir. 2000) ................................................................................. 38

*Floyd v. Jackson Lee,*
  968 F. Supp. 2d 308 (D.D.C. 2013) ..................................................................... 18

*Galdieri–Ambrosi v. Nat'l Realty & Dev. Corp.,*
  136 F.3d 276 (2d Cir. 1998) ................................................................................. 42

*Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.,*
  No. 12-CV-2285 ADS ARL, 2014 WL 5822628 (E.D.N.Y. Nov. 6, 2014) ................ 38

*Gonda v. Donahoe,*
  79 F. Supp. 3d 284 (D.D.C. 2015) ....................................................................... 33

*Gov't of the Virgin Islands v. Lee,*
  775 F.2d 514 (3d Cir. 1985) ................................................................................. 10

*Gravel v. United States,*
  480 U.S. 606 (1972) ......................................................................................... passim

*Gross v. FBL Financial Services, Inc.,*
  557 U.S. 167 (2009) ......................................................................................... passim

*Helstoski v. Meanor,*
  442 U.S. 500 (1979) ................................................................................................ 8

*Herling v. N.Y.C. Dep't of Educ.,*
  No. 13-CV-5287, 2014 WL 1621966 (E.D.N.Y. Apr. 23, 2014) ................................ 38

*Howard v. Office of the Chief Administrative Officer,*
  720 F.3d 939 (D.C. Cir. 2013) ........................................................................ 16, 18

*Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Employees*
  *of Library of Cong., Inc. v. Billington,*
  737 F.3d 767 (D.C. Cir. 2013) ......................................................................... 35-36

*Jerome Stevens Pharms., Inc. v. FDA,*
  402 F.3d 1249 (D.C. Cir. 2005) ............................................................................ 17

*Johnson v. Maddox,*
  230 F. Supp. 2d 1 (D.D.C. 2002), *aff'd sub nom.*, *Johnson v. Williams,*
  117 F. App'x 769 (D.C. Cir. 2004) ................................................................. 37

*Johnson v. Portfolio Recovery Assocs., LLC,*
  682 F. Supp. 2d 560 (E.D. Va. 2009) .......................................................... 41-42

*Kaempe v. Myers,*
  367 F.3d 958 (D.C. Cir. 2004) ....................................................................... 40

*Kaufman v. Perez,*
  745 F.3d 521 (D.C. Cir. 2014) ....................................................................... 32

*Kaur v. Chertoff,*
  489 F. Supp. 2d 52 (D.D.C. 2007) ................................................................. 17

*Kennedy v. Gray,*
  83 F. Supp. 3d 385 (D.D.C. 2015), *reconsideration denied sub nom,*
  *Kennedy v. District of Columbia*, 2015 WL 7274027
  (D.D.C. Nov. 16, 2015) .................................................................................. 43

*Kilbourn v. Thompson,*
  103 U.S. 168 (1880) .................................................................................. 8, 10

*Kline v. Archuleta,*
  309 F.R.D. 91 (D.D.C. 2015) ...................................................................... 36-37

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ....................................................................................... 17

*Leisek v. Brightwood Corp.,*
  278 F.3d 895 (9th Cir. 2002) ......................................................................... 29

*Leiterman v. Johnson,*
  60 F. Supp. 3d 166 (D.D.C. 2014) .............................................................. 17-18

*McGrain v. Daugherty,*
  273 U.S. 135 (1927) ....................................................................................... 10

*McSurely v. McClellan,*
  553 F.2d 1277 (D.C. Cir. 1976) (en banc)................................................... 10, 21

*Miller v. Transam. Press, Inc.,*
  709 F.2d 524 (9th Cir. 1983) ..................................................................... 10, 12

*MINPECO, S.A. v. Conticommodity Serv., Inc.*,
  844 F.2d 856 (D.C. Cir. 1988) .......................................................................... 11, 12

*Mitchell v. Baldrige*,
  759 F.2d 80 (D.C. Cir. 1985) ................................................................................. 40

*Morales v. Gotbaum*,
  42 F. Supp. 3d 175 (D.D.C. 2014) ........................................................................ 33

*Monroe v. Standard Oil, Co.,*
  452 U.S. 549 (1981) ...........................................................................29, 34, 35

*Niedermeier v. Office of Max S. Baucus*,
  153 F. Supp. 2d 23 (D.D.C. 2001) ........................................................................ 14

*P & V Enters. v. U.S. Army Corps of Eng'rs*,
  466 F. Supp. 2d 134 (D.D.C. 2006) ...................................................................... 17

*Paulk v. Architect of the Capitol*,
  79 F. Supp. 3d 82 (D.D.C. 2015) .......................................................................... 33

*Pentagen Techs. Int'l, Ltd. v. Comm. on Appropriations of*
  *House of Representatives,* 20 F. Supp. 2d 41 (D.D.C. 1998),
  *aff'd* 194 F. 3d 174 (D.C. Cir. 1999) (per curiam)...................................................... 12

*Peters v. District of Columbia*,
  873 F. Supp. 2d 158 (D.D.C. 2012) ...................................................................... 42

*Ponce v. Billington*,
  679 F.3d 840 (D.C. Cir. 2012) .............................................................................. 33

*Porter v. Natsios*,
  414 F.3d 13 (D.C. Cir. 2005) ...........................................................................32-33

*Ragsdale v. Holder*,
  668 F. Supp. 2d 7 (D.D.C. 2009) .......................................................................... 17

*Ramseur v. Perez*,
  962 F. Supp. 2d 21 (D.D.C. 2013) ........................................................................ 39

*Rattigan v. Holder*,
  982 F. Supp. 2d 69 (D.D.C. 2013), *aff'd*, 780 F.3d 413 (D.C. Cir. 2015),
  *petition for cert. filed*, 84 U.S.L.W. 3242 (U.S. Oct. 26, 2015) (No. 15-530) .............. 33

*Richardson v. Am. Sec. Programs, Inc.*,
  59 F. Supp. 3d 195 (D.D.C. 2014) ........................................................................ 22

*Riggiladez v. Harvey*,
   510 F. Supp. 2d 106 (D.D.C. 2007) ................................................................ 39, 43

*Sawyer v. Swift & Co.*,
   836 F.2d 1257 (10th Cir. 1988) ............................................................................ 34

*Scott v. Office of Alexander*,
   522 F. Supp. 2d 262 (D.D.C. 2007) ...................................................................... 18

*Sheehan v. Dep't of Navy*,
   240 F.3d 1009 (Fed. Cir. 2001) ............................................................................ 29

*Sitar v. Ind. Dep't of Transp.*,
   344 F.3d 720 (7th Cir. 2003) ............................................................................... 42

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ............................................................................ 36

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011) ............................................................................................. 25

*Tavoulareas v. Piro*,
   527 F. Supp. 676 (D.D.C. 1981) .......................................................................... 10

*Tenney v. Brandhove*,
   341 U.S. 367 (1951) ........................................................................................... 7-8

*Turner v. Shinseki*,
   824 F. Supp. 2d 99 (D.D.C. 2011) ....................................................................... 38

*Trawick v. Hantman*,
   151 F. Supp. 2d 54 (D.D.C. 2001), *aff'd*, No. 01-5309,
   2002 WL 449777 (D.C. Cir. Feb. 21, 2002) ......................................................... 39

*United States v. Brewster*,
   408 U.S. 501 (1972) ............................................................................... 11, 15, 21

*United States v. Doe*,
   455 F.2d 753 (1st Cir. 1972) ................................................................................. 9

*United States v. Helstoski*,
   442 U.S. 477 (1979) ............................................................................... 11, 12, 13

*United States v. Johnson*,
   383 U.S. 169 (1966) .................................................................................. passim

*United States v. Peoples Temple of the Disciples of Christ*,
    515 F. Supp. 246 (D.D.C. 1981) ................................................................ 12

*United States v. Rayburn House Office Bldg.*,
    497 F.3d 654 (D.C. Cir. 2007) ........................................................... 11, 12

*University of Texas Southwestern Medical Center v. Nassar*,
    __ U.S__, 133 S. Ct. 2517 (2013) ................................................ 28, 29, 32, 33

*Vahey v. Gen. Motors Co.*,
    985 F. Supp. 2d 51 (D.D.C. 2013) ............................................................ 34

*Walker v. Jones*,
    733 F.2d 923 (D.C. Cir. 1984) ........................................................... 12, 13

*Waterhouse v. District of Columbia*,
    124 F. Supp. 2d 1 (D.D.C. 2000) ............................................................ 22

*Welzel v. Bernstein*,
    436 F. Supp. 2d 110 (D.D.C. 2006) ......................................................... 39

## Constitution

U.S. Const. art. I, § 6, cl. 1 (Speech of Debate Clause) ...........................................passim

## Statutes

2 U.S.C. § 1316 ........................................................................... 26-27, 32

2 U.S.C. § 1317 ............................................................................ 30, 32

2 U.S.C. § 1381 ................................................................................ 26

2 U.S.C. § 1384 ............................................................................. 26-27

2 U.S.C. § 1413 ................................................................................ 13

2 U.S.C. § 4108 ................................................................................ 40

38 U.S.C. § 2021 ............................................................................... 34

38 U.S.C. § 4311 ......................................................................... passim

38 U.S.C. § 4323 ............................................................................... 26

38 U.S.C. § 4334 ............................................................................... 26

Pub. L. No. 103-353, 108 Stat. 3149 (1994) ................................................................ 29

Pub. L. No. 104-1, 109 Stat. 3 (1995) ......................................................................... 30

Pub. L. No. 104-275, 110 Stat. 3322 (1996) ............................................................... 30

Pub. L. No. 111-275, 124 Stat. 2864 (2010) ............................................................... 31

**House Resolutions**

H. Res. 567 (113th Cong.) ....................................................................................... 3, 5

H. Res. 5 (114th Cong.) ................................................................................................ 5

**Regulations**

20 C.F.R. § 1002.22 .................................................................................................... 27

20 C.F.R. § 1002.23 .................................................................................................... 27

**Rules**

Fed. R. Civ. P. 12 ............................................................................................... passim

Fed. R. Evid. 201 ....................................................................................................... 23

**Legislative History**

S. Rep. 104-371 (1996) .............................................................................................. 30

**Other Authorities and Materials**

Committee on Standards of Official Conduct, House Ethics Manual (2008 ed.),
http://ethics.house.gov/sites/ethics.house.gov/files/documents/2008_House_Ethics_Manual.pdf .......... 5-6

Office of Compliance: Notice of Proposed Rulemaking, *New Proposed Regulations
Implementing Certain Substantive Employment Rights and Protections for Veterans,
As Required by 2 US.C. 1316, Congressional Accountability Act of 1995,
as amended ("CAA"),* 154 CONG. REC. S3188-03 (daily ed. April 21, 2008),
http://www.compliance.gov/sites/default/files/rulemaking/041608_userra_preamble.pdf .......... 26-27, 31

Index to Office of Compliance: Notice of Proposed Rulemaking, *New Proposed
Regulations Implementing Certain Substantive Employment Rights and Protections
for Veterans, As Required by 2 US.C. 1316, Congressional Accountability Act of 1995,
as amended ("CAA"),*
http://www.compliance.gov/sites/default/files/rulemaking/041608_numbering_index.pdf ................... 27

*State of the Union with Jake Tapper – "Ex Staffer: Benghazi Committee targeted Hillary Clinton"* (CNN television broadcast Oct. 11, 2015),
http://www.cnn.com/videos/politics/2015/10/11/bradley-podliska-benghazi-committee-investigation-hillary-clinton-dnt-sotu.cnn ................................................................................................... 23

Statement of Disbursements of the House:  July 1, 2015 to September 30, 2015, part 3, http://disbursements.house.gov/2015q3/2015q3_vol3.pdf ............................................. 7, 40

## I. <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

The Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi ("Select Committee" or "Committee") was established by a resolution of the House of Representatives in May 2014.  Its purpose is to investigate the attacks on United States facilities in Benghazi, Libya and related matters and to issue a final report of its findings to the House. The ultimate authority to carry out these legislative activities rests with Representative Trey Gowdy, the Select Committee's Chairman, and the eleven other Members of Congress who serve on the Committee.

Plaintiff Bradley Podliska ("Plaintiff" or "Mr. Podliska") was hired in September 2014 as a non-supervisory Investigator for the Committee's Majority Staff.  As alleged in the Complaint, however, Plaintiff and his supervisors soon found themselves in dispute over a number of issues, including Plaintiff's admitted refusal "to go along with" the Committee's investigative focus starting in March 2015.  *See, e.g.*, Compl. ¶¶ 26, 37, 38, 41.[1]  The Committee's management made several attempts to address these issues, but those efforts did not succeed.  *E.g., id.* ¶¶ 37, 38.  Plaintiff was eventually called into a meeting on June 26, 2015 and given the choice of resigning or being terminated.  *Id.* ¶ 47.

Reading these and other allegations in the Complaint, one thing becomes abundantly clear.  Plaintiff and his supervisors simply did not see eye to eye on the direction of the Select Committee's investigation or Plaintiff's role in setting that direction.  These same allegations, however, reveal why Plaintiff cannot prevail on his claims in Counts I and II of the Complaint in

---

[1]     To the extent this Motion is brought under Federal Rule of Civil Procedure 12(b)(6), the Court must generally accept the factual allegations of the Complaint as true, even though many of those allegations are not rooted in reality.  Nevertheless, the Select Committee emphatically denies a number of Plaintiff's allegations, including, but not limited to, his claims that the Select Committee acted with unlawful animus in its employment decisions and that its investigation has and/or had an improper "agency-centric" focus on the State Department and/or former Secretary of State Hillary Clinton.  *See also infra* note 13.

which he alleges discrimination and retaliation in violation of the Uniformed Services

Employment and Reemployment Rights Act of 1994 ("USERRA"), as incorporated by the

Congressional Accountability Act of 1995 ("CAA").[2]

As a threshold matter, Plaintiff's CAA claims are barred by the Speech or Debate Clause

of the U.S. Constitution.  That clause provides Members of Congress, Congressional committees,

and Congressional aides with (1) immunity from suit for actions predicated on legislative

activities, (2) protection from having their legislative activities used as evidence against them,

and (3) privilege against being questioned or compelled to disclose information about their

legislative activities.  As further explained below, Plaintiff's allegations make it clear that his

CAA claims will necessarily require an inquiry into the protected legislative activities of the

Select Committee.  Because that inquiry is forbidden by the Speech or Debate Clause, Counts I

and II must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and, alternatively,

Rule 12(b)(6).

Furthermore, Plaintiff's CAA claims are subject to dismissal under Rule 12(b)(6) for two

additional reasons.  First, Plaintiff admits that, in addition to his supervisors' alleged military

animus, one of the motivating factors for the alleged adverse actions was Plaintiff's refusal to

"go along with" the Select Committee's investigative focus.  Plaintiff's claims are, therefore,

based on a mixed motive theory of liability.  Under the CAA, however, such a mixed motive

claim is not available.  Rather, a USERRA plaintiff suing under the CAA must establish that

military animus was the *sole reason* for the adverse action.  Because Plaintiff's version of events

shows that he can never meet this burden, Counts I and II must be dismissed with prejudice.

---

[2]      As explained in note 2 of the Select Committee's Motion to Dismiss, this memorandum
addresses only Counts I and II of the Complaint.

Count II – the retaliation claim – should also be dismissed for a second reason. Plaintiff alleges that he did not engage in USERRA-protected activities until *after* he was informed of the Select Committee's separation decision (which is the only adverse action alleged in support of this claim). Plaintiff's own chronology thus establishes that his alleged protected activities could not have been the cause of the separation decision, and it will be logically impossible for Plaintiff to succeed on his retaliation claim.

## II.  BACKGROUND

The Select Committee. The Select Committee is vested, pursuant to H. Res. 567 (113th Cong.) and H. Res. 5 (114th Cong.), with general investigative and oversight responsibilities relating to the September 11, 2012 attacks on United States facilities in Benghazi, Libya. Those responsibilities include "conduct[ing] a full and complete investigation and study and issu[ing] a final report" regarding several discrete areas of inquiry, including but not limited to "internal and public executive branch communications about the attacks on United States facilities in Benghazi, Libya." *See* H. Res. 567 (113th Cong.); H. Res. 5 (114th Cong.) (reauthorizing Select Committee); Compl. ¶ 12; Aff. Philip G. Kiko ("Kiko Aff.") ¶ 4 (attached hereto as Ex. 1).[3]

Plaintiff's Hiring by the Select Committee. Shortly after the Select Committee was formed, the Select Committee's Chairman, the Honorable Trey Gowdy, appointed Philip Kiko as the Committee's Staff Director. *See* Compl. ¶ 13; Kiko Aff. ¶ 2. Mr. Kiko spent the summer following the Select Committee's formation finding staffers to fill key positions, with the

---

[3]     Consistent with the D.C. Circuit's guidance in *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 16-17 (D.C. Cir. 2006) (en banc), the Select Committee attaches to this memorandum affidavits from certain of Plaintiff's superiors on the Select Committee, Staff Director and General Counsel Philip Kiko and Deputy Staff Director Christopher Donesa. As explained below, *see* Argument Section III.A., proceeding on Plaintiff's claims against the Select Committee necessarily would require an inquiry into the protected legislative activities of the Committee. Because that inquiry is forbidden by the Speech or Debate Clause, Counts I and II must be dismissed under the standards articulated by the D.C. Circuit in *Fields* and its progeny.

ultimate hiring decision made by the Chairman.  *See* Compl. ¶ 15; Kiko Aff. ¶ 6.  In June 2014,

Plaintiff Bradley Podliska sent Mr. Kiko his resume.  Kiko Aff. ¶ 6.  Mr. Kiko was interested in

the candidacy of Mr. Podliska, whose resume reflected that he had served in intelligence analyst

positions for many years with a federal defense agency and the U.S. Air Force Reserve.  *Id.* ¶ 7;

*see also* Compl. ¶ 10.  Mr. Kiko made arrangements to interview Mr. Podliska when Mr.

Podliska returned from his Air Force reserve duty in Germany.  Kiko Aff.  ¶ 6.

      <u>Plaintiff's Job Responsibilities and Job Performance</u>.  In September 2014, Mr. Podliska

began working for the Select Committee as an Investigator.  Compl.  ¶ 16.  Plaintiff's assigned

investigative job responsibilities included, among other things, assisting with Select Committee

witness interview preparation (such as drafting questions for witnesses and ensuring that relevant

materials are submitted in advance), providing input on document requests to agencies to obtain

information pertinent to the Select Committee's investigation, and reviewing documents to

support the investigative focus of the Select Committee.  Kiko Aff. ¶ 8.

      Eventually, Select Committee management began to have concerns about Plaintiff's

performance of his investigative duties and his professional judgment generally.  *Id.* ¶ 9; Aff.

Christopher A. Donesa ("Donesa Aff.") ¶¶ 6-9 (attached hereto as Ex. 2).  The Complaint

confirms that these concerns were well-founded, and reveals that Plaintiff substituted his own

judgment for that of his superiors.  For example,

- Plaintiff's Complaint repeatedly references "Plaintiff's investigation," "his investigations," and "his comprehensive, thorough, and objective investigation," as though he was authorized to conduct an investigation divorced from the directives of his superiors.  Compl. ¶¶ 23, 26, 32; *see also id.* ¶ 38.

- Plaintiff admits that he was "unwilling to go along" with the Select Committee's purported investigative focus.  *Id.* ¶ 26.

- Plaintiff admits that he was reprimanded for assigning work to interns that his superiors believed was improper.  *Id.* ¶ 35.

4

- Plaintiff admits that he was reprimanded for failing to recognize potentially classified information and forwarding that information on an unclassified system, but dismisses those concerns by denigrating the Select Committee's Security Manager, who was tasked by Plaintiff's superior to investigate the incident, as "poorly trained" and "a novice." *Id.* ¶¶ 41-43.

Plaintiff's Complaint further reveals that he was repeatedly counseled by his superiors for the deficiencies in his investigative work. For example, Plaintiff alleges that Mr. Kiko told him that his work product reflected a stark disconnect with the Select Committee's fact-based work and objectives, as directed by his superiors, by bluntly explaining, "You have no idea what we're doing here." *Id.* ¶ 24; *see also id.* ¶ 37. And as noted above, Plaintiff admits that he was reprimanded for his unauthorized use of Select Committee interns, *id.* ¶¶ 35-37, as well as his failure to protect sensitive information by placing it on an unclassified system. *Id.* ¶ 41.[4]

In addition to his admission that he did not satisfy his superiors in his performance of his investigative duties, Plaintiff further admits that they doubted his judgment in other ways as well. For example, Plaintiff invited Select Committee Majority-side staff to attend a privately-sponsored event that he was not the sponsor of and that in no way related to any entity or issue within the Select Committee's investigative scope. *See id.* ¶ 27. Plaintiff's attempt to influence other staff to attend a privately-sponsored reception that in no way related to their official duties, and to which they were not invited, was considered by his superiors to be improper and for that reason he was counseled by Mr. Kiko. *See id.*; Kiko Aff. ¶ 9.[5]

---

[4]     The Select Committee is specifically authorized to review such information in its investigation, *see* H. Res. 567 (113th Cong.), and Select Committee staffers were expected to handle "sources and methods" information appropriately. *See* Donesa Aff. ¶¶ 13-14. "Sources and methods" represent "the heart of all intelligence operations." *Central Intelligence Agency v. Sims*, 471 U.S. 159, 167 (1985).

[5]     The House Ethics Manual provides that invitations to such events can only be accepted when, *inter alia*, "the invitation came from the sponsor of the event" and "the attendance of the Member or staff person is related to his or her official duties." Committee on Standards of

The Circumstances of Plaintiff's Departure from the Select Committee.  In light of Plaintiff's continual lapses of judgment, it was decided that Plaintiff should no longer remain on the Select Committee staff, and this recommendation was accepted by Chairman Gowdy.  Kiko Aff. ¶ 13.  This decision was a result of Plaintiff's repeated lapses in judgment, including Plaintiff's unwillingness to perform – or inability to understand – the Select Committee's investigation, his apparent inability to properly handle potentially classified information, and other professional deficiencies.  *Id.* ¶¶ 9-13; *see also* Compl. ¶¶ 23, 26, 27, 35, 37, 38, 41. Plaintiff alleges that other employees engaged in similarly improper behavior but were not subjected to the same employment action.  *See* Compl. ¶¶ 27, 46.  As Mr. Kiko explains in his Affidavit, however, the recommendation to end Plaintiff's service on the Committee was not the result of a single action, but the culmination of several missteps that reflected Plaintiff's "ongoing poor judgment."  Kiko Aff. ¶ 13.

On June 26, 2015, Plaintiff met with Messrs. Kiko and Donesa.  He was informed of the Select Committee's decision and was given the option to resign (after he had worked on the Select Committee for nearly a year, several months after his first military leave, and a full month after returning from a second military leave).  *Id.* ¶ 14; Donesa Aff. ¶ 18; *see also* Compl. ¶ 47.[6] Plaintiff declined on June 26 to accept the offer to resign.  Kiko Aff. ¶ 14; Donesa Aff. ¶ 18.  On June 29, Plaintiff reported to work; because he was still negotiating the terms of his separation

---

Official Conduct, House Ethics Manual (2008 ed.), at 41-42 (providing guidance on House Rule 25, clause 5(a)(4)(A), which provides that attendance at such events may be permitted if "appropriate to the performance of the official duties . . . of the . . . employee of the House"). The House Ethics Manual is located on the Ethics Committee's website at: http://ethics.house.gov/sites/ethics.house.gov/files/documents/2008_House_Ethics_Manual.pdf.

[6]      Plaintiff alleges that he informed his superiors that he was obligated to complete 39 days of Air Force reserve duty.  Compl. ¶ 18.  In late May 2015, when he returned from his second leave, he had completed 38 of the 39 days.  *Id.* ¶¶ 20, 29.

with the Select Committee, he was asked to leave.  Donesa Aff. ¶ 19.  On July 12, Plaintiff

tendered his resignation letter to the Select Committee.  Kiko Aff. ¶ 16; Donesa Aff.

¶ 20.  Plaintiff was paid by the Select Committee through August 1, 2015.  *See* Statement of

Disbursements of the House:  July 1, 2015 to September 30, 2015, part 3, at 2146, *available at*

http://disbursements.house.gov/2015q3/2015q3_vol3.pdf.

### III.  ARGUMENT

**A.      The Speech or Debate Clause Requires Dismissal of Plaintiff's Discrimination
and Retaliation Claims (Counts I and II).**

Counts I (discrimination) and II (retaliation) should be dismissed with prejudice because

"the challenged . . . personnel decision was taken because of plaintiff's performance of conduct

protected by the Speech or Debate Clause."  *Fields*, 459 F.3d at 16.  In explaining why this is so,

we proceed as follows.  We first provide an overview of the relevant constitutional framework,

both generally (subpart 1) and in the context of legislative branch employment actions (subpart

2).  We then explain why, in light of *Fields*, the Speech or Debate Clause requires dismissal of

Plaintiff's claim that he was discharged and retaliated against in violation of the CAA (subparts 3

and 4).

**1.      A Brief Overview of the Speech or Debate Clause.**

a.  History and Purpose of the Clause.  The Speech or Debate privilege is rooted

in the epic struggle for parliamentary independence in 16th- and 17th-century England.  *See*

*United States v. Johnson*, 383 U.S. 169, 178 (1966); *Tenney v. Brandhove*, 341 U.S. 367, 372

(1951) ("As Parliament achieved increasing independence from the Crown, its statement of the

privilege grew stronger. . . .  In 1689, the Bill of Rights declared in unequivocal language:  'That

the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or

questioned in any Court or Place out of Parliament.'").  As a result of the English experience,

"[f]reedom of speech and action in the legislature was taken as a matter of course" by the

Founders, and reflected in the Speech or Debate Clause of our Constitution.  *Id.*

> The purpose of the Clause
>
>> is to insure that the legislative function the Constitution allocates to Congress may be performed independently.
>>
>> . . . .
>>
>> [T]he "central role" of the Clause is to "prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary. . . ."

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (quoting *Gravel v. United States*,

408 U.S. 606, 617 (1972)).  "In the American governmental structure the clause serves the

additional function of reinforcing the separation of powers so deliberately established by the

Founders." *Johnson*, 383 U.S. at 178.

Because "the guarantees of th[e Speech or Debate] Clause are vitally important to our

system of government," they "are entitled to be treated by the courts with the sensitivity that

such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  Accordingly,

the Supreme Court has "[w]ithout exception . . . read the Speech or Debate Clause broadly to

effectuate its purposes." *Eastland*, 421 U.S. at 501; *see also Doe v. McMillan*, 412 U.S. 306, 311

(1973); *Gravel*, 408 U.S. at 624; *Johnson*, 383 U.S. at 179; *Kilbourn v. Thompson*, 103 U.S. 168,

204 (1880).

This broad reading has included extending the three protections of the Clause, discussed

below in subpart 1.c., beyond the criminal context where it originated to the private civil context

because a "private civil action . . . creates a distraction and forces Members to divert their time,

energy, and attention from their legislative tasks." *Eastland*, 421 U.S. at 503; *see also Brown &*

*Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) ("The Speech or

Debate Clause applies in civil cases as well as criminal prosecutions. . . .  The Clause states, after all, that Members shall not be called to account "in any other Place"—not just a criminal court.").

In similar fashion, the Supreme Court held in *Gravel* that the protections of the Clause apply "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself."  408 U.S. at 618; *see also id*. at 616 (in applying the Speech or Debate Clause, "a Member and his aide are to be "treated as one"" (quoting *United States v. Doe*, 455 F.2d 753, 761 (1st Cir. 1972)).  This is so because "it is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants." *Id*. at 616; *see also Eastland*, 421 U.S. at 507 ("We draw no distinction between the Members and the Chief Counsel.").

In this case, Messrs. Kiko and Donesa were functioning, for *Gravel* purposes, as aides to the Select Committee.  They are, therefore, entitled to assert the privilege on the Select Committee's behalf.  *Fields*, 459 F.3d at 16 (acknowledging that aides are entitled to assert Speech or Debate Clause privilege in context of CAA cases); *see also* Kiko Aff. ¶ 3 (confirming that Chairman Gowdy has authorized Mr. Kiko to assert the privilege on behalf of the Select Committee); Donesa Aff. ¶ 3 (same).

　　　b. <u>Scope of the Clause</u>.  The three protections afforded by the Speech or Debate Clause, discussed in the next section, apply to all activities "within the "legislative sphere,"" *McMillan*, 412 U.S. at 312 (quoting *Gravel*, 408 U.S. at 624-25), which includes all activities that are

> "an integral part of the deliberative and communicative processes by which Members participate in committee and House

> proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."

*Eastland*, 421 U.S. at 504 (quoting *Gravel*, 408 U.S. at 625).

The courts have broadly construed the concept of "legislative activity" to include much more than words spoken in debate.  The "cases have plainly not taken a literalistic approach in applying the privilege. . . .  Committee reports, resolutions, and the act of voting are equally covered."  *Gravel*, 408 U.S. at 617.  Similarly, committee investigations and hearings have been held to be activities within the legislative sphere, *Eastland*, 421 U.S. 491, as has the general collecting of information in furtherance of legislative responsibilities because "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change."  *Id*. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)).[7]

Not surprisingly, the courts have also made clear that protected "legislative activities" encompass preparatory activities that are a normal, routine, and common sense part of any hearing, speech, meeting, information-gathering effort, or other legislative activity.  *See, e.g.*,

---

[7]      Protected information-gathering can be informal as well as formal.  *See, e.g.*, *Brown & Williamson*, 62 F.3d 408 (documents delivered to committee by private citizen, at citizen's own initiative, protected); *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc) ("[A]cquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the [Speech or Debate] privilege so that congressmen are able to discharge their constitutional duties properly."); *Miller v. Transam. Press, Inc*., 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the things generally done in a session of the House, concerning matters within the 'legitimate legislative sphere.' [For example, c]onstituents may provide data to document their views when urging the Congressman to initiate or support some legislative action.") (quotation marks and citations omitted); *Gov't of the Virgin Islands v. Lee*, 775 F.2d 514, 520-21 (3d Cir. 1985) (fact-finding by individual legislator protected); *Tavoulareas v. Piro*, 527 F. Supp. 676, 680 (D.D.C. 1981) ("[A]cquisition of information by congressional staff, whether formally or informally, is an activity within the protective ambit of the speech or debate clause.").

*Gravel*, 408 U.S. at 628-29 (describing scope of appropriate protective order relating to matters privileged under the Speech or Debate Clause as including acts "performed by the [Member], or by his aides in the course of their employment, in preparation for [ ] subcommittee hearing" and "concerning communications between the [Member] and his aides during the term of their employment and related to . . . any other legislative act of the [Member])"; *Johnson*, 383 U.S. at 173-76 (describing communications related to member's speech and concluding that their admission at trial resulted in a "constitutional infirmity infecting th[e] prosecution"); *MINPECO, S.A. v. Conticommodity Serv., Inc.*, 844 F.2d 856, 861 (D.C. Cir. 1988) (recognizing that preparation of a statement in a subcommittee report is part of the legislative process).

        c.  <u>Protections Afforded by the Clause</u>.  In practice, the Speech or Debate privilege comprises three broad protections:  (i) an immunity from lawsuits or prosecutions for all "actions within the –legislative sphere,"" *McMillan*, 412 U.S. at 312 (citation omitted);[8] (ii) a non-evidentiary use privilege which bars a prosecutor in a criminal case – and a party in a civil suit – from advancing their cases or claims against Legislative Branch officials by "[r]evealing information as to a legislative act," *United States v. Helstoski*, 442 U.S. 477, 490 (1979); *see also Johnson*, 383 U.S. at 173; and (iii) a non-disclosure privilege.  *Gravel*, 408 U.S. at 615-16; *United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 655-56, 660-62 (D.C. Cir. 2007); *Brown & Williamson*, 62 F.3d 408.  The non-disclosure privilege operates to protect Legislative Branch officials from being compelled to testify as to privileged matters and from being

---

[8]     This immunity extends to both criminal prosecutions and civil suits.  *See Helstoski*, 442 U.S. 477 (criminal prosecution); *United States v. Brewster*, 408 U.S. 501 (1972) (same); *Johnson*, 383 U.S. 169 (same); *Eastland*, 421 U.S. 491 (civil suit); *McMillan*, 412 U.S. 306 (same); *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (same).

compelled to produce privileged documents.  *Gravel*, 408 U.S. at 615-16; *Helstoski*, 442 U.S. at 484-86; *Rayburn House Office Bldg.*, 497 F.3d at 660.[9]

The Supreme Court draws no distinctions among these three protections.  Rather, it has stated unequivocally that when the Speech or Debate Clause applies, its protections are "absolute."  *Eastland*, 421 U.S. at 501, 503, 507, 509-10, 509 n.16; *Gravel*, 408 U.S. at 623 n.14.

2.      **In the Employment Context, the Speech or Debate Clause Bars Challenges to Legislative Branch Employment Decisions Taken Because of the Plaintiff's Performance or Non-Performance of Legislative Activities.**

The D.C. Circuit first addressed the application of the Speech or Debate Clause in the context of legislative branch employment actions in two cases decided before the CAA was enacted in 1995 – *Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984), and *Browning v. Clerk, U.S. House of Representatives*, 789 F.2d 923 (D.C. Cir. 1986).

The plaintiff in *Walker* was the general manager of the House restaurant system and alleged that she had been fired because she was a woman.  The congressional defendants – a House Subcommittee Chairman and the Subcommittee's Staff Director – moved to dismiss on the ground that they were immune from suit under the Speech or Debate Clause.  The Court rejected that argument because the restaurant manager had no "meaningful input into . . . legislative decisionmaking," 733 F.2d at 930 (quoting *Davis v. Passman*, 544 F.2d 865, 880-81 n.25 (5th Cir. 1977), *rev'd on other grounds*, 571 F.2d 793 (5th Cir. 1978) (en banc), *rev'd*,

---

[9]      *See also, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 30 (1980) (testimony); *Miller*, 709 F.2d at 528-29 (same); *Brown & Williamson*, 62 F.3d at 420 (documents); *MINPECO*, 844 F.2d at 859-61 (same); *Pentagen Techs. Int'l, Ltd. v. Comm. on Appropriations of U.S. House of Representatives*, 20 F. Supp. 2d 41, 43-44 (D.D.C. 1998) (same), *aff'd*, 194 F.3d 174 (D.C. Cir. 1999) (per curiam); *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246, 248-49 (D.D.C. 1981) (same).

442 U.S. 228 (1979)), and her duties were not "intimately cognate" to the legislative process,"

733 F.2d at 931 (quoting *Davis*, 544 F.2d at 879 (citation omitted)).

The plaintiff in *Browning*, on the other hand, was an official House reporter whose job

duties entailed "the verbatim stenotype transcription of committee and subcommittee hearings."

789 F.2d at 924.  The *Browning* plaintiff alleged that she had been fired because she was

African-American.  As in *Walker*, the congressional defendants in *Browning* – the Speaker of the

House, the Clerk, an Assistant to the Clerk, and the Director of the Office of Official Reporters –

moved to dismiss on the ground that they were immune from suit under the Speech or Debate

Clause.  This time the Court agreed:

> The touchstone to determining whether the Speech or Debate
> Clause immunity attaches is whether the activities at issue were
> "an integral part of the deliberative and communicative processes
> [of Congress]," *Gravel*, 408 U.S. at 625, such that the activity is
> legislative in character.  Personnel decisions are an integral part of
> the legislative process to the same extent that the affected
> employee's duties are an integral part of the legislative process.
> Thus, if the employee's duties are an integral part of the legislative
> process, such that they are directly assisting members of Congress
> in the "discharge of their functions," personnel decisions affecting
> them are correspondingly legislative and shielded from judicial
> scrutiny.
> . . . .
> [W]e hold that the standard for determining Speech or Debate
> Clause immunity is best expressed as whether the employee's
> duties were *directly related to the due functioning of the legislative
> process*.  There can be little doubt that Browning's duties as an
> Official Reporter were directly related to the legislative process.

*Id*. at 928-29 (emphasis in original) (citation omitted).

When Congress enacted the CAA in 1995, it made clear that it was not waiving, even if it

could waive (an uncertain proposition, *see Helstoski*, 442 U.S. at 490, 492), the protections

afforded under the Speech or Debate Clause.  *See* 2 U.S.C. § 1413 ("The authorization to bring

judicial proceedings under [the CAA] shall not constitute a waiver . . . of the privileges of any

Senator or Member of the House of Representatives under [the Speech or Debate Clause] . . . .ö).
And when the D.C. Circuit next considered the issue of how the Speech or Debate Clause applies
in the employment context, it agreed. *Fields*, 459 F.3d at 8 (CAA did not waive Speech or
Debate privilege); *see also Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 31 n.5
(D.D.C. 2001) (same). *Fields* did, however, reconsider *Browning* and, in the process,
reconfigured the manner in which the Clause applies to legislative-branch employment
decisions.[10]

The en banc *Fields* court considered two consolidated appeals ó one by a House Member
office and one by a Senate Member office ó each of which contended that the district court had
erred in denying its motion to dismiss CAA claims asserted against it by discharged staffers who
arguably performed duties that satisfied the *Browning* test. The case produced four opinions.
The principal opinion, a plurality, was authored by Judge Randolph and joined by Judges
Ginsburg, Henderson, and Tatel. 459 F.3d at 4.[11] All eight judges agreed that the *Browning*
duties test was öoverinclusiveö and that öan employeeøs duties are too crude a proxy for
protected activity.ö *Id*. at 11; *see also id*. at 17, 18, 21. And all agreed that, notwithstanding, the
Speech or Debate Clause still plays an important role in legislative-branch employment cases.
*Id*. at 14, 17, 18, 30.

---

[10]     The Supreme Court has not reached this issue. In *Davis*, a pre-CAA case, a former
deputy Administrative Assistant to a Member of Congress alleged that her discharge was based
on her gender in violation of the Fifth Amendment. *See* 442 U.S. at 230-31. While the Court
recognized that the decision was ötaken in the course of [the Memberøs] official conduct,ö *id*. at
246, it did not reach the question of whether the Memberøs decision to discharge the employee
was Speech or Debate protected, *id*. at 249.

[11]     Judge Tatel also wrote a concurring opinion, *id*. at 18; Judge Rogers wrote an opinion
that concurred with much of the pluralityøs reasoning and in the judgment, *id*. at 17; and Judge
Brown wrote an opinion, joined by Judges Sentelle and Griffith, that concurred in the judgment,
*id*. at 21.

The plurality articulated two **independent** bases upon which the Speech or Debate Clause applies in the employment context. First, in rejecting the argument that employment decisions can never be protected legislative acts as such, the plurality necessarily concluded that some employment decisions may, in and of themselves, be legislative acts that are immune from suit under the immunity component of the Clause. *Id.* at 10 ("some personnel decisions would not qualify" as protected legislative acts). Acknowledging that these were "perplexing questions," *id.* at 9, the plurality declined to say definitively when employment decisions are protected legislative acts in and of themselves, beyond concluding that the employment decisions in the two cases then before the Court were not. *Id.* at 13.

Second, the plurality held that even "[w]hen the [immunity component of the] Clause does not preclude suit altogether," the non-disclosure component of the Clause "still ÷protect[s] Members from inquiry into legislative acts or the motivation for actual performance of legislative acts." 459 F.3d at 14 (quoting *Brewster*, 408 U.S. at 508). This non-disclosure component, as the plurality explained, would lead in "many cases" to the dismissal of CAA claims. 459 F.3d at 15; *see also id.* at 20 (Tatel, J., concurring) (agreeing that the Clause's non-disclosure aspect could "preclude[] litigation" of some CAA claims); *id.* at 17-18 (Rogers, J., concurring) (same). And from there, the plurality went on to articulate an analytical framework by which district courts are to assess whether such dismissal is required.

> [W]hat happens when the [employment] action was motivated by the employee's participation in the legislative process?
>
> Suppose a plaintiff sues a Member's personal office claiming her discharge violated the [CAA]. Suppose further that she is able to make out a prima facie case of discrimination of one form or another. If the employing office produces evidence – by affidavit, for example – that the personnel decision was made because of the plaintiff's poor performance of conduct that is an integral part of "the due functioning of the [legislative] process," then for the

15

plaintiff to carry her burden of persuasion, she must "demonstrate that the proffered reason was not the true reason for the employment decision." In many cases, the plaintiff would be unable to do so without "draw[ing] in question" the legislative activities and the motivations for those activities asserted by the affiant – matters into which the Speech or Debate Clause prohibits judicial inquiry.
. . . .
In employment discrimination cases under the [CAA], then, as in other employment discrimination cases, the defendant will provide evidence of a legitimate nondiscriminatory reason for the discharge.  To invoke the Speech or Debate Clause, the employing office should include with this evidence an affidavit from an individual eligible to invoke the Speech or Debate Clause recounting facts sufficient to show that the challenged personnel decision was taken because of the plaintiff's performance of conduct protected by the Speech or Debate Clause. . . .  The affidavit must indicate into what "legislative activity" or into what matter integral to the due functioning of the legislative process the plaintiff's suit necessarily will inquire.

With that submission, the district court must then determine whether the asserted activity is in fact protected by the Speech or Debate Clause.  ***If it is, the action most likely must be dismissed***
. . . .

*Id.* at 15-16 (emphasis added; citations omitted).  The D.C. Circuit reaffirmed the *Fields*

framework several years later in *Howard v. Office of the Chief Administrative Officer*, including

the importance of a "*Fields* affidavit" by the Congressional employer.  720 F.3d 939, 948 (D.C.

Cir. 2013).  The Circuit reasoned that, under the facts presented, the *Howard* plaintiff (who

performed a budget function for the House's Chief Administrative Officer) could pursue her

claims, despite limitations imposed by the Speech or Debate Clause, but only "provided that she

does not contest her employer's conduct of protected legislative activities and that she prove her

allegations of pretext using evidence that does not implicate protected legislative matters." *Id.* at

949.  The Circuit was influenced by the fact that the reasons proffered for the relevant

employment actions only tangentially implicated the Clause.  *Id.* at 942.

**3.   Because the Select Committee's Decision to End Plaintiff's Employment Was a Legislative Act, It Is Immune from Challenge under the Speech or Debate Clause.**

Counts I and II of the Complaint both challenge the circumstances around Plaintiff's separation from the Committee – Count I alleges that Plaintiff was unlawfully discriminated against on the basis of his military service, while Count II alleges that Plaintiff was unlawfully retaliated against for raising a complaint of discrimination on the basis of his military service. Because Plaintiff's separation from the Committee is the actual employment action that is challenged in both counts, we consider them together here inasmuch as the governing *Fields* analysis is the same.

Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, "[i]t is to be presumed that [the] cause lies outside [the federal courts'] limited jurisdiction." *Ragsdale v. Holder*, 668 F. Supp. 2d 7, 14 (D.D.C. 2009) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  The plaintiff then "bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Kaur v. Chertoff*, 489 F. Supp. 2d 52, 59 (D.D.C. 2007) (quoting *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)).  While this Court must accept as true the factual allegations in the Complaint, *Dye v. United States*, 516 F. Supp. 2d 61, 67 (D.D.C. 2007), it may "[also] consider materials outside the pleadings" to determine whether it has jurisdiction over the underlying claims. *See, e.g.*, *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Ragsdale*, 668 F. Supp. 2d at 14; *P & V Enters. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 139 (D.D.C. 2006); *see also Leiterman v. Johnson*, 60 F. Supp. 3d 166, 174-75 (D.D.C. 2014) ("[T]he factual allegations in [a] complaint will bear closer scrutiny in resolving a 12(b)(1) motion than

in resolving a 12(b)(6) motion for failure to state a claim.") (quotation marks and citation omitted).

As discussed above, the D.C. Circuit has recognized that where a personnel decision is, itself, a legislative act, any action based on that decision is barred. *Fields*, 459 F.3d at 10-11; *Howard*, 720 F.3d at 947. As *Fields* commands, "[t]o determine on what actions a plaintiff sought to predicate liability, we examine the pleadings." *Fields*, 459 F.3d at 13. Here, as the Complaint alleges, Plaintiff's performance of legislative duties, including his alleged independent investigative focus, delegation of certain investigative duties to intern staff, and handling of sensitive information gathered in the course of his legislative duties, was inconsistent with his superiors' directives. *See* Compl. ¶¶ 23, 24, 26, 35, 37, 38. For this reason, Plaintiff's action is barred by the Speech or Debate Clause under *Fields*, 459 F.3d at 10-11, 13. *Cf. Scott v. Office of Alexander*, 522 F. Supp. 2d 262, 269 (D.D.C. 2007) (sexual harassment claim of Scheduler in Member's personal office "in no way requires inquiry into ╌how the [Congressman] spoke, how he debated, how he voted, or anything he did in chamber or committee'") (quoting *Fields*, 459 F.3d at 13); *see also Floyd v. Jackson Lee*, 968 F. Supp. 2d 308, 323 (D.D.C. 2013) (plaintiff "crafted her complaint to . . . center only on the assignment and delegation of political tasks").

### 4. Alternatively, the Non-Evidentiary Use and Non-Disclosure Aspects of the Speech or Debate Clause Privilege Require the Dismissal of Counts I and II.

In the alternative, even assuming this Court has jurisdiction over Plaintiff's claims against the Select Committee, those claims must be dismissed pursuant to the non-evidentiary use and non-disclosure components of the Speech or Debate Clause. As explained above, the *Fields* plurality opinion explained that in cases where the Clause does not bar an employment action altogether, the non-disclosure component may require dismissal of such action if the

Congressional defendant produces evidence, in the form of an affidavit, that "the challenged personnel decision was taken because of plaintiff's performance of conduct protected by the Speech or Debate Clause." *Fields*, 459 F.3d at 16.  Here, the affidavits of Messrs. Kiko and Donesa make plain that the Select Committee's personnel decision was made precisely for the reasons articulated in *Fields* and, as such, the case against the Select Committee should be dismissed.

First, the Kiko Affidavit explains that, as a Select Committee Investigator, Plaintiff had job responsibilities that were legislative in nature.  In particular, he was responsible for "advising Select Committee Members and staff supervisors on investigative matters," "reviewing documents to support the investigative focus of the Select Committee," "drafting questions for [Select Committee] witnesses," "[d]rafting and reviewing investigative memoranda," and "implementing investigative plans as assigned by supervisors and developing reports and memoranda relating to the same." Kiko Aff. ¶ 8.  As a matter of law, these activities were an integral part of the legislative process since they were in direct support of the legislative responsibilities of the Select Committee.  *See Eastland*, 421 U.S. at 504 (gathering of information in furtherance of legislative responsibilities Speech or Debate protected); *supra* note 7 (collecting lower court decisions holding that this activity protected).

Second, under *Fields*, Plaintiff cannot contest that he was asked to resign because of his performance of these constitutionally protected activities (and indeed Plaintiff pleads as much).  As Mr. Donesa has explained, "In short, among other ongoing concerns about Mr. Podliska's judgment, we became concerned that he was utilizing Select Committee resources to pursue issues outside of the tasks assigned to him by staff management, and further that he was not fully bringing to bear his intelligence community expertise on relevant matters that were a more

19

appropriate focus of the Select Committee's work." Donesa Aff. ¶ 9. Eventually, Mr. Donesa was forced to explain to Plaintiff that the reason for his separation from the Select Committee was his "fail[ure] to exercise appropriate judgment consistent with the mission of the Select Committee," as evidenced by "(1) engaging in work that was inconsistent with the Select Committee's workplan, and repeatedly attempting to task interns with such work; (2) failing to meet the Select Committee's expectations in light of his intelligence agency experience; (3) the security infraction incident [involving the mishandling of sources and methods information]; and (4) exhibiting lack of judgment in inviting Select Committee staff to a particular outside event." *Id.* ¶ 16.

In short, in *Fields* terms, the Select Committee has "provide[d] evidence of a legitimate nondiscriminatory reason for the" June 2015 personnel action. Because the Speech or Debate Clause precludes Plaintiff from compelling the disclosure of documents or testimony to challenge the Select Committee's stated legislative reasons for that personnel action, and because the Clause likewise precludes Plaintiff from using any such documents or testimony against the Select Committee, he will not be able "to carry [his] burden of persuasion" of "demonstrat[ing] that the proffered reason was not the true reason for the employment decision." *Fields*, 459 F.3d at 15.

If these Counts were allowed to proceed, Plaintiff's case necessarily would involve, by admission in his own pleading:

- interrogating Select Committee Members and/or staff on the scope and nature of his investigative work, including his "post-attack piece" and briefings with certain Select Committee Members, not to mention the Select Committee's alleged change in investigatory focus in March 2015 (*see* Compl. ¶¶ 23-26);

- interrogating Select Committee staff about the nature of the investigative tasks he, and others, assigned to interns to support his allegation that the assignments he directed were not improper (*see id.* ¶¶ 35-36, 72);

- interrogating Select Committee staff about the precise information disclosed by him in June 2015 to support his allegations that he had not improperly placed sensitive information on an unclassified network (*see id.* ¶ 41);

- interrogating Select Committee staff about the propriety of attending sponsored events that do not relate to official duties, and soliciting others to attend such events, an inquiry that would necessarily involve the Select Committee's interpretation of House Rule 25 (*see id.* ¶ 27 and *supra* note 5); and

- obtaining documentary evidence regarding the above.

This result is precisely what the courts have held the Clause prohibits. *Eastland*, 421 U.S. at 503, 508-09 ("The wisdom of congressional approach or methodology is not open to judicial veto."); *see also Brewster*, 408 U.S. at 525 ("It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts."); *McMillan*, 412 U.S. at 339 (1973) (Rehnquist, J., concurring) ("A supposed privilege against being held judicially accountable for an act is of virtually no use to the claimant of the privilege if it may only be sustained after elaborate judicial inquiry into the circumstances under which the act was performed."); *McSurely*, 521 F.2d at 1035 ("Rather than giving the clause a cramped construction, the Court has sought to implement its fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator."); *Fields*, 459 F.3d at 21 (Tatel, J., concurring) ("[D]istrict courts should focus on determining whether the cases may proceed without undue judicial ─inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'") (quoting *Brewster*, 408 U.S. at 525); *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n,* 515 F.2d 1341, 1351 (D.C. Cir. 1975) (Congress's "execution of internal rules" is "legislative").

Because such probing into core legislative matters is precluded by the Speech or Debate Clause, Counts I and II of the Complaint must be dismissed.

**B.      Counts I and II Should Be Dismissed Because Plaintiff Alleges that Military Animus Was Not the But-For/Sole Cause of the Alleged USERRA Violations.**

Plaintiff was hired by the Select Committee on or about September 2, 2014.  Compl.

¶ 16.  On March 2, 2015, Plaintiff informed his supervisors that he would be taking thirty-nine

days of military leave related to his reservist status.  *Id.* ¶ 18.[12]  Plaintiff alleges that, soon after

his return from his March 2015 military leave, the Select Committee's investigation "changed

significantly to focus on Secretary of State Hillary Clinton and the State Department."  *Id.* ¶ 25.[13]

Plaintiff further states that he "was unwilling to go along with the hyper-focus on the State

Department and Secretary Clinton. . . ."  *Id.* ¶ 26.  Plaintiff alleges that he did not agree with this

supposed change in focus and that Select Committee management was critical of and "attempted

to curtail" the manner in which he was conducting the investigation.  *Id.* ¶¶ 37-38; *see also id.*

¶¶ 70, 78 (incorporating previous allegations into Counts I and II).

*It is striking to see such allegations in an employment law complaint.*  A plaintiff

challenging the termination of his employment does not typically admit in his pleadings that he

refused to comply with his employer's directives.  Moreover, Plaintiff goes on to allege that this

conduct was part of the reason he was treated adversely by the Select Committee.  As stated in

---

[12]      Plaintiff alleges that he has served as an Air Force Reserve Officer since 1999 and, since then, has been required to perform military service duties.  Compl. ¶ 9.  Plaintiff admits that he was hired by Phil Kiko.  *Id.* ¶ 15.  Plaintiff fails to mention that Mr. Kiko was well aware of Plaintiff's military service obligations when Plaintiff was hired in September 2014.  When, as here, the same person is alleged to have both hired and fired the plaintiff, this allegation "undermines his discrimination claim."  *Richardson v. Am. Sec. Programs, Inc.,* 59 F. Supp. 3d 195, 201 (D.D.C. 2014) (citing *Waterhouse v. District of Columbia,* 124 F. Supp. 2d 1, 12-13 (D.D.C. 2000)).

[13]      As noted, for purposes of this Motion only, the Select Committee is required to assume the truth of Plaintiff's allegations regarding the supposed "agency-centric" focus of the Select Committee's investigation.  *See supra* note 1.  If this Motion is denied, however, and if this case is otherwise permitted to proceed, Defendant will demonstrate the falsity of these allegations.  In short, the Select Committee's investigation is not now, and never has been, agency-centric and/or improperly focused on Secretary Clinton and the State Department.

the Complaint, "it was clear to Plaintiff that he was being singled out because of his military service *and because* he was unwilling to go along with the hyper-focus on the State Department and Secretary Clinton. . . ." *Id.* ¶ 26 (emphasis added).   Plaintiff repeated his belief that his termination was motivated in part by his failure to go along with the directives of his employer in an October 11, 2015, interview with CNN's Jake Tapper.  *See State of the Union with Jake Tapper – "Ex Staffer: Benghazi Committee targeted Hillary Clinton"* (CNN television broadcast Oct. 11, 2015) (online at http://www.cnn.com/videos/politics/2015/10/11/bradley-podliska-benghazi-committee-investigation-hillary-clinton-dnt-sotu.cnn) (time mark 00:51 – 00:58).[14]  In that interview, Plaintiff asserted: "I was fired for trying to conduct an objective, non-partisan, thorough investigation." *Id.*[15]

This is the rare case in which Plaintiff has made explicit pleading allegations – and repeated them in the national press – that not only establish the existence of a legitimate, non-discriminatory and non-retaliatory reason for the termination of his employment (and the other adverse actions alleged in the Complaint), but also establish that he believes this legitimate reason was a cause of the alleged differential treatment.  Because these key facts are both alleged and admitted by Plaintiff, his claims against the Committee are ripe for dismissal under Rule 12(b)(6).  *See, e.g., Ey v. Office of the Chief Admin. Officer of the U.S. House of Representatives,*

---

[14]      The Court may take judicial notice of Plaintiff's public statement to the press when evaluating a motion to dismiss.  *Farah v. Esquire Magazine,* 736 F.3d 528, 534 (D.C. Cir. 2013); *see also* Fed. R. Evid. 201(b)(2) (court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); Fed. R. Evid. 201(d) (court may take judicial notice "at any stage of the proceeding").

[15]      Plaintiff apparently has determined that he is the sole arbiter of what constitutes an objective, non-partisan, and thorough investigation.  As explained in Section III(A), any judicial evaluation of this question – i.e., the Committee's focus of its investigation – would violate the Speech or Debate Clause.

967 F. Supp. 2d 337, 343-44 (D.D.C. 2013) (granting motion to dismiss CAA case where plaintiff admitted in Complaint that he engaged in the behavior that resulted in his termination).[16]

Indeed, as explained below, USERRA, as incorporated by the CAA, requires a plaintiff to allege that military animus was the but-for cause of the adverse actions alleged.  Plaintiff's admission that he refused to "go along with" his employer's alleged directives regarding the focus of its investigation, combined with his admission that this was a cause for the Select Committee's termination of his employment and the other adverse actions alleged, are thus fatal to his ability to proceed with Counts I and II.[17]

1.   **USERRA – as Incorporated by the CAA – Requires a Plaintiff to Show that Military Status or Service Was the But-For Cause of the Adverse Employment Actions Alleged.**

Section 4311 of USERRA states:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

---

[16]   Elsewhere in the Complaint, Plaintiff alleges that he was reprimanded for engaging in other conduct – e.g., inappropriately sending out a "team build" email, Compl. ¶ 27; inappropriately assigning unauthorized work to interns, *id.* ¶ 35; and "putting classified material onto an unclassified system." *Id.* ¶ 41.  For purposes of the argument here, these other claims are irrelevant.  It is the fact that Plaintiff admits he did not follow his employer's directives, and that he admits that this was part of the reason he was terminated, that precludes him from establishing that unlawful animus was the but-for cause of his termination or the other adverse actions alleged.

[17]   For purposes of this argument only, the Select Committee assumes *arguendo* that Plaintiff can establish that each of the adverse actions alleged in the Complaint would otherwise be actionable.  Should this case be permitted to proceed, the Select Committee expressly reserves the right to assert that some of the actions alleged are not actionable.  For instance, Mr. Kiko's alleged comments at a June 15, 2015 Select Committee witness deposition, Compl. ¶ 40, would not constitute an adverse action for either the discrimination or retaliation claims.  *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1197 (D.C. Cir. 2008) (courts are wary to micromanage employer's decisions about "which of several qualified employees will work on particular assignment") (citations omitted).

(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. . . ..

(c) An employer shall be considered to have engaged in actions prohibited--

> (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or

> (2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

38 U.S.C. § 4311(a)-(c).

In sum, subsection (a) of section 4311 prohibits discrimination in employment based on military status or service; subsection (b) prohibits retaliation because an individual has exercised his rights under USERRA; and subsection (c) provides the liability standard by which courts are to determine whether subsections (a) and/or (b) have been violated.

Thus, in a *typical* USERRA case, a plaintiff may establish that he has been discriminated or retaliated against by meeting the liability standard in subsection (c) – i.e., by demonstrating that his military service or exercise of rights was *a motivating factor* in the employer's termination decision. *Id.*; *Staub v. Proctor Hosp.,* 562 U.S. 411, 416-17 (2011). This is the standard Plaintiff has pled in this case. *See, e.g.*, Compl. ¶¶ 73, 82 (referencing "motivating factor" standard for Counts I and II) and Prayer for Relief at subpart (a) (seeking declaration that Plaintiff's termination of employment "was in whole *or in part* because of his military service")

(emphasis added).  This is not, however, the standard for establishing USERRA discrimination or retaliation under the CAA, ***because the CAA does not incorporate the motivating factor standard in subsection (c) of section 4311 of USERRA.***[18]  Rather, the CAA incorporates only select portions of USERRA.

Specifically, the relevant section of the CAA provides:

(a) Employment and reemployment rights of members of uniformed services

(1) In general

It shall be unlawful for an employing office to--

(A) discriminate, within the meaning of ***subsections (a) and (b) of section 4311*** of Title 38, against an eligible employee. . . .

2 U.S.C. § 1316(a)(1) (emphasis added).  Subsection (c) of section 4311, however, is not incorporated into the CAA.  Without subsection (c), there is no expressly-mandated liability standard for USERRA claims under the CAA.

Indeed, in 2008, the Office of Compliance ("OOC") – the agency Congress established to enforce the CAA[19] – submitted proposed rules to the Congress interpreting USERRA that specifically advised Congress on this point by stating:

---

[18]     Plaintiff's Complaint reveals a number of other instances where he has assumed, erroneously, that USERRA has been incorporated wholesale into the CAA.  For instance, Plaintiff states that he did not pay the filing fee required of most plaintiffs when he filed the lawsuit, asserting that "[t]his action is exempt from any filing fees pursuant to USERRA, 38 U.S.C. § 4323(h)(1)."  Compl. ¶1.  However, the CAA does not incorporate section 4323(h)(1) of USERRA, which precludes fees and costs against plaintiffs.  *See* 2 U.S.C. § 1316(b).  (The Select Committee takes no position as to whether the Court should *sua sponte* order Plaintiff to pay the civil filing fees; it merely identifies this issue as an example of how the CAA applies only parts of USERRA.)  Similarly, Plaintiff appears to allege that the Select Committee was required to "post[] . . . USERRA workplace notices."  Compl. ¶¶ 76, 85.  The USERRA notice-posting requirements, 38 U.S.C. §4334(a)-(b), are not incorporated into the CAA.  *See* 2 U.S.C. § 1316.

[19]     *See* 2 U.S.C. § 1381 (establishing Office of Compliance) and 2 U.S.C. §§ 1316(c), 1384(a), (b)(1) (requiring Office of Compliance to adopt substantive USERRA regulations under

Congress applied section 4311 to the legislative branch in order to provide discrimination and retaliation protections, respectively to eligible and covered employees. ***Interestingly, although Congress adopted these protections, it did not adopt the legal standard by which to establish a violation of this section of the regulations.***

Office of Compliance: Notice of Proposed Rulemaking, *New Proposed Regulations Implementing Certain Substantive Employment Rights and Protections for Veterans, As Required by 2 U.S.C. 1316, Congressional Accountability Act of 1995, as amended ("CAA")* ("Notice of Proposed Rulemaking"), 154 CONG. REC. S3188-03 (daily ed. April 21, 2008) (emphasis added).[20]

Accordingly, in the regulations that the OOC proposed for the Legislative Branch, the OOC expressly did not incorporate provisions from the Department of Labor's USERRA regulations that it concluded were inapplicable to Congressional employing offices.  These include:

- Sec. 1002.22 (Who has the burden of proving discrimination or retaliation in violation of USERRA?);

- Sec. 1002.23 (What must the individual show to carry the burden of proving that the employer discriminated or retaliated against him or her?).

Index to OOC's Proposed USERRA Regulations,

http://www.compliance.gov/sites/default/files/rulemaking/041608_numbering_index.pdf

(stating that 20 C.F.R. §§ 1002.22, 1002.23 were deleted from the OOC regulations).

Accordingly, without an express liability standard under the CAA, the Court must analyze the specific statutory language in subsections (a) and (b) of section 4311 to determine

---

the CAA and propose such regulations to Congress by providing them to the Speaker of the House and President pro tempore of the Senate for publication in the Congressional Record).

[20]     The text of the proposed regulations, and the language quoted in the main text, can be found on the OOC's website at http://www.compliance.gov/sites/default/files/rulemaking/041608_userra_preamble.pdf.

the appropriate standard.  To that end, the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009), provides controlling guidance because it interpreted nearly identical language in the Age Discrimination in Employment Act ("ADEA").  At issue in *Gross* was the ADEA's private sector age discrimination prohibition, which makes it unlawful for an employer to take an adverse employment action "because of" an individual's age.  The Court concluded that the term "because of" sets forth a "but-for" causation standard.  *Id.* at 176-77.  It also concluded that such "because of" language precludes a "mixed motive" theory of liability and, further, mandates that the plaintiff retain the burden of persuasion at all times in such cases.  *Id.* at 177-78.

The Supreme Court confirmed and amplified this analysis four years later in *University of Texas Southwestern Medical Center v. Nassar*, __ U.S. __, 133 S. Ct. 2517 (2013).  In *Nassar,* the Court found that Title VII's anti-retaliation provision, "like the statute at issue in *Gross,* makes it unlawful for an employer to take adverse employment action against an employee 'because' of certain criteria."  *Id.* at 2528.  The Court concluded that this language required but-for causation.  *Id.* at 2534.  Of note, the dissenting justices in *Nassar* – who would have adopted a motivating factor standard – explained the practical ramifications of the Court's conclusion, lamenting that the "but for" standard the Court adopted means that "a Title VII plaintiff alleging retaliation *cannot* establish liability if her firing was prompted by both legitimate and illegitimate factors."  *Id.* at 2546 (Ginsburg, J., dissenting) (emphasis in original).

Section 4311(b) of USERRA uses the same "because of" terminology that was analyzed in *Gross* and *Nassar.*  And, section 4311(a) of USERRA uses the similar phrase "on the basis

of."[21]  Because the CAA does not incorporate the motivating factor terminology of subsection (c)

of section 4311, the "because of" and "on the basis of" terms of subsections (a) and (b) of

USERRA are clear and controlling.  Plaintiff's claims in this case must therefore be analyzed

under the but-for standard as articulated in *Gross* and *Nassar,* not the motivating factor standard

he has pled.

> **2.   The History of Congress's Amendments to USERRA and the CAA Confirms that the But-For Standard Applies under the CAA.**

Prior to USERRA's enactment in 1994, courts interpreting the predecessor statute (the

Veterans' Reemployment Rights Act ("VRRA")) applied a "sole cause" standard to claims of

military status discrimination.  Under VRRA, an employee could not state a claim unless he

demonstrated that his military status was the sole cause of the adverse employment action.  *See*

*Monroe v. Standard Oil, Co.,* 452 U.S. 549 (1981); *Leisek v. Brightwood Corp*., 278 F.3d 895,

898 (9th Cir. 2002).  When Congress adopted USERRA in 1994, it "replace[d] the ꞌsole

motivationꞌ test with a more lenient standard that requires only that the employee's military

status was ꞌa motivating factorꞌ in the employer's action."  *Id.* at 898 (citing *Sheehan v. Dep't of*

*Navy*, 240 F.3d 1009, 1012-13 (Fed. Cir. 2001)).

Furthermore, as enacted in 1994, USERRA provided that ***discrimination*** claims were to

be proven by the motivating factor standard, ***but not retaliation*** claims.  *See* Pub. L. No. 103-

353, § 2, 108 Stat. 3149, 3153 (1994) (amending 38 U.S.C. § 4311 to apply motivating factor

language to discrimination, not retaliation).  When the CAA was enacted a few months later in

---

[21]   "On the basis of" is a variant of "based on," which the Court in *Gross* explained has the same meaning as the phrase "because of" and establishes "but-for" causation.  *Gross*, 557 U.S. at 176.  *See also Burrage v. United States*, __ U.S. __, 134 S. Ct. 881, 889 (2014) (referencing *Gross* and stating: "Our insistence on but-for causality has not been restricted to statutes using the term ꞌbecause of.ꞌ . . . [I]n common talk, the phrase ꞌbased onꞌ indicates a but-for causal relationship . . . .") (citation and quotation omitted).

January 1995, it incorporated only the discrimination provision of section 4311 and its motivating factor liability standard.   *See* Pub. L. No. 104-1, § 206(a)(1)(a), 109 Stat. 3, 12 (1995).  Were the law today what it was back in 1995, the motivating factor standard would apply to USERRA *discrimination* claims under the CAA.  And, because the USERRA-specific retaliation provision was not initially incorporated in the CAA, at that time, a plaintiff bringing a CAA retaliation claim based on USERRA would need to utilize the CAA's general anti-reprisal provision at 2 U.S.C. § 1317.

However, Congress amended both USERRA and the CAA a number of times in the intervening two decades since 1995.  For instance, in 1996, Congress amended USERRA to make both discrimination and retaliation claims subject to the motivating factor standard.  In doing so, Congress reordered the provisions of section 4311 of USERRA – placing the motivating factor liability standard where it now resides – in section 4311(c).  *See* amendment to 38 U.S.C. § 4311 made by Pub. L. No. 104-275, §311(3), 110 Stat. 3322, 3334 (1996) (amending and reordering 38 U.S.C. § 4311); *see also* S. Rep. 104-371, at 28 (1996) (legislative history explaining that the intent of the 1996 amendments was "to specify . . . that the standards and burdens of proof . . . would apply to both discrimination and retaliation claims").

Congress did not, however, alter the CAA's cross-reference numbering to coincide with the 1996 amendments to USERRA.  Accordingly, the CAA no longer incorporated the motivating factor standard from USERRA because the 1996 amendments moved that standard to subsection (c) of section 4311 – and, as noted above, subsection (c) was not incorporated into the CAA.  Thus, through the 1996 USERRA amendments, Congress added a new avenue by which a CAA plaintiff could bring a USERRA retaliation claim (subsection (b) - which is the avenue

Plaintiff utilizes here, *see* Compl. ¶ 80).  At the same time, Congress removed the motivating

factor liability standard for CAA-based USERRA claims.

Congress's non-incorporation of subsection (c) into the CAA cannot be dismissed as a

mere drafting oversight.  As noted earlier, in 2008, pursuant to statutory command, the OOC

provided the Speaker of the House and the President pro tempore of the Senate with its Notice of

Proposed Rulemaking regarding substantive USERRA regulations under the CAA.  This Notice

was then published in the Congressional Record.  And, as explained earlier, the OOC expressly

pointed out in that Notice that the CAA does not incorporate the motivating factor liability

standard under subsection 4311(c).

Additionally, just one page earlier in that same Notice, the OOC explained that the CAA

apparently contained a typographical error insofar as it did not incorporate certain remedies from

USERRA.  Notice of Proposed Rulemaking at p. 2, n.1.  Congress presumably took heed of the

OOC's comments, and in 2010, it amended the CAA to address the latter issue (remedies), but

left unchanged the non-incorporation of subsection 4311(c) and its "motivating factor" liability

standard.  Pub. L. No. 111-275, § 703, 124 Stat. 2864, 2888 (2010).

Had Congress believed the non-incorporation of subsection (c) was an inadvertent

drafting error, or had Congress wished to reestablish the "motivating factor" standard as

applicable under the CAA (whether for USERRA discrimination claims, USERRA retaliation

claims, or both), it could have done so at the same time it amended the CAA to alter the

USERRA remedies provision.  But, it did not.  The fact that Congress was expressly made aware

of these two issues from the OOC's Notice of Proposed Rulemaking, and chose to amend the

statute to address only one of them, is evidence that Congress acted intentionally.  *See, e.g.,*

*Gross*, 557 U.S. at 174-75 ("We cannot ignore Congress' decision to amend Title VII's relevant

31

provisions but not make similar changes to the ADEA.  When Congress amends one statutory

provision but not another, it is presumed to have acted intentionally.ö).   Accordingly, as a result

of various amendments to USERRA and the CAA, it is unambiguous that USERRA

discrimination and retaliation claims under the CAA are analyzed under the but-for liability

standard.[22]

### 3.   But-For Causation Means that the Unlawful Motive Must Be the Sole Cause of the Adverse Employment Action.

As explained above, in *Nassar,* the Supreme Court discussed but-for liability and, by

precluding mixed-motive cases under Title VIIøs anti-retaliation provision, the Court emphasized

that it expected its ruling would reduce the number of retaliation claims under Title VII.

133 S. Ct. at 2531-32.  Although the Court did not explicitly state whether but-for causation

requires that the unlawful motive be the õsole causeö for the adverse action, the dissenting

justices correctly understood that would be the impact of the majorityøs ruling, as noted above.

*Nassar*, 133 S. Ct. at 2546 (Ginsburg, J., dissenting).

Since *Nassar* was decided, the D.C. Circuit does not appear to have addressed the

question of whether but-for causation requires the unlawful factor to be the sole cause of the

alleged adverse action.[23]   And, although the district courts in this Circuit are not uniform in their

---

[22]      As noted above, Plaintiff did not bring Count II pursuant to the CAAøs general anti-reprisal provision codified at 2 U.S.C. § 1317.  *See* Compl. ¶¶ 79-83 (referencing only 2 U.S.C. § 1316 and 38 U.S.C. § 4311(b) ó not 2 U.S.C. § 1317).  However, the result would be the same for purposes of the liability standard, because section 1317 of the CAA also requires but-for causation.  *Anyaso v. U.S. Capitol Police,* 39 F. Supp. 3d 34, 44-45 (D.D.C. 2014).

[23]      In fact, the only reported D.C. Circuit opinion to mention *Nassar* is a concurring opinion and it does not address this specific point.  *Kaufman v. Perez,* 745 F.3d 521, 531 (D.C. Cir. 2014) (Srinivasan, J., concurring).  Prior to *Nassar,* different panels of the D.C. Circuit reached different opinions on this question.  For instance, in *Porter v. Natsios,* 414 F.3d 13 (D.C. Cir. 2005), a panel of the D.C. Circuit that included now-Chief Justice Roberts strongly intimated that sole cause and but-for causation were two sides of the same coin, stating: õthe mixed motive

analysis of this question, a number have held — either explicitly or implicitly — that the but-for

liability standard is, in effect, a "sole cause" standard.  *Gonda v. Donahoe,* 79 F. Supp. 3d 284,

303 (D.D.C. 2015) ("[u]nder a 'but-for' burden of proof," the existence of an undisputed

legitimate reason for the adverse action "make[s] it impossible for a jury to conclude that

retaliatory animus was the only cause for" the adverse action); *Rattigan v. Holder*,

982 F. Supp. 2d 69, 82 (D.D.C. 2013), *aff'd*, 780 F.3d 413 (D.C. Cir. 2015), *petition for cert.*

*filed*, 84 U.S.L.W. 3242 (U.S. Oct. 26, 2015) (No. 15-530) ("[p]rior to *Nassar* . . . it might have

been possible for a jury to find liability for decisions based on a mixture of legitimate and

illegitimate considerations because this mixture would show that retaliatory animus was a

motivating factor. . . .  Now, such an approach is prohibited.").[24]

---

framework . . . allows an employee to establish a Title VII violation . . . without proving that an
impermissible consideration ***was the sole or but-for motive*** for the employment action . . . ." *Id.*
at 19 (emphasis added).  Indeed, the Court in *Natsios* held that the appropriate jury instruction in
a non-mixed-motive case was a sole cause standard.  The Court opined that had the plaintiff
"wanted to establish liability under the higher evidentiary burden of a single motive theory, he
could have requested an instruction asking the jury to find that an impermissible consideration
was the ***sole motive***, rather than 'a motivating factor. . . .'" *Id.* at 20 (emphasis added).
Contrariwise, another panel of the D.C. Circuit rejected this reasoning and held that but for does
not mean sole cause.  *Ponce v. Billington*, 679 F.3d 840, 846 (D.C. Cir. 2012) (panel "hereby
banish[ed] the word 'sole' from our Title VII lexicon).  In light of *Nassar*, these decisions are of
limited guidance to the question of whether but-for means sole cause.

[24]    *See also Paulk v. Architect of the Capitol,* 79 F. Supp. 3d 82, 92 (D.D.C. 2015) (CAA
case where Court noted that unlawful motive "could have been a motivating factor, but not the
sole cause of [plaintiff's] non-selection"); *Butler v. White*, 67 F. Supp. 3d 59, 78 (D.D.C. 2014)
(applying *Nassar* and concluding that "in order to succeed [under a but-for theory, a plaintiff]
must also rule out all other possible explanations of the retaliatory conduct"); *Morales v.
Gotbaum*, 42 F. Supp. 3d 175, 199-200 (D.D.C. 2014) (citing *Nassar* and concluding that
retaliation claim failed when plaintiff could not show that adverse actions were "solely the
product of retaliation," particularly when the "plaintiff admits that factors other than retaliation
could explain his supervisors' decisions"); *Anyaso v. U.S. Capitol Police,* 39 F. Supp. 3d 34, 45
(D.D.C. 2014), *reconsideration denied,* 305 F.R.D. 1 (D.D.C. 2014) (CAA case concluding that
"the presence of a clear non-retaliatory justification for the [adverse action] . . . would make it
impossible for a reasonable jury to conclude that the but-for cause of [the adverse action] . . .
was his protected activities").

Finally, and perhaps most importantly, the Supreme Court's decision in *Monroe v. Standard Oil, Co.,* 452 U.S. 549 (1981), establishes that the "because of" language means "sole cause."  In that case, the Court interpreted language from VRRA (the predecessor statute to USERRA mentioned earlier), which states: "Any person who holds a position . . . shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed forces." 452 U.S. at 552, n.5 (quoting what was then 38 U.S.C. § 2021(b)(3)).  Interpreting this language, the Court held: "The legislative history thus indicates that § 2021(b)(3) was enacted for the significant ***but limited*** purpose of protecting the employee-reservist against discriminations like discharge and demotion, ***motivated solely by reserve status***." *Id.* at 559 (emphasis added).

The district courts in this Circuit have confirmed that *Monroe* implied a sole cause standard under the VRRA.  *Vahey v. Gen. Motors Co.,* 985 F. Supp. 2d 51, 58 (D.D.C. 2013) (*Monroe* "suggested[] that military service be the sole motivating factor for the adverse employment action") (citations omitted).  Moreover, other courts interpreting *Monroe* specifically found that, when an employer had legitimate reasons for an adverse action under VRRA in addition to military animus, the employee could not state a claim.  For example, in *Sawyer v. Swift & Co.,* 836 F.2d 1257 (10th Cir. 1988), the court held:

> In the instant case . . . it is clear that even if Sawyer's reserve status played some role in his termination, there were sufficient other, non-pretextual, reasons irrelevant to his military status. . . . We cannot conclude as a matter of law that Sawyer was terminated solely because of attending Naval Reserve training. . . . . Rather, we conclude that Sawyer was terminated for valid reasons of absenteeism and tardiness, having little, if anything, to do with his Reserve obligations.

*Id.* at 1262.

Of course, as explained above, Congress reversed this "sole cause" standard in 1994 when it added the motivating factor language to USERRA.  However, because that motivating

factor language is not incorporated into the CAA, the Supreme Court's interpretation in *Monroe* of the nearly identical language that *was incorporated* into the CAA controls.[25]  Therefore, under the CAA, a plaintiff must establish that military animus was the sole cause for the adverse actions alleged.

> ### 4.  Plaintiff's Mixed Motive Allegations Foreclose Liability under the But-For/Sole Cause Standard.

In this case, Plaintiff has clearly and unmistakably pled that the adverse actions at issue were caused by alleged military animus (Count I) and retaliation for exercising rights under USERRA (Count II), *and because he refused to comply with the Select Committee's alleged directives regarding the focus of its investigation*.  By so alleging, Plaintiff is now foreclosed from asserting that military animus and/or his exercise of his rights under USERRA were the sole, but-for cause of those adverse actions.  Accordingly, Plaintiff cannot state a claim for discrimination or retaliation under USERRA, as incorporated by the CAA, and Counts I and II must be dismissed with prejudice.

## C.  Count II Must Be Dismissed for Failure to State a Plausible Claim of Retaliation.

A plaintiff can make out a prima facie case of retaliation under the CAA by establishing "(1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that his protected activity was a but-for cause of the adverse action by the employer." *Anyaso*, 39 F. Supp. 3d at 44 (alterations and citations omitted).  To survive a motion to dismiss, the plaintiff's "complaint must -contain sufficient factual matter, accepted as true,' to plausibly establish those three elements." *Howard R.L. Cook & Tommy*

---

[25]     The VRRA statutory provision at issue in *Monroe* prohibited discrimination "because of" military service obligations.  *Monroe*, 452 U.S. at 552, n.5.  The successor provision of USERRA that is at issue with respect to Count I of the Complaint — section 4311(a) — prohibits discrimination "on the basis of."  As noted earlier, the Supreme Court has determined that these terms have the same meaning.  *Gross*, 557 U.S. at 176; *Burrage*, 134 S. Ct. at 889.

*Shaw Found. ex rel. Black Employees of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (Title VII retaliation case) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  It is possible, however, "for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000).

A careful reading of the Complaint in this case reveals that Count II (Plaintiff's retaliation claim) must be dismissed for this very reason.  Indeed, Plaintiff pleads two fundamental facts that show he can never establish the third element of a prima facie case of retaliation – causation.  First, by Plaintiff's own admission, the Committee's decision to separate him from employment was made and communicated to Plaintiff ***before*** he engaged in his alleged USERRA-protected activities.  Second, Plaintiff's allegations undercut any plausible inference that the Committee had knowledge of Plaintiff's alleged USERRA-protected activities even when, according to the Complaint, Plaintiff's separation from employment subsequently became effective and his employment was terminated.

For these reasons, and as further explained below, it is not simply implausible, but logically impossible for Plaintiff to establish that his separation from employment was motivated in whole or in part by unlawful retaliatory animus.[26]  Count II of the Complaint must, therefore, be dismissed with prejudice.  *Kline v. Archuleta*, 309 F.R.D. 91, 93 (D.D.C. 2015) (denying

---

[26]     Because the CAA does not incorporate USERRA's "motivating factor" provision, *see* Section III(B)(2), most reported USERRA cases are of only limited value to analyzing Count II.  The Select Committee thus relies primarily on non-mixed-motive cases brought under the CAA, Title VII, and similar anti-discrimination statutes.  The Select Committee points out, however, that its arguments for dismissing this claim do not depend on the distinction between motivating-factor causation versus but-for causation.  Plaintiff's claims fail under both standards for the reasons argued herein.

motion to amend where the undisputed facts showed that "no amount of additional discovery, artful pleading, or reconsideration could permit [plaintiff] to avoid dismissal of her case").

1.     **Because the Select Committee's Separation Decision Indisputably Predated Plaintiff's Alleged USERRA-Protected Activities, that Decision Could Not Have Been Caused by His Alleged USERRA-Protected Activities.**

Plaintiff bases his retaliation claim on a single alleged adverse employment action: the alleged termination of his employment "in late June 2015." Compl. ¶ 82.  Plaintiff admits, however, that the Select Committee first communicated its decision to end his employment in a meeting held on June 26, 2015.  According to Plaintiff, it was during that meeting that Mr. Kiko, the Staff Director for the Committee's Majority Staff, informed Plaintiff that "if he did not agree to tender his resignation within 30 days, he would be terminated." *Id.* ¶ 47.

This allegation is critical to assessing Plaintiff's retaliation claim for two reasons.  First, courts examining similar allegations have made it clear that, when (as alleged here) an employer offers an employee the choice between resigning or being terminated, that act constitutes an adverse employment action for purposes of anti-discrimination statutes.  *See, e.g., DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 36 n.7 (D.D.C. 2008); *Johnson v. Maddox*, 230 F. Supp. 2d 1, 10 (D.D.C. 2002), *aff'd sub nom.*, *Johnson v. Williams*, 117 F. App'x 769 (D.C. Cir. 2004).  Second, courts have clarified that an employer's decision to separate an employee from employment becomes actionable ***when the employer makes and/or communicates the decision to the plaintiff***, not when the plaintiff's employment actually comes to an end.  *See, e.g.*, *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (concluding that, where a professor was denied tenure before his employment actually ended, the "alleged discrimination occurred – and the filing limitations periods therefore commenced – at the time the tenure decision ***was made and communicated to***" the plaintiff) (emphasis added); *Bradshaw v. Office of*

*Architect of Capitol*, 856 F. Supp. 2d 126, 137 (D.D.C. 2012) (applying the holding of *Ricks* in a

CAA case and citing, *inter alia*, *Belt v. U.S. Dep't of Labor*, 163 F. App'x 382, 387 (6th Cir.

2006) ("A plaintiff's cause of action accrues when he receives notice of termination, not when

his employment actually ceases."), and *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir.

2000) ("It has long been settled that a claim of employment discrimination accrues for statute of

limitation purposes on the date the employee learns of the employer's discriminatory conduct.")).

These two points are fatal to Plaintiff's retaliation claim.  The Complaint specifically

alleges that Plaintiff was subjected to retaliation because he engaged in the following USERRA-

protected activities: (1) Plaintiff retained an attorney *after* the June 26, 2015 meeting during

which the choice between resigning or being terminated was communicated; and (2) Plaintiff's

attorney sent an email to the Committee *two days after* that meeting requesting to discuss the

matter further.  Compl. ¶¶ 48-51, 80-81.[27]

---

[27]     The Complaint also includes the conspicuously vague allegation that, on some otherwise
unspecified date and time "[i]n June 2015, Plaintiff complained to the Benghazi Committee's
leadership that their discriminatory and retaliatory actions were based on his past and ongoing
military commitments."  Compl. ¶ 81.  This conclusory allegation lacks sufficient factual content
to allege an actionable protected activity because, *inter alia*, it does not identify when Plaintiff
made the alleged complaint, who he complained to, or whether the decision-makers knew about
the complaint when they acted.  *See, e.g., Herling v. N.Y.C. Dep't of Educ.*, No. 13-CV-5287,
2014 WL 1621966, at *9 (E.D.N.Y. Apr. 23, 2014) (granting Rule 12(b)(6) motion to dismiss
retaliation claim because allegation of protected activity was "too vague and conclusory to
constitute protected activity as [plaintiff] fails to specify when he lodged these complaints, who
he complained to, and whether [the decision-maker] knew about these complaints"); *Garnett-
Bishop v. N.Y. Cmty. Bancorp, Inc.*, No. 12-CV-2285 ADS ARL, 2014 WL 5822628, at *6
(E.D.N.Y. Nov. 6, 2014) (granting Rule 12(b)(6) motion to dismiss retaliation claims because
plaintiffs' allegations relating to discriminatory retaliation were "wholly conclusory" where they
"d[id] not provide facts, such as who they complained to and when they made the alleged
complaints, which could plausibly give rise to an inference that their terminations were a result
of retaliatory action by" the defendant); *Turner v. Shinseki*, 824 F. Supp. 2d 99, 122 (D.D.C.
2011) (explaining that, "while temporal proximity can form the basis for establishing a prima
facie case for retaliation, there is still a requirement that the supervisor had knowledge of the
protected activity at the time the alleged retaliation occurred"); *see also Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief

38

Plaintiff's own timeline thus establishes that the Select Committee's decision to separate him from employment predated his alleged USERRA-protected activities and, accordingly, could not have been caused by those activities.  For this reason alone, the Court must dismiss Count II of the Complaint with prejudice.  *See Anyaso*, 39 F. Supp. 3d at 44 ("A majority of the alleged adverse actions pre-date [plaintiff's] protected activity and therefore cannot form the basis of a retaliation claim."); *Ramseur v. Perez*, 962 F. Supp. 2d 21, 28-29 (D.D.C. 2013) (dismissing retaliation claim where the employer's alleged retaliatory actions predated the plaintiff's protected activity because this chronology made it "factually impossible for plaintiff to prove causation as to this retaliation claim"); *Riggiladez v. Harvey*, 510 F. Supp. 2d 106, 110-11 (D.D.C. 2007) (dismissing retaliation claims where "defendant initiated plaintiff's termination with the Notice of Proposed Removal" before plaintiff filed her EEO complaint and inquiry form); *Welzel v. Bernstein*, 436 F. Supp. 2d 110, 128 (D.D.C. 2006) (holding that plaintiff cannot "make out a prima facie case of retaliation when the employer was preparing to terminate her before she filed her charge"); *Carter v. Greenspan*, 304 F. Supp. 2d 13, 30 (D.D.C. 2004) ("Because [plaintiff's] supervisors' dissatisfaction with his performance and their intentions to terminate him predated his protected activity, his retaliatory discharge claim is illogical and must be dismissed."); *Trawick v. Hantman,* 151 F. Supp. 2d 54, 63 (D.D.C. 2001), *aff'd,* No. 01-5309, 2002 WL 449777 (D.C. Cir. Feb. 21, 2002) (because the termination process had already been initiated before plaintiff first engaged in protected activity, no reasonable juror could conclude that the termination had been caused by such protected activity).

---

above the speculative level. . . .").  Indeed, because Plaintiff's retaliation claim is premised on the Select Committee's decision to separate him from employment, Compl. ¶ 81, the only factual inference that can plausibly be drawn from his allegation that he complained about the Select Committee's purported "discriminatory and *retaliatory* actions" undercuts his retaliation claim. Simply put, how could Plaintiff have complained about the alleged retaliatory action (i.e., the Committee's separation decision) *before* that decision was made and communicated to him?

2.     **Plaintiff's Allegations Demonstrate that the Select Committee Had No Knowledge of His Alleged Protected Activities when the Termination of His Employment Allegedly Became Effective on June 29, 2015.**

Even assuming *arguendo* that the actionable adverse employment action occurred on June 29, 2015 – which was after Plaintiff's attorney contacted the Select Committee and is the date Plaintiff alleges his termination became effective – Plaintiff still cannot prevail on his retaliation claim.[28]  "The causal connection component of the prima facie case may be established by showing (1) *that the employer had knowledge of the employee's protected activity*, and (2) that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) (emphasis and numbering added).  Plaintiff's claim founders on the first step.

As noted, Plaintiff identifies with specificity just two alleged USERRA-protected activities.  First, in the section of the Complaint entitled "Count II," Plaintiff avers that, after the June 26, 2015 meeting during which he was told he must resign or be terminated, Plaintiff "hired an attorney to enforce and exercise his rights under USERRA by instructing that lawyer to contact the Benghazi Committee in order to assert, exercise, and enforce Plaintiff's rights."  Compl. ¶ 81.  However, Plaintiff alleges no facts to suggest that the Select Committee's

---

[28]     Plaintiff's allegation that he was terminated on June 29, 2015 is false.  Compl. ¶¶ 51, 81. Consistent with the Select Committee's offer during the June 26, 2015 meeting, Plaintiff remained on the Select Committee's payroll through August 1, 2015.  Statement of Disbursements of the House, July 1, 2015 to September 30, 2015, pt. 3, at 2146  (reflecting service dates ending on "08/01/15"), *available at* http://disbursements.house.gov/2015q3/2015q3_vol3.pdf; *see also* 2 U.S.C. § 4108(a) (requiring House to create and publish Statements of Disbursements); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (noting that "public records [are] subject to judicial notice on a motion to dismiss"); *Detroit Int'l Bridge Co. v. Gov't of Canada*, No. CV 10-476 (RMC), 2015 WL 5726601, at *7 (D.D.C. Sept. 30, 2015) (same, and further noting that "judicial notice may be taken of . . . government documents available from reliable sources").  Although not necessary for ruling on this argument, for the Court's ease of reference, the Select Committee further notes that Plaintiff did, in fact, **tender his resignation** on July 12, 2015.  *See* Kiko Aff. ¶ 16.

decision-makers knew Plaintiff had hired an attorney for such a USERRA-related purpose before

Plaintiff's termination allegedly became effective on June 29, 2015.

Plaintiff's second alleged USERRA-protected activity falls short for a similar reason.

That activity is based on Plaintiff's allegation that "[w]ithin hours of Plaintiff's lawyer

contacting the Committee's leadership to address Plaintiff's concerns about how he had been

mistreated, the Committee terminated Plaintiff . . . ." *Id.*  Once again, however, no facts are

alleged to plausibly suggest that Plaintiff's attorney raised any "concerns" during this contact

with the Committee that were either directly or indirectly related to USERRA.  On the contrary,

in the subsection of the "Facts" section entitled "Plaintiff's USERRA Protected Activity,"

Plaintiff repeats what his attorney communicated during this alleged pre-termination contact with

the Select Committee.  Plaintiff alleges:

> In a June 28, 2015, e-mail, Plaintiff's attorney stated: "I have been retained by Mr.
> Podliska to amicably resolve the current situation.  Before anyone on either side takes
> any affirmative steps and the matter escalates, I'd like to discuss the situation and get a
> better sense of the Benghazi Committee's perspective.  I am sure you would agree that
> such a course of action is the most prudent way to proceed for all concerned."

Compl. ¶ 49.  There is simply nothing about this email that could possibly have put the Select

Committee on notice that Plaintiff's vague concerns about "the current situation" had anything to

do with his military status, his past or ongoing military commitments, or any other matter

conceivably related to USERRA.

Once again, then, Plaintiff has pled too much.  By alleging detailed facts regarding the

substance of his attorney's email communication with the Select Committee, he has given the

Court an opportunity to examine at the dismissal stage whether the Committee plausibly had

reason to know Plaintiff was attempting to assert USERRA rights when his attorney sent the

email to the Committee.  As courts have held in similar cases, however, this email was far "too

vague . . . for the Court to rely upon to indicate that Plaintiff may have hired an attorney to pursue . . . [USERRA] claims, *and that Defendant was placed on notice that Plaintiff intended to pursue . . . [those] claims*.ö *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 580 (E.D. Va. 2009) (dismissing retaliation claim) (emphasis added); *see also Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (noting that, õ[w]hile no ¬magic wordsø are required, the complaint [which is alleged to constitute protected activity] must in some way allege unlawful discrimination, not just frustrated ambitionö); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727ö28 (7th Cir. 2003) (stating that complaining about being õpicked on,ö without mentioning discrimination or otherwise indicating that gender was an issue, does not constitute protected activity, even if the employee honestly believes she is the victim of sex discrimination); *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (where plaintifføs complaints to employer õin no way intimated that she believed [the relevant] conduct to be influenced by her gender, . . . there was no evidence to support a finding that [defendant] discharged her in retaliation for opposing . . . discriminationö); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 202 (D.D.C. 2012) (dismissing retaliation claims under Rule 12(b)(6) where, *inter alia*, plaintiffsø alleged complaints to supervisor õdo not clearly constitute protected activity,ö and noting: õWhile informal complaints to management may constitute protected activity, the plaintiffs must clearly complain about discriminatory treatment.ö).

To be sure, Plaintifføs allegations do imply that the purpose of his attorneyøs email was to reject the Select Committeeøs offer of resignation or termination and/or to request that the Committee reconsider its separation decision.  Plaintiff also alleges more clearly that, rather than reconsider its decision, the Committee decided instead to peremptorily terminate Plaintifføs employment on June 29, 2015.  Compl. ¶¶ 51, 81.

But these alleged facts are beside the point.  Plaintiff cannot establish that his alleged termination on June 29, 2015 was motivated by unlawful retaliatory animus for the simple reason that the alleged termination was consistent with the Select Committee's originally planned course of action (i.e., that Plaintiff would be terminated if he chose not to resign).  This fact is fatal to Plaintiff's claim.  *See Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001) (holding that, even when an employer knows a plaintiff has engaged in the protected activity of filing a lawsuit, "[e]mployers need not suspend previously planned [employment actions] upon discovering that . . .  [the] suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality"); *Connell v. Bank of Bos.*, 924 F.2d 1169, 1180 (1st Cir. 1991) (where an employer gave an employee one discharge date, but then peremptorily discharged the employee two weeks prior to the original date after she hired an attorney, the peremptory discharge was not a separate and new adverse employment action); *Kennedy v. Gray*, 83 F. Supp. 3d 385, 391 (D.D.C. 2015), *reconsideration denied sub nom.*, *Kennedy v. District of Columbia*, No. 13-CV-01384 (CRC), 2015 WL 7274027 (D.D.C. Nov. 16, 2015) (concluding that a "plaintiff's subsequent requests of a defendant to reverse its [alleged] discriminatory decision does not create a new instance of discrimination" when the defendant declines the request); *Riggiladez*, 510 F. Supp. 2d at 110 ("Yet, an adverse employment action following soon after the employee's engagement in the protected activity cannot establish causation if the employer contemplated the adverse action *before* the employee's protected activity.") (emphasis in original).

For all of these reasons, Plaintiff cannot establish the causation element of a prima facie case of retaliation, and Count II of the Complaint must be dismissed with prejudice.

## IV. **CONCLUSION**

In light of the arguments advanced above, the Court must dismiss Counts I and II of the Complaint with prejudice.  Not only are those claims barred from proceeding by the Speech or Debate Clause, but Plaintiff's own allegations show that he cannot prevail on his discrimination and retaliation claims under USERRA, as incorporated by the CAA.

Respectfully submitted,

*Counsel for Defendant the Select Committee on Benghazi of the U.S. House of Representatives*

*Of Counsel solely with respect to the Constitutional Speech or Debate Arguments and the Fields affidavits*

By: /s/_____
GLORIA J. LETT (DC Bar #293365)
*Counsel*
RUSSELL H. GORE (DC Bar # 449231)
*Senior Associate Counsel*
MARK STEWART HAYES (DC Bar #976878)
*Senior Associate Counsel*

KERRY W. KIRCHER (DC Bar #386816)
*General Counsel*
WILLIAM PITTARD (DC Bar #482949)
*Deputy General Counsel*
TODD B. TATELMAN
*Senior Assistant Counsel*
ELENI M. ROUMEL
*Assistant Counsel*
ISAAC B. ROSENBERG (DC Bar #998900)
*Assistant Counsel*
KIMBERLY HAMM (DC Bar #1020989)
*Assistant Counsel*

Office of House Employment Counsel
U.S. House of Representatives
4300 O'Neill Federal Building
Washington, D.C. 20515
(202) 225-7075 (telephone)
(202) 225-7033 (facsimile)
Gloria.Lett@mail.house.gov
Russell.Gore@mail.house.gov
Mark.Hayes@mail.house.gov

Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
Kerry.Kircher@mail.house.gov
William.Pittard@mail.house.gov
Todd.Tatelman@mail.house.gov
Eleni.Roumel@mail.house.gov
Isaac.Rosenberg@mail.house.gov
Kimberly.Hamm@mail.house.gov

Dated:  February 5, 2016

44