**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRADLEY F. PODLISKA, | |
| *Plaintiff*, | |
| v. | Case No. 1:15-cv-02037-RDM |
| THE SELECT COMMITTEE ON THE EVENTS SURROUNDING THE 2012 TERRORIST ATTACK IN BENGHAZI, et al., | |
| *Defendants*. | |

**MOTION OF DEFENDANT THE HONORABLE TREY GOWDY
TO DISMISS COUNTS IV AND V OF THE COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7, Defendant the Honorable Trey Gowdy, Chairman of the Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi, respectfully moves the Court to dismiss Counts IV and V of Plaintiff Bradley Podliska's Complaint (Nov. 23, 2015) (ECF No. 1).  For all the reasons set forth in the accompanying Memorandum of Points and Authorities, those counts should be dismissed with prejudice and without leave to amend.

A proposed order is submitted herewith.  Oral argument is not requested.

Respectfully submitted,

KERRY W. KIRCHER, D.C. Bar No. 386816
General Counsel
WILLIAM PITTARD, D.C. Bar No. 482949
Deputy General Counsel
TODD B. TATELMAN, VA Bar No. 66008
Senior Assistant Counsel
ELENI M. ROUMEL, SC Bar No. 75763
Assistant Counsel
*/s/ Isaac B. Rosenberg*
ISAAC B. ROSENBERG, D.C. Bar No. 998900
Assistant Counsel
KIMBERLY HAMM, D.C. Bar No. 1020989
Assistant Counsel
SARAH K. CURRAN (Admitted to MD Bar)
Staff Attorney

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
Phone: (202) 225-9700
Fax:    (202) 226-1360
isaac.rosenberg@mail.house.gov

*Counsel for Defendant the Honorable Trey Gowdy,*
*Chairman of the Select Committee on the Events*
*Surrounding the 2012 Terrorist Attack in Benghazi*

February 5, 2016

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BRADLEY F. PODLISKA,

*Plaintiff*,

v.

THE SELECT COMMITTEE ON THE
EVENTS SURROUNDING THE 2012
TERRORIST ATTACK IN BENGHAZI,
et al.,

*Defendants*.

Case No. 1:15-cv-02037-RDM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE MOTION OF DEFENDANT THE HONORABLE TREY GOWDY
TO DISMISS COUNTS IV AND V OF THE COMPLAINT**

Kerry W. Kircher, General Counsel
William Pittard, Deputy General Counsel
Todd B. Tatelman, Senior Assistant Counsel
Eleni M. Roumel, Assistant Counsel
Isaac B. Rosenberg, Assistant Counsel
Kimberly Hamm, Assistant Counsel
Sarah K. Curran, Staff Attorney

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
Phone: (202) 225-9700
Fax:    (202) 226-1360
isaac.rosenberg@mail.house.gov

*Counsel for Defendant the Honorable Trey Gowdy,
Chairman of the Select Committee on the Events
Surrounding the 2012 Terrorist Attack in Benghazi*

February 5, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 6

I.  THE DEFAMATION CLAIM (COUNT IV) MUST BE DISMISSED FOR LACK
    OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM .. 6

    A.  Court IV Is Barred by Sovereign Immunity Because the Claim Challenges
        Only Official Conduct .......................................................................................... 7

    B.  Chairman Gowdy Would Enjoy Absolute Immunity Under D.C. Law Even
        if Sovereign Immunity Did Not Bar Count IV ................................................. 10

II.  THE DUE PROCESS CLAIM (COUNT V) MUST BE DISMISSED FOR LACK
     OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE
     A CLAIM ................................................................................................................ 13

    A.  Count V Is Just a "Constitutionalized" Retaliation Claim, Covered by the
        Congressional Accountability Act, Which Mr. Podliska Did Not Exhaust ..... 13

        1.  The CAA Prohibits Retaliation Against Former Employees Who
            Exercise Their Rights Under the CAA ................................................. 14

        2.  Count V Must Be Dismissed Under the CAA ..................................... 16

    B.  Count V Alternatively Must Be Dismissed Because the Availability of
        Relief Under the CAA Precludes Any Due Process Claim ............................. 17

    C.  Even if the CAA Did Not Preclude Mr. Podliska's Due Process Claim,
        Count V Still Fails to State a Claim Upon Which Relief May Be Granted ..... 19

        1.  Mr. Podliska Has Not Sufficiently Pled a "Reputation-Plus" Claim ... 20

            a.  Statements About Mr. Podliska's Poor Job Performance
                Are Not Actionable ................................................................. 20

            b.  The Alleged Defamation Did Not "Accompany" a
                "Termination." ........................................................................ 24

        2.  Mr. Podliska Has Not Sufficiently Pled a "Stigma or Disability"
            Claim .................................................................................................. 28

i

               a.       Whatever Stigma Mr. Podliska Faces, He Inflicted It on Himself ................................................................................... 28

               b.       Mr. Podliska Has Not Alleged Sufficiently Broad Preclusion from Future Employment in His Chosen Profession ............... 31

       3.       Mr. Podliska's Due Process Claim Fails Under Both Theories Because He Did Not Request A Name-Clearing Hearing Before Filing Suit .... 35

       4.       Mr. Podliska's Due Process Claim Also Fails Under Both Theories Because He Received All the Process He Was Due ........................... 38

       5.       Count V Cannot Proceed Against Chairman Gowdy Personally ........ 40

   D.       Chairman Gowdy Is Entitled to Qualified Immunity ....................................... 42

III.     BOTH COUNTS IV AND V MUST BE DISMISSED BECAUSE THEY NECESSARILY IMPLICATE LEGISLATIVE MATTERS THAT ARE PRIVILEGED UNDER THE SPEECH OR DEBATE CLAUSE ............................. 44

CONCLUSION ................................................................................................................. 45

APPENDIX ...................................................................................................................... 1a

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Cases**                                                                                         **Page(s)**

*Aguirre v. S.E.C.,*
    671 F. Supp. 2d 113 (D.D.C. 2009) .................................................................29, 35, 40

*Aktiebolaget Bofors v. United States,*
    194 F.2d 145 (D.C. Cir. 1951) ...................................................................................14

*Alexis v. Dist. of Columbia,*
    44 F. Supp. 2d 331 (D.D.C. 1999) .................................................................21, 26, 33

*Allaithi v. Rumsfeld,*
    753 F.3d 1327 (D.C. Cir. 2014) ................................................................................11

*Ames v. Johnson,*
    --- F. Supp. 3d ----, No. 13-cv-1054, 2015 WL 4880635 (D.D.C. Aug. 14, 2015) .....18

*Arbitraje Casas de Cambio, S.A. de C.V. v. U.S. Postal Serv.,*
    297 F. Supp. 2d 165 (D.D.C. 2003) ..........................................................................14

*Arpaio v. Obama,*
    797 F.3d 11 (D.C. Cir. 2015) ....................................................................................17

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074 (2011) ..............................................................................................43

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................22, 33

*Baden v. Koch,*
    799 F.2d 825 (2d Cir. 1986) ......................................................................................35

*Bell Atl. Corp. v Twombly,*
    550 U.S. 554 (2007) ..................................................................................................34

*Bishop v. Wood,*
    426 U.S. 341 (1976) ..................................................................................................19

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) ..................................................................................................41

---

[*] Pursuant to Local Civil Rule 7(a), asterisks along the left margin of this table identify "those cases or authorities on which counsel chiefly relies."

**Cases – continued**                                                                    **Page(s)**

    *Bjorklund v. Miller,*
        467 F. App'x 758 (10th Cir. 2012) .............................................................35

    *Blackmon-Malloy v. U.S. Capitol Police Bd.,*
        575 F.3d 699 (D.C. Cir. 2009) .................................................................17

    *Bledsoe v. City of Horn Lake, Miss.,*
        449 F.3d 650 (5th Cir. 2006) ...................................................................35

    *Blue v. Dist. of Columbia,*
        --- F.3d ----, No. 14-7189, 2015 WL 9466228 (D.C. Cir. Dec. 29, 2015).........2, 16, 34

    *Bd. of Regents of State Colls. v. Roth,*
        408 U.S. 564 (1972).................................................................................19

    *Bragg v. Office of Dist. Att'y,*
        704 F. Supp. 2d 1032 (D. Colo. 2009) .....................................................16

    *Brennan v. Hendrigan,*
        888 F.2d 189 (1st Cir. 1989) ...................................................................27

\*  *Brown v. Gen. Servs. Admin.,*
        425 U.S. 820 (1976)...............................................................................14

    *Browning v. Clinton,*
        292 F.3d 235 (D.C. Cir. 2002) ...............................................................24

    *Buntin v. City of Boston,*
        --- F.3d ----, No. 15-1667, 2015 WL 9466582 (1st Cir. Dec. 29, 2015).....................35

    *Burlington N. & Santa Fe Ry. Co. v. White,*
        548 U.S. 53 (2006).............................................................................15, 16

    *Bush v. Lucas,*
        462 U.S. 367 (1983)...............................................................................42

    *Butt v. United Bhd. of Carpenters & Joiners of Am.,*
        512 F. App'x 233 (3d Cir. 2013) .............................................................16

\*  *Campbell v. Dist. of Columbia,*
        972 F. Supp. 2d 38 (D.D.C. 2013) .....................................................20, 31

    *Campbell v. Dist. of Columbia,*
        --- F. Supp. 3d ----, No. 12-cv-1769, 2015 WL 5188618
        (D.D.C. Sept. 4, 2015) ...................................................................20, 26, 38

iv

**Cases – continued**                                                        **Page(s)**

*Campanelli v. Bockrath*,
    100 F.3d 1476 (9th Cir. 1996) ...................................................................25

*Clayton v. Dist. of Columbia*,
    931 F. Supp. 2d 192 (D.D.C. 2013) ............................................................9

*Clayton v. Dist. of Columbia*,
    --- F. Supp. 3d ----, No. 11-cv-1889, 2015 WL 4639558 (D.D.C. Aug. 4, 2015) .......35

*Cobell v. Babbitt*,
    91 F. Supp. 2d 1 (D.D.C. 1999) .................................................................7

*Codd v. Velger*,
    429 U.S. 624 (1977)..........................................................................37, 44

*Council on Am. Islamic Relations, Inc. v. Ballenger*,
    366 F. Supp. 2d 28 (D.D.C. 2005) .............................................................11

*Council on Am. Islamic Relations v. Ballenger*,
    444 F.3d 659 (D.C. Cir. 2006) ...................................................................9

*Croddy v. F.B.I.*,
    No. 00-cv-651, 2006 WL 2844261 (D.D.C. Sept. 29, 2006).....................................24

*Davis v. Billington*,
    681 F.3d 377 (D.C. Cir. 2012).................................................................42

*Davis v. Sarles*,
    --- F. Supp. 3d ----, No. 14-cv-1389, 2015 WL 5728541 (D.D.C. Sept. 29, 2015).....10

*Davis v. United States*,
    973 F. Supp. 2d 23 (D.D.C. 2014) ........................................................9, 41

*DeBrew v. Atwood*,
    792 F.3d 118 (D.C. Cir. 2015) .................................................................22

*De Sousa v. Dep't of State*,
    840 F. Supp. 2d 92 (D.D.C. 2012) ............................................................25

*Dist. of Columbia v. Jones*,
    919 A.2d 604 (D.C. 2007) .............................................................10, 11, 12

*Dist. of Columbia v. Simpkins*,
    720 A.2d 894 (D.C. 1998) ......................................................................12

**<u>Cases – continued</u>**                                                        **<u>Page(s)</u>**

*Doe v. Rogers*, --- F. Supp. 3d ----,
  No. 12-cv-1229, 2015 WL 5923612 (D.D.C. Oct. 9, 2015) ...........................21, 22, 28

\* *Doe v. U.S. Dep't of Justice*,
  753 F.2d 1092 (D.C. Cir. 1985) ....................................................................26, 36, 38

*Doe v. U.S. Dep't of Justice*,
   602 F. Supp. 871 (D.D.C. 1983) ................................................................................26

*Dougherty v. United States*,
   --- F. Supp. 3d ----, No. 15-cv-582, 2016 WL 225681 (D.D.C. Jan. 19, 2016)............7

\* *Dukore v. Dist. of Columbia*,
  799 F.3d 1137 (D.C. Cir. 2015) ...........................................................................42, 43

*Edmonds v. U.S. Dep't of Justice*,
  323 F. Supp. 2d 65 (D.D.C. 2004) ..........................................................................45

*Edmonds v. United States*,
  436 F. Supp. 2d 28 (D.D.C. 2006) ..........................................................................14

*Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
  No. 02-cv-9303, 2003 WL 22176077 (N.D. Ill. Sept. 18, 2003)................................27

*Ersek v. Twp. of Springfield*,
  102 F.3d 79 (3d Cir. 1996)........................................................................................35

*Ethnic Emps. of Lib. of Congress v. Boorstin*,
  751 F.2d 1405 (D.C. Cir. 1985) ..........................................................................14, 17

*Evangelou v. Dist. of Columbia*,
  63 F. Supp. 3d 96 (D.D.C. 2014) ............................................................................33

*Evans v. Dist. of Columbia*,
  391 F. Supp. 2d 160 (D.D.C. 2005) .........................................................................25

*Ewers v. Bd. of Cnty. Comm'rs*,
  802 F.2d 1242 (10th Cir. 1986) ...............................................................................27

*Farah v. Esquire Magazine*,
  736 F.3d 528 (D.C. Cir. 2013) ...................................................................................2

*Fenwick v. Pudimott*,
  778 F.3d 133 (D.C. Cir. 2015) .................................................................................43

**Cases – continued**                                                                            Page(s)

*Fields v. Office of Eddie Bernice Johnson*,
    459 F.3d 1 (D.C. Cir. 2006) ................................................................3, 44

*Finnegan v. Bd. of Educ. of Enlarged City Sch. Dist. of Troy*,
    No. 92-cv-732, 1993 WL 729846 (N.D.N.Y. Nov. 18, 1993) ....................................29

*Fonville v. Dist. of Columbia*,
    448 F. Supp. 2d 21 (D.D.C. 2006) ..............................................................26

*Fonville v. Dist. of Columbia*,
    38 F. Supp. 3d 1 (D.D.C. 2014) ....................................................20, 21, 22

*Gentile v. Wallen*,
    562 F.2d 193 (2d Cir. 1977) .....................................................................27

*Gillespie v. Hocker*,
    No. 15-cv-51, 2015 WL 4468922 (D. Del. July 22, 2015) .........................................25

*Goecks v. Pedley*,
    437 F. App'x 505 (7th Cir. 2011) ...............................................................25

*Goldstein v. Pearson*,
    121 A.2d 260 (D.C. 1956) .......................................................................10

*Graham v. Ashcroft*,
    358 F.3d 931 (D.C. Cir. 2004) ..................................................................39

*Graham v. U.S. Dep't of Justice*,
    No. 02-cv-1231, 2002 WL 32511002 (D.D.C. 2002) ...........................................38, 39

*Hadley v. Cnty. of DuPage*,
    715 F.2d 1238 (7th Cir. 1983) ..................................................................25

*Hadnott v. Laird*,
    317 F. Supp. 379 (D.D.C. 1970) ..................................................................8

*Hall v. Clinton*,
    235 F.3d 202 (4th Cir. 2000) ...................................................................42

*Hamilton v. Mayor & City Council of Balt.*,
    807 F. Supp. 2d 331 (D. Md. 2011) .............................................................27

*Hanoch Tel-Oren v. Libyan Arab Republic*,
    517 F. Supp. 542 (D.D.C. 1981) .................................................................14

**<u>Cases – continued</u>**                                                                              <u>Page(s)</u>

*Harper v. Blumenthal*,
  478 F. Supp. 176 (D.D.C. 1979) ................................................................................39

\* *Harrison v. Bowen*,
  815 F.2d 1505 (D.C. Cir. 1987) ...........................................................................21, 22

*Hatfill v. Gonzales*,
  519 F. Supp. 2d 13 (D.D.C. 2007) .........................................................................9, 41

*Hill v. Borough of Kutztown*,
  455 F.3d 225 (3d Cir. 2006)....................................................................................35

*Hoey v. Dist. of Columbia*,
  540 F. Supp. 2d 218 (D.D.C. 2008) ..........................................................................18

*Hollabaugh v. Office of Architect of Capitol*,
  847 F. Supp. 2d 57 (D.D.C. 2012) ............................................................................16

*Holman v. Williams*,
  436 F. Supp. 2d 68 (D.D.C. 2006) ..............................................................18, 22, 31

*Holscher v. Olson*,
  No. 07-cv-3023, 2008 WL 2645484 (E.D. Wash. June 30, 2008)..............................35

*Howard v. Office of Chief Administrative Officer of U.S. House of Representatives*,
  720 F.3d 939 (D.C. Cir. 2013) ...........................................................................44, 45

*Hutchinson v. C.I.A.*,
  393 F.3d 226 (D.C. Cir. 2005) ..................................................................................22

*Hyson v. Architect of Capitol*,
  802 F. Supp. 2d 84 (D.D.C. 2011) ............................................................................16

*In re Subpoena In Collins*,
  524 F.3d 249 (D.C. Cir. 2008) ....................................................................................8

*Jacobs v. Vrobel*,
  724 F.3d 217 (D.C. Cir. 2013) ....................................................................................9

*Johnson v. United States*,
  547 F.2d 688 (D.C. Cir. 1976) ..................................................................................14

*Joyce v. Office of Architect of Capitol*,
  966 F. Supp. 2d 15 (D.D.C. 2013) ............................................................................15

**<u>Cases – continued</u>**                                                    <u>Page(s)</u>

*Joyce v. Office of Architect of Capitol*,
    106 F. Supp. 3d 163 (D.D.C. 2015) ........................................................15

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ..............................................................2

*Kartseva v. Dep't of State*,
    37 F.3d 1524 (D.C. Cir. 1994) ...............................................22, 25, 28

*Kendrick v. Fox Television*,
    659 A.2d 814 (D.C. 1995) ....................................................11, 12, 13, 44

*King v. Holder*,
    941 F. Supp. 2d 83 (D.D.C. 2013) .........................................................18

*Kittner v. Gates*,
    783 F. Supp. 2d 170 (D.D.C. 2011) .......................................................18

*Kizas v. Webster*,
    707 F.2d 524 (D.C. Cir. 1983) ..........................................................17, 18

*Knehans v. Alexander*,
    566 F.2d 312 (D.C. Cir. 1977) ...............................................................22

*Kursar v. T.S.A.*,
    751 F. Supp. 2d 154 (D.D.C. 2010) .......................................................39

*LaForgia v. Davis*,
    No. 01-cv-7599, 2004 WL 2884524 (S.D.N.Y. Dec. 14, 2004) ................27

*Land v. Dollar*,
    330 U.S. 731 (1947) ................................................................................8

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) ............................................................................7, 8

*Lawrence v. Acree*,
    665 F.2d 1319 (D.C. Cir. 1981) .............................................................25

*Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*,
    --- F. Supp. 3d ----, No. 14-cv-1162, 2016 WL 107914 (D.D.C. Jan. 8, 2016)..........41

\*   *Lyons v. Barrett*,
    851 F.2d 406 (D.C. Cir. 1988) ................................................35, 36, 38, 40

**Cases – continued**                                                                                     **Page(s)**

*Mackinac Tribe v. Jewell*,
    87 F. Supp. 3d. 127 (D.D.C. 2015) .......................................................................3, 7

*Malapanis v. Regan*,
    340 F. Supp. 2d 184 (D. Conn. 2004) .....................................................................27

*Manhattan-Bronx Postal Union v. Gronouski*,
    350 F.2d 451 (D.C. Cir. 1965) ..................................................................................8

*Matthews v. Hesburgh*,
    504 F. Supp. 108 (D.D.C. 1980) .............................................................................20

*Maye v. Reno*,
    231 F. Supp. 2d 332 (D.D.C. 2002) ........................................................................42

\*  *Mazaleski v. Treusdell*,
    562 F.2d 701 (D.C. Cir. 1977) ..........................................................................20, 21

\*  *McCormick v. Dist. of Columbia*,
    752 F.3d 980 (D.C. Cir. 2014) ........................................................... *passim*

*McDonald v. Salazar*,
    831 F. Supp. 2d 313 (D.D.C. 2011) ........................................................................18

*McGinnis v. Dist. of Columbia*,
    65 F. Supp. 3d 203 (D.D.C. 2014) ...............................................19, 21, 28, 33, 34

*Mertik v. Blalock*,
    983 F.2d 1353 (6th Cir. 1993) .................................................................................25

*Mervin v. F.T.C.*,
    591 F.2d 821 (D.C. Cir. 1978) ................................................................................22

*Meshal v. Higgenbotham*,
    804 F.3d 417 (D.C. Cir. 2015) ................................................................................41

*Mine Safety Appliances Co. v. Forrestal*,
    326 U.S. 371 (1945) ..................................................................................................8

*M.K. v. Tenet*,
    99 F. Supp. 2d 12 (D.D.C. 2000) ................................................................35, 38, 39

*M.K. v. Tenet*,
    196 F. Supp. 2d 8 (D.D.C. 2001) ...........................................................................25

**Cases – continued** **Page(s)**

*Moore v. Agency for Int'l Dev.*,
  80 F.3d 546 (D.C. Cir. 1996) ...................................................................40

*Moore v. Capitol Guide Bd.*,
  982 F. Supp. 35 (D.D.C. 1997) ................................................................17

*Moran v. U.S. Capitol Police Bd.*,
  820 F. Supp. 2d 48 (D.D.C. 2011) .....................................................15, 16

*Morris v. Lindau*,
  196 F.3d 102 (2d Cir. 1999)......................................................................25

*Morris v. W.M.A.T.A.*,
  702 F.2d 1037 (D.C. Cir. 1983) ...............................................................18

*Mosca v. Cole*,
  217 F. App'x 158 (3d Cir. 2007) ..............................................................29

*Mosrie v. Barry*,
  718 F.2d 1151 (D.C. Cir. 1983) ..........................................................24, 32

*Mosrie v. Trussell*,
  467 A.2d 475 (D.C. 1983) ..........................................................................7

\*  *Moss v. Stockard*,
  580 A.2d 1011 (D.C. 1990) ................................................10, 11, 12, 13

*Myers v. Delaware Cnty., Ohio*,
  No. 2:07-cv-844, 2008 WL 4862512, at \*8 (S.D. Ohio Nov. 7, 2008) .....................25

*Newton v. Office of Architect of Capitol*,
  905 F. Supp. 2d 88 (D.D.C. 2012) ...........................................................16

*Novecon Ltd. v. Bulgarian-Am. Enterprise Fund*,
  190 F.3d 556 (D.C. Cir. 1999) ...................................................................7

\*  *O'Donnell v. Barry*,
  148 F.3d 1126 (D.C. Cir. 1998) ........................................................ *passim*

*Ogburn v. Elrod*,
  No. 87-cv-4492, 1989 WL 24127 (N.D. Ill. Mar. 13, 1989) ......................27

*Olaniyi v. Dist. of Columbia*,
  763 F. Supp. 2d 70 (D.D.C. 2011) ............................................................14

**Cases – continued**                                                                  **Page(s)**

*Orelski v. Bowers*,
    303 F. App'x 93 (3d Cir. 2008) ..........................................................................25, 27

*Packer v. U.S. Comm'n on Sec. & Cooperation in Europe*,
    843 F. Supp. 2d 44 (D.D.C. 2012) ...............................................................................42

\*   *Paul v. Davis*,
    424 U.S. 693 (1976)..................................................................................19, 24, 25, 32

*Payne v. Dist. of Columbia*,
    773 F. Supp. 2d 89 (D.D.C. 2011) ......................................................................31, 34

*Payne v. Dist. of Columbia*,
    4 F. Supp. 3d 80 (D.D.C. 2013) ...................................................................................33

*Pearson v. Callahan*,
    555 U.S. 223 (2009)......................................................................................................42

*Peter B. v. C.I.A.*,
    620 F. Supp. 2d 58 (D.D.C. 2009) ...............................................................................26

*Persichitte v. Univ. of N. Colo.*,
    No. 05-cv-1508, 2006 WL 2790407 (D. Colo. Sept. 27, 2006)....................................16

*Pindell v. Wilson-McKee*,
    60 F. Supp. 2d 1244 (D. Wyo. 1999)............................................................................27

*Plumhoff v. Rickard*,
    134 S. Ct. 2012 (2015)..................................................................................................43

*Popovic v. United States*,
    997 F. Supp. 672 (D. Md. 1998) ...................................................................................25

*Quinn v. Shirey*,
    293 F.3d 315 (6th Cir. 2002) ..................................................................................35, 36

*Reichle v. Howards*,
    132 S. Ct. 2088 (2012)..................................................................................................43

*Reisman v. Caplin*,
    317 F.2d 123 (D.C. Cir. 1963) .......................................................................................8

*Renaud v. Wyo. Dep't of Family Servs.*,
    203 F.3d 723 (10th Cir. 2000) ......................................................................................25

**Cases – continued**                                                        Page(s)

*Ridpath v. Bd. of Govs. Marshall Univ.*,
    447 F.3d 292 (4th Cir. 2006) ...................................................................25

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997)..............................................................................15

*Robinson v. Smith*,
    No. 09-cv-138, 2010 WL 3463594 (D. Nev. Aug. 27, 2010)...................27

*Rochon v. Gonzales*,
    438 F.3d 1211 (D.C. Cir. 2006) .............................................................15

*Rogler v. Biglow*,
    610 F. Supp. 2d 103 (D.D.C. 2009) .......................................................18

*Rogler v. Gallin*,
    402 F. App'x 530 (D.C. Cir. 2010)..........................................................18

*Rolles v. Civil Serv. Comm'n*,
    512 F.2d 1319 (D.C. Cir. 1975) .............................................................21

*Rosen v. Am. Israel Pub. Affairs Comm., Inc.*,
    41 A.3d 1250 (D.C. 2012) .......................................................................7

*Rosenstein v. City of Dallas*,
    876 F.2d 392 (5th Cir. 1989) .................................................................37

*Sampson v. Sch. Dist. of Lancaster*,
    No. 05-cv-6414, 2009 WL 1675083 (E.D. Pa. June 15, 2009)...............27

*Saucier v. Katz*,
    533 U.S. 194 (2001)..............................................................................43

*Schmidt v. U.S. Capitol Police Bd.*,
    826 F. Supp. 2d 59 (D.D.C. 2011) .........................................................17

*Schnapper v. Foley*,
    471 F. Supp. 426 (D.D.C. 1979) ..............................................................8

*Segal v. City of New York*,
    459 F.3d 207 (2d Cir. 2006)...................................................................39

\*  *Siegert v. Gilley*,
    500 U.S. 226 (1991)..................................................................19, 25, 26

**Cases – continued**                                                                **Page(s)**

*Sisseton Wahpeton Oyate of Lake Traverse Reservation v. Jewell*,
   --- F. Supp. 3d ----, No. 13-cv-601, 2015 WL 5474487 (D.D.C. Sept. 17, 2015) ........7

*Small v. Emanuel*,
   840 F. Supp. 2d 23 (D.D.C. 2012) ............................................................18

*Steele v. Schafer*,
   535 F.3d 689 (D.C. Cir. 2008) ................................................................16

*Stone v. Univ. of Md. Med. Sys. Corp.*,
   855 F.2d 167 (4th Cir. 1988) .................................................................25

*Tabman v. F.B.I.*,
   718 F. Supp. 2d 98 (D.D.C. 2010) .....................................................38, 40

\* *Taylor v. Resolution Trust Corp.*,
   56 F.3d 1497 (D.C. Cir. 1995) ...............................................29, 31, 32, 34

*Terveer v. Billington*,
   34 F. Supp. 3d 100 (D.D.C. 2014) ...........................................................18

*Townsend v. Dep't of Navy*,
   No. 10-5332, 2011 WL 3419567 (D.C. Cir. Mar. 23, 2011) .......................18

*Townsend v. Mabus*,
   736 F. Supp. 2d 250 (D.D.C. 2010) .........................................................18

\* *Trifax Corp. v. Dist. of Columbia*,
   314 F.3d 641 (D.C. Cir. 2003) ...........................................................19, 32

*Tri-State Hosp. Supply Corp. v. United States*,
   341 F.3d 571 (D.C. Cir. 2003) ................................................................10

*Turner v. U.S. Capitol Police Bd.*,
   983 F. Supp. 2d 98 (D.D.C. 2013) ...........................................................15

*U.S. Info. Agency v. Krc*,
   905 F.2d 389 (D.C. Cir. 1990) ................................................................28

*United States v. Rostenkowksi*,
   59 F.3d 1291 (D.C. Cir. 1995) ................................................................45

*United States v. Swindall*,
   971 F.2d 1531 (11th Cir. 1992) ...............................................................45

**Cases – continued**                                                          **Page(s)**

*Vanover v. Hantman*,
   77 F. Supp. 2d 91 (D.D.C. 1999) ...........................................................9, 41

*Vanover v. Hantman*,
   38 F. App'x 4 (D.C. Cir. 2002) ..................................................................9

*Walker v. Jones*,
   557 F. Supp. 366 (D.D.C. 1983) .............................................................26

*Walker v. Jones*,
   733 F.2d 923 (D.C. Cir. 1984) ...........................................................21, 26

*Walsh v. Suffolk Cnty. Police Dep't*,
   No. 06-cv-2237, 2008 WL 1991118 (E.D.N.Y. May 5, 2008) ...................29

*Washburn v. Lavoie*,
   357 F. Supp. 2d 210 (D.D.C. 2004) ........................................................23

*Wilkie v. Robbins*,
   551 U.S. 537 (2007)................................................................................41

*Williams v. Court Servs. & Offender Supervision Agency for D.C.*,
   840 F. Supp. 2d 192 (D.D.C. 2012) ........................................................18

*Wilson v. Libby*,
   535 F.3d 697 (D.C. Cir. 2008) ................................................................42

\* *Winskowski v. City of Stephen*,
   442 F.3d 1107 (8th Cir. 2006) .....................................................35, 36, 38

*Wuterich v. Murtha*,
   562 F.3d 375 (D.C. Cir. 2009) .............................................................8, 11

*Young v. Dist. of Columbia*,
   107 F. Supp. 3d 69, 74 (D.D.C. 2015) ......................................................6

*Zimbelman v. Savage*,
   228 F.3d 367 (4th Cir. 2000) ..................................................................41

**Constitutional Provisions**

U.S. Const. art. I, § 6, cl. 1.................................................................................2, 44

**Statutes and Regulations**                                                                                           **Page(s)**

Congressional Accountability Act, 2 U.S.C. §§ 1301-1438 ......................................................1

2 U.S.C. § 1301(3) ...........................................................................................................15

2 U.S.C. § 1301(4) ...........................................................................................................15

2 U.S.C. § 1301(9)(B) ..............................................................................................14, 17

2 U.S.C. § 1317 ................................................................................................................40

2 U.S.C. § 1317(a) ...........................................................................................................14

2 U.S.C. § 1317(b) ...........................................................................................................16

2 U.S.C. § 1401 .........................................................................................................14, 40

2 U.S.C. § 1401(1) ...........................................................................................................17

2 U.S.C. § 1401(2) ...........................................................................................................17

2 U.S.C. § 1402 ................................................................................................................17

2 U.S.C. § 1403(b)(2) ......................................................................................................39

2 U.S.C. § 1404 ................................................................................................................40

2 U.S.C. § 1405 ................................................................................................................40

2 U.S.C. § 1406 ................................................................................................................40

2 U.S.C. § 1407 ................................................................................................................40

2 U.S.C. § 1408 ................................................................................................................40

2 U.S.C. § 1408(a) ...........................................................................................................14

2 U.S.C. § 1408(b) ....................................................................................................14, 17

2 U.S.C. § 4108(a) .............................................................................................................4

18 U.S.C. § 798 ................................................................................................................23

18 U.S.C. § 798(a) ...........................................................................................................23

**Statutes and Regulations – continued**                                                    **Page(s)**

18 U.S.C. § 1924................................................................................................23

18 U.S.C. § 1924(a)...........................................................................................23

18 U.S.C. § 2511(2)(d).......................................................................................24

18 U.S.C. § 3559(a)(6).......................................................................................23

Federal Tort Claims Act, 28 U.S.C. § 2680(h) ...................................................9

Fed. R. Civ. P. 12(b) ..........................................................................................2

Fed. R. Civ. P. 12(b)(1).......................................................................................7

Fed. R. Civ. P. 12(b)(6).....................................................................................10

Fed. R. Civ. P. 12(d) ...........................................................................................3

Fed. R. Civ. P. 56(a) .........................................................................................44

**Legislative Authorities**

H.R. Res. 567, 113th Cong. (2014).....................................................................30

**Other Authorities and Materials**

Br. for Appellees, *O'Donnell v. Barry*, No. 97-7129,
    1998 WL 35241356 (D.C. Cir. Feb. 9, 1998) ............................................36

Bill of Information, *United States v. David Howell Petraeus*,
    No. 3:15-cr-47 (W.D.N.C. Mar. 3, 2015) (ECF No. 1) ...............................23

Factual Basis, *United States v. David Howell Petraeus*,
    No. 3:15-cr-47 (W.D.N.C. Mar. 3, 2015) (ECF No. 3) ...............................23

## INTRODUCTION

Plaintiff Bradley Podliska brings constitutional and common law tort claims against the Honorable Trey Gowdy, Chairman of the Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi ("Committee"), purportedly in the Chairman's individual capacity. *See generally* Compl. (Nov. 23, 2015) (ECF No. 1).  The substance of both claims is the same – that Chairman Gowdy made allegedly false and defamatory statements to the press in October 2015 about Mr. Podliska's poor performance as a congressional investigator on the Committee's Majority staff.  The intended effect of both claims is clear – to compel Chairman Gowdy effectively to recant those statements, to forbid Chairman Gowdy from repeating those statements, and to force Chairman Gowdy to pay Mr. Podliska money out of his own pocket for the damage allegedly caused by those statements.

But Mr. Podliska's suit against Chairman Gowdy papers over the reality that Mr. Podliska *himself* already had widely publicized the allegedly defamatory facts about his poor performance as a congressional investigator *before* Chairman Gowdy even was asked to address Mr. Podliska's own public statements.  This suit also ignores clearly established law in its zeal to hold Chairman Gowdy individually liable for Mr. Podliska's personal publicity tour.  While Chairman Gowdy did nothing wrong, the Court need never reach the merits of Mr. Podliska's claims against him because this suit fails on numerous threshold grounds.  For instance, this suit ignores restrictions imposed by the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1301-1438, on Mr. Podliska's ability to recover.  *See infra* Argument, Part II.A-B.  This suit also defies the well-defined legal boundaries governing due process.  *See infra* Argument, Part II.C.1-4.  And, this suit overlooks at least four different types of dispositive immunity implicated by Chairman Gowdy's statements:  sovereign immunity, common law absolute

immunity, qualified immunity, and immunity pursuant to the Speech or Debate Clause, U.S.

Const. art. I, § 6, cl. 1. *See infra* Argument Parts I, II.C.5, II.D, III. Mr. Podliska's suit against

Chairman Gowdy lacks any perceptible merit, and the Court should now dismiss Counts IV and

V with prejudice and without leave to amend.

## BACKGROUND

This Memorandum addresses only those facts pertinent to the claims against Chairman

Gowdy, and "accept[s] all factual allegations in the complaint as true" for purposes of gauging

the sufficiency of the Complaint under Federal Rule of Civil Procedure Rule 12(b). *Blue v. Dist.*

*of Columbia*, --- F.3d ----, No. 14-7189, 2015 WL 9466228, at *1 (D.C. Cir. Dec. 29, 2015). By

accepting Mr. Podliska's factual allegations as true for Rule 12(b) purposes, however, Chairman

Gowdy does not concede the veracity of those allegations.[1]

The Committee hired Mr. Podliska in 2014 to serve as an investigator focusing on

intelligence matters, given his background in the intelligence field and his experience handling

classified material. *See* Compl. ¶¶ 10, 16, 42. On or about June 19, 2015, the Committee's

Security Manager allegedly "confronted [Mr. Podliska] and accused him and three other

Majority Staff members of a security violation for allegedly putting classified material onto an

unclassified system." *Id.* ¶ 41. Mr. Podliska allegedly denied that the material was classified,

insofar as he claims to have "used only publicly available sources from the Internet to write the

document" at issue. *Id.* Mr. Podliska allegedly challenged the Security Manager's "admitted"

failure to "use[] a classification manual in his review" of the "security violation," *id.* ¶ 42, and

---

[1] Moreover, the Complaint omits numerous critical, indisputable facts that derive from sources of which the Court properly may take judicial notice when ruling on a Rule 12(b) motion, including (i) "publicly available historical articles," *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013), and (ii) "public records," *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). This Memorandum relies on some of these sources, as noted below.

the Security Manager allegedly "acknowledged" to him "[l]ater . . . that the information in the document at issue was not classified," *id.* ¶ 44. Mr. Podliska nonetheless was allegedly "reprimanded" by the Committee for the "security violation." *Id.* ¶ 46.

Mr. Podliska alleges that on June 26, 2015, he met with the Committee's Staff Director (Philip Kiko) and Deputy Staff Director (Christopher Donesa), at which meeting he was given the option either to "tender his resignation within 30 days" or "be terminated." *Id.* ¶ 47; *see also id.* ¶¶ 13-14. Mr. Podliska omits that Mr. Donesa told him that the Committee decided he should no longer continue his employment with the Committee because he had failed to exercise appropriate judgment consistent with the Committee's mission, including with respect to the "security violation." *See* Aff. of Christopher A. Donesa ¶ 16 (Feb. 5, 2016) (ECF No. 22-2), Ex. 2 to Mem. of P. & A. in Supp. of Def. U.S. House of Representatives Select Comm. on Events Surrounding 2012 Terrorist Attack in Benghazi's Mot. to Dismiss Counts I & II of Compl. (Feb. 5, 2016) (ECF No. 22) ("Comm. Mem."); *see also* Aff. of Philip G. Kiko ¶ 13 (Feb. 5, 2016) (ECF No. 22-1), Ex. 1 to Comm. Mem.[2] Mr. Podliska also omits that he continued to dispute at this meeting the "security violation" determination. *See* Donesa Aff. ¶ 17.

Mr. Podliska alleges that on June 29, 2015, he "was terminated and ordered to leave the Majority Staff office immediately." Compl. ¶ 51. Mr. Podliska omits that he reported to the Committee's office on June 29, having neither accepted nor rejected the Committee's June 26 offer to resign in lieu of termination, and was asked to leave because he still was negotiating the terms of his separation from the Committee. *See* Donesa Aff. ¶ 19. Mr. Podliska also omits that

---

[2] The Court properly may consider "matters outside the pleadings" if it chooses to convert Chairman Gowdy's Motion to Dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 138-39 (D.D.C. 2015). The facts averred in these affidavits – submitted pursuant to *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006), in support of the Committee's Motion to Dismiss – are pertinent here solely to two arguments concerning Mr. Podliska's due process claim. *See infra* Argument, Parts II.C.1.b, II.C.4.

Mr. Donesa advised him at that time that he would remain on the Committee's payroll, *see id.*, which he did for several weeks thereafter, *see* Statement of Disbursements of the House, July 1, 2015 to September 30, 2015, pt. 3, at 2146, *available at* http://disbursements.house.gov/2015q3/ 2015q3_vol3.pdf (last visited Feb. 5, 2016) (reflecting service dates of "07/01/15" to "08/01/15"); 2 U.S.C. § 4108(a) (requiring House to create and publish Statements of Disbursements).   Mr. Podliska also omits that on July 12, 2015, while he remained on the payroll, he voluntarily and unilaterally tendered his resignation from the Committee by e-mail and letter.   *See* Donesa Aff. ¶ 20; Kiko Aff. ¶ 16.   On July 17, 2015, Chairman Gowdy approved Mr. Podliska's separation from the Committee, effective August 1, 2015.   *See* Kiko Aff. ¶ 17.

On August 5, 2015, Mr. Podliska initiated proceedings against the Committee pursuant to the CAA, which included a period of confidential mediation beginning September 10.   *See* Compl. ¶¶ 53-56.   During this mediation period, on or before October 10, 2015, Mr. Podliska provided interviews, statements, and a draft of his complaint to multiple major news outlets.[3]   In addition to making false accusations about the Committee's alleged "hyper-focus" on former Secretary of State Hillary Clinton and its alleged anti-reservist animus, Mr. Podliska told the press the reasons he allegedly was given in June for his separation from the Committee – including that he had "mishandl[ed] classified information."   Scheiber, et al., Ex. A at 2 ("In his [draft] complaint, Major Podliska, 41, acknowledges that he was told that he was being fired for

---

[3]   *See, e.g.*, Noam Scheiber, Eric Lipton, & Michael S. Schmidt, *Suit Over Firing Exposes Strife Within Benghazi Panel*, N.Y. Times, Oct. 10, 2015, *available at* http://web.archive.org/web/20151011034020/ http://www.nytimes.com/2015/10/11/us/politics/former-benghazi-investigator-says-he-was-fired-unlaw fully.html (last visited Feb. 5, 2016) (stating that "a draft [complaint] . . . was made available to The New York Times" and that Mr. Podliska gave "an interview") (attached as Ex. A); Jake Tapper & Jeremy Diamond, *Ex-Staffer: Benghazi Committee Pursuing 'Partisan Investigation' Targeting Hillary Clinton*, CNN (Oct. 10, 2015, updated 5:46 p.m.), *available at* http://web.archive.org/web/20151010222256/ http://www.cnn.com/2015/10/10/politics/benghazi-committee-investigation-political-hillary-clinton-brad- podliska-lawsuit/index.html (last visited Feb. 5, 2016) (referring to "a draft of the lawsuit Podliska's lawyers provided to CNN") (attached as Ex. B).

three infractions, the most serious of which was mishandling classified information, although he disputes the charge.").[4]

Shortly after Mr. Podliska's story broke midday on October 10, the Committee responded to requests for comment.[5]  The Committee's comment, however, did not mention the June 2015 "security violation."  At 9:00 a.m. the following morning, on October 11, CNN aired portions of an interview Mr. Podliska had taped days earlier.[6]  After that broadcast, Chairman Gowdy issued his first statement responding to Mr. Podliska's false claims about the Committee's investigative focus and his allegedly wrongful termination.[7]  This statement, among other things, repeated

---

[4] *Accord* Tapper & Diamond, Ex. B at 1 ("Podliska alleges that the committee's staff director told him he was fired for three reasons:  using work email to send a social invitation to colleagues, assigning an 'unauthorized project' to an intern, and allegedly putting classified information on an unclassified system."); Associated Press, *Fired Benghazi Investigator Says House Probe Is Partisan* (Oct. 10, 2015, 6:51 p.m.), *available at* http://bigstory.ap.org/article/55904274e2d94b6aa9cb96e37f159322/fired-benghazi-investigator-says-house-probe-partisan (last visited Feb. 5, 2016) ("Podliska was fired after 10 months on the committee.  He disputed what he said were the reasons given for his termination:  using work email to send a social invitation to colleagues, assigning an 'unauthorized project' to an intern and allegedly putting classified information on an unclassified system."); *see also* App., *infra*, at 1a-2a (citing additional October 10, 2015 articles discussing "classified information").

[5] *See* @nytmike (Michael S. Schmidt, N.Y. Times reporter), Twitter (Oct. 10, 2015, 12:25 p.m.), https://twitter.com/nytmike/status/652927924790788097 (last visited Feb. 5, 2016) ("x-Rep Benghazi staffer fired for mishandling classified info to file complaint saying panel was 2 focused on Clinton . . . ."); Noam Scheiber, Eric Lipton, & Michael S. Schmidt, *Former Benghazi Investigator Says He Was Fired Unlawfully*, N.Y. Times, Oct. 10, 2015, *available at* http://www.newsdiffs.org/diff/985927/985962/www.nytimes.com/2015/10/11/us/politics/former-benghazi-investigator-says-he-was-fired-unlawfully.html (last visited Feb. 5, 2016) (earlier online iterations of N.Y. Times article both before and after Committee's response, noted in green) (attached as Ex. C); *see also, e.g.*, Hadas Gold, *Benghazi Committee Blasts CNN for Interview with Former Staffer*, Politico (Oct. 11, 2015, 1:39 p.m.; updated 9:35 p.m.), http://www.politico.com/blogs/on-media/2015/10/benghazi-committee-goes-after-cnn-214651 (last visited Feb. 5, 2016) ("A CNN spokesperson said the network contacted the committee on Saturday with a 'detailed description of Podliska's accusations.'").

[6] *See generally* Transcript, CNN's "State of the Union," Oct. 11, 2015 (9:00 a.m.), *available at* http://transcripts.cnn.com/TRANSCRIPTS/1510/11/sotu.01.html (last visited Feb. 5, 2016).  On October 12, 2015, CNN aired additional segments of this same pre-taped interview, in which Mr. Podliska discussed the allegations in his complaint about "putting classified information on an unclassified system."  *See* Transcript, CNN's "The Lead with Jake Tapper," Oct. 12, 2015 (4:00-5:00 p.m.), *available at* http://transcripts.cnn.com/TRANSCRIPTS/1510/12/cg.01.html, *and* http://transcripts.cnn.com/TRANSCRIPTS/1510/12/cg.02.html (last visited Feb. 5, 2016).

[7] *See, e.g.*, *Chairman Trey Gowdy of the Select Committee on Benghazi Responds . . . See His Statement*,

(*Continued. . .*)

what multiple news outlets already had reported the day before concerning Mr. Podliska's

"mishandling of classified information."[8]  Chairman Gowdy gave a taped interview later that day

reaffirming the substance of his written statement.  *See* Compl. ¶ 62 & nn.6-7.

On October 12, Mr. Podliska's counsel sent a cease-and-desist letter to counsel for the

Committee.  *See* Compl. ¶ 65.  But that letter did not mention any public statements made by the

Committee or Chairman Gowdy concerning the reasons for Mr. Podliska's termination, nor did it

dispute the truth of those statements.  *See* Letter from Thomas J. Jarrard, Esq., et al., to Russell

Gore, Sr. Ass't Counsel, et al., Oct. 12, 2015, *available at* http://www.scribd.com/doc/284611

872/Cease-and-Desist-Letter-to-Committee-Oct-12-2015 (last visited Feb. 5, 2016); *see also*

*Young v. Dist. of Columbia*, 107 F. Supp. 3d 69, 74 (D.D.C. 2015) (courts may consider

"documents incorporated into the complaint by reference" "when ruling on Rule 12(b)(6)

motions" (quotation marks omitted)).  On October 13, 2015, the mediation period under the

CAA expired.  *See* Compl. ¶ 56.  Mr. Podliska filed this suit on November 23, 2015.

## ARGUMENT

## I.   THE DEFAMATION CLAIM (COUNT IV) MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM.

To prevail on the merits of his defamation claim, Mr. Podliska must show, among other

things, that Chairman Gowdy "published the statement[s] without privilege to a third party."

---

Gretawire: Fox News Insider (Oct. 11, 2015, 12:12 p.m.), http://gretawire.foxnewsinsider.com/2015/
10/11/chairman-trey-gowdy-of-the-select-committee-on-benghazi-responds-see-his-statement/ (last
visited Feb. 5, 2016); Associated Press, *Benghazi Committee Chair: Staffer Fired for Classified Info
Breach*, Huffington Post (Oct. 11, 2015, 2:45 p.m.), *available at* http://www.huffingtonpost.com/entry/
benghazi-trey-gowdy-podliska_us_561aad29e4b0dbb8000ef733 (last visited Feb. 5, 2016) ("Republican
Rep. Trey Gowdy of South Carolina released a statement on Sunday after the former staffer, Air Force
Reserve Maj. Bradley F. Podliska, told CNN and The New York Times he was unlawfully fired in part
because he sought to probe the deadly attacks on the U.S. compound – not Hillary Rodham Clinton and
the State Department."); *accord* Compl. ¶ 61.

[8]  *See, e.g.*, Associated Press, *supra* note 7 (stating that Chairman Gowdy "says he fired a staffer for
mishandling classified information, among other causes").

*Rosen v. Am. Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012).  Here, Chairman

Gowdy's statements self-evidently would be covered by D.C.'s "self-defense" privilege because

he "had been subjected to serious attacks . . . in the press" orchestrated by Mr. Podliska, and

therefore was "privileged to respond to those attacks in self-defense."  *Novecon Ltd. v.*

*Bulgarian-Am. Enterprise Fund*, 190 F.3d 556, 567 (D.C. Cir. 1999); *accord Mosrie v. Trussell*,

467 A.2d 475, 477 (D.C. 1983).  But the Court need not reach that issue, or the other merits of

Count IV, because two independent forms of absolute legal immunity bar this claim outright.

### A. Court IV Is Barred by Sovereign Immunity Because the Claim Challenges Only Official Conduct.

Sovereign immunity bars suits against federal officials for actions taken in their official

capacities unless a clear waiver applies.[9]  Although nominally fashioned as a "common law"

claim against Chairman Gowdy in his "individual capacity," Count IV in both substance and

effect is a claim against the Chairman in his official capacity that must be dismissed pursuant to

Rule 12(b)(1).  *See Dougherty v. United States*, --- F. Supp. 3d ----, No. 15-cv-582, 2016 WL

225681, at *3 (D.D.C. Jan. 19, 2016) ("A motion to dismiss based on sovereign immunity . . . is

evaluated under [Rule] 12(b)(1) . . . .").

"[T]he sovereign can act only through agents . . . ."  *Larson*, 337 U.S. at 688.  Thus,

"when the agent['s] actions are restrained, the sovereign itself may, through him, be restrained."

*Id.*  Such "compulsion against the sovereign" is no less offensive when the requested relief is

---

[9]  *See, e.g.*, *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686-87 (1949) (injunctive and
declaratory relief against federal official for actions within his "official function" barred by sovereign
immunity, because "suit [was] . . . in effect, a suit against the sovereign"); *Mackinac Tribe*, 87 F. Supp.
3d at 135 ("[A] claim brought against a federal official for acts performed within her official capacity
qualifies as a suit against the sovereign."), *appeal docketed*, No. 15-5118 (D.C. Cir. Apr. 28, 2015); *see
also Sisseton Wahpeton Oyate of Lake Traverse Reservation v. Jewell*, --- F. Supp. 3d ----, No. 13-cv-601,
2015 WL 5474487, at *2 (D.D.C. Sept. 17, 2015) ("Plaintiffs bring their lawsuit against federal officials,
so they 'must prove a clear waiver of sovereign immunity that covers the substantive claims and remedies
that they seek.'" (quoting *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 24 (D.D.C. 1999))).

"nominally directed against the individual officer." *Id.*; *accord Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451, 454 (D.C. Cir. 1965) ("A suit is against the United States if . . . it would interfere with the public administration by either restraining the Government from acting or requiring it to act.").[10]  Courts must look past the labels affixed to the claim, *see Manhattan-Bronx*, 350 F.2d at 454, and instead determine whether the "particular suit is . . . , in effect, a suit against the sovereign," *Larson*, 337 U.S. at 687; *accord Land v. Dollar*, 330 U.S. 731, 738 (1947) ("essential nature and effect of the proceeding"); *Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 374 (1945) ("essential allegations and the relief sought").

Here, the essential allegations in Count IV challenge actions taken by Chairman Gowdy plainly and exclusively in his official capacity.  All of Chairman Gowdy's allegedly defamatory statements to the press concerned the Committee's official business, both as an investigative body and as Mr. Podliska's employer.  *See generally* Compl. ¶¶ 59-62 & nn.5-8, 95.  Chairman Gowdy learned about these matters strictly in his capacity as Chairman of the Committee.  *See In re Subpoena In Collins*, 524 F.3d 249, 252-53 (D.C. Cir. 2008) (sovereign immunity protects knowledge obtained by federal employee while "exercising the powers delegated to him by the sovereign," or that "will reveal information in government records or about the workings of government").  Chairman Gowdy was invited to speak on these matters solely because he heads the Committee, and he spoke to the press in that same capacity.  *See, e.g.*, *Wuterich v. Murtha*, 562 F.3d 375, 384-85 (D.C. Cir. 2009) ("'[S]peaking to the press during regular work hours in

---

[10]  *See, e.g.*, *Reisman v. Caplin*, 317 F.2d 123, 125 (D.C. Cir. 1963) (sovereign immunity barred suit against federal official because, "by obtaining relief against the officer, relief would, in effect, be obtained against the sovereign" (quotation marks omitted)); *Schnapper v. Foley*, 471 F. Supp. 426, 427 (D.D.C. 1979) ("This action is in reality against the United States since the only relief sought against the federal defendants is to order them to perform or refrain from performing certain acts in their official capacities."); *Hadnott v. Laird*, 317 F. Supp. 379, 382 (D.D.C. 1970) (sovereign immunity barred suit because relief sought would compel individual officials to act).

response to a reporter's inquiry falls within the scope of a congressman's 'authorized duties.'" (quoting *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006))).

Moreover, Mr. Podliska seeks to constrain Chairman Gowdy from acting in his official capacity.  Not only does Mr. Podliska demand "equitable relief in the form of a declaration" that Chairman Gowdy's official statements were "false and defamatory."  Compl. ¶ 99; *cf. Clayton v. Dist. of Columbia*, 931 F. Supp. 2d 192, 201 (D.D.C. 2013) (noting that "the Declaratory Judgment Act, 28 U.S.C. § 2201, . . . does not waive sovereign immunity").  Mr. Podliska further demands a "permanent injunction barring Chairman Gowdy from repeating" those statements. Compl. ¶ 99; *accord id.* at 28-29, ¶¶ e, h, p.[11]  Such injunctive relief improperly would prevent the Chairman from discussing Mr. Podliska's poor job performance in any official capacity in the future, including in response to reference checks by Mr. Podliska's prospective employers. *See Jacobs v. Vrobel*, 724 F.3d 217, 222-23 (D.C. Cir. 2013) (responding to reference calls, even in defamatory way, within official scope); *Davis v. United States*, 973 F. Supp. 2d 23, 27 n.2 (D.D.C. 2014) ("Courts are not in the business of enjoining future actions of specific government officials, even in their individual capacities."); *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007) ("[Plaintiff] simply cannot seek [injunctive relief] from the individual defendants in their personal capacities" because that relief "can only be provided by the government through government employees acting in their official capacities."); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 99 (D.D.C. 1999) (similar), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (per curiam).

Calling Count IV a "common law" defamation claim against Chairman Gowdy in his "individual capacity" does not change the obvious:  that the "essential allegations and the relief

---

[11]  Mr. Podliska presumably has opted "not [to] seek any damages associated with his common law defamation claim," Compl. ¶ 99, because the Federal Tort Claims Act expressly bars that relief, *see* 28 U.S.C. § 2680(h).

sought" here are exclusively official and, consequently, run against the sovereign.  It therefore is

Mr. Podliska's burden to identify a clear waiver of sovereign immunity authorizing this claim.

*See Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); *Davis v.*

*Sarles*, --- F. Supp. 3d ----, No. 14-cv-1389, 2015 WL 5728541, at *2 (D.D.C. Sept. 29, 2015).

He has made no attempt to identify such a waiver, and with good reason – no waiver applies.

> **B.      Chairman Gowdy Would Enjoy Absolute Immunity Under D.C. Law Even if Sovereign Immunity Did Not Bar Count IV.**

Even if Count IV could proceed as a common law claim against Chairman Gowdy in his

individual capacity, the claim still would have to be dismissed under Rule 12(b)(6) because

Chairman Gowdy would be absolutely immune from suit under D.C. law.  *See Moss v. Stockard*,

580 A.2d 1011, 1020 n.18 (D.C. 1990) (absolute immunity properly raised under Rule 12(b)(6)).

In order to "serve the public interest in effective government," D.C. long has recognized

absolute immunity for government officials sued for common law torts arising out of their

discretionary official acts.  *Dist. of Columbia v. Jones*, 919 A.2d 604, 607 (D.C. 2007); *see also*

*Moss*, 580 A.2d at 1020; *Goldstein v. Pearson*, 121 A.2d 260, 262 (D.C. 1956).  This immunity

shields government officials "not only from ultimate liability but also from all the time-

consuming, distracting, and unpleasant aspects of a lawsuit, including discovery."  *Jones*, 919

A.2d at 611.

Absolute immunity applies when (i) the defendant's "conduct is within the 'outer

perimeter' of official duties," and (ii) "the governmental function at issue was 'discretionary'

rather than 'ministerial.'"  *Jones*, 919 A.2d at 608 (quoting *Moss*, 580 A.2d at 1020); *see also*

*Moss*, 580 A.2d at 1020 & n.16 (immunity attaches to particular official functions, not to

particular offices).  Here, Chairman Gowdy's allegedly defamatory statements to the press meet

both requirements.

*First*, it is well-established that official press statements – even for the purpose of rebutting public criticism or commenting on a public employee's job performance – fall squarely "within the outer perimeter of official duties."  *See, e.g.*, *Jones*, 919 A.2d at 606, 608 (it could not "fairly be questioned" that "[i]nforming the public about the conduct of persons serving in the Office of the Mayor," and responding to criticism in press regarding actions of Mayor's Office, within outer perimeter of Mayor's duties); *Kendrick v. Fox Television*, 659 A.2d 814, 819 (D.C. 1995) (statement to media about investigation under official's control within his official duties).  Indeed, even if this scope-of-employment test did not apply "very expansively," *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1330 (D.C. Cir. 2014), *cert. denied*, 136 S. Ct. 37 (2015), making press statements is, "to say the least . . . a critical part of the expected and authorized conduct of a United States Congressman," *Council on Am. Islamic Relations, Inc. v. Ballenger*, 366 F. Supp. 2d 28, 31 (D.D.C. 2005), *aff'd*, 444 F.3d 659, 665 (D.C. Cir. 2006) (citing cases); *see, e.g.*, *Wuterich*, 562 F.3d at 385 ("[I]t is hard to fathom how Congressman Murtha's discussion of grave public policy concerns relating to the war in Iraq could ever fall outside the scope of his employment.").  Accordingly, Chairman Gowdy's press statements about the Committee's business were well within the official sphere.

*Second*, Chairman Gowdy's press statements were wholly discretionary under the four-factor test used to determine whether "subordinating the vindication of private injuries otherwise compensable at law" is necessary to vindicate "society's concern to shield the particular government function at issue from the disruptive effects of civil litigation."  *Moss*, 580 A.2d at 1020-21.  That test considers:  "(1) the nature of the [plaintiff's] injury, (2) the availability of alternate remedies, (3) the ability of the courts to judge fault without unduly invading the

[government's] function, and (4) the importance of protecting particular kinds of acts." *Id.* at 1021 (footnote omitted); *see also Jones*, 919 A.2d at 609.  All four factors favor immunity here.

(1) Mr. Podliska "claims damage to his reputation, and not physical injury," which "balances in favor of conferring absolute immunity." *Jones*, 919 A.2d at 609; *see also Dist. of Columbia v. Simpkins*, 720 A.2d 894, 898 (D.C. 1998); *Kendrick*, 659 A.2d at 820.

(2) Mr. Podliska has "alternate remedies" available to him, *Moss*, 580 A.2d at 1021, including remedies under the CAA, *see infra* Argument, Part II.A-B, and access to the media, *see, e.g.*, *Kendrick*, 659 A.2d at 820 n.14 (ability to appear on media to refute alleged defamation qualifies as "a partial, informal remedy").

(3) The burdens of litigation inherent to defamation claims, including discovery, would "unduly invad[e]" Chairman Gowdy's and the Committee's legislative business.  *Moss*, 580 A.2d at 1021; *see also infra* Argument, Part III (discussing Speech or Debate Clause implications of Counts IV and V).[12]  That business includes "conducting [a] sensitive and difficult investigation[]," as well as "attempting to keep the public adequately informed" about that investigation. *Kendrick*, 659 A.2d at 820; *see also Jones*, 919 A.2d at 610.

(4) Threatening liability for public statements about the Committee's ongoing legislative business promises to inhibit candor, directly contrary to the public's interest in open government.  *See Jones*, 919 A.2d at 610 ("[S]ociety has a strong

---

[12]  For instance, Count IV would require a "detailed examination of actions" taken by the Committee and Chairman Gowdy, including: (i) the substance of the material giving rise to Mr. Podliska's "security violation"; (ii) the Committee's protocols for handling classified information; (iii) the legislative reasons for those protocols; and (iv) internal Committee communications about Mr. Podliska's performance as an investigator spanning nearly a year.

interest in protecting the ability and willingness of officials to keep the public informed about their own conduct and the conduct of persons under their supervision."); *see, e.g.*, *Kendrick*, 659 A.2d at 820 ("The public interest requires that police officials be free to comment about ongoing police activity on matters of public concern.").

*          *          *

Because Chairman Gowdy made his allegedly defamatory statements to the press in his official capacity, and because threatening him with liability for such public statements would "unduly invade" his and the Committee's legislative functions, *Moss*, 580 A.2d at 1021, the Chairman would be entitled to absolute immunity under D.C. law even if the Court does not dismiss Count IV on sovereign immunity grounds.

## II.   THE DUE PROCESS CLAIM (COUNT V) MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM.

### A.   Count V Is Just a "Constitutionalized" Retaliation Claim, Covered by the Congressional Accountability Act, Which Mr. Podliska Did Not Exhaust.

Mr. Podliska casts Count V as a "violation of [his] due process rights under the Fifth Amendment." Compl. at 25. But stripping Count V of its labels and legal conclusions, the gravamen of this claim is that Chairman Gowdy and unnamed Committee staffers made false and defamatory statements to the press about Mr. Podliska *because* Mr. Podliska had "exercis[ed] his rights under the CAA and USERRA." Compl. ¶ 102; *see also, e.g.*, *id.* ¶ 3 ("As soon as Podliska announced that he intended to file a civil suit as authorized by the CAA and USERRA, Chairman Gowdy and his Benghazi Committee staffers responded by intentionally defaming Podliska . . . ."); *id.* ¶ 59 ("On or about October 10, 2015, the Benghazi Committee, Chairman Gowdy, and their agents on the Majority Staff began communicating with the national news media . . . about the Benghazi Committee's termination of Plaintiff in an effort to retaliate

13

against Plaintiff for exercising his rights under the CAA and USERRA . . . ."); *id.* ¶ 100 (incorporating by reference "paragraphs 1 through 99").  Count V therefore alleges, at best, a retaliation claim that lies (if at all) only under the CAA.

By couching Count V in constitutional terms, Mr. Podliska purports to evade the rigors imposed by the CAA – namely, that his claim proceed against the Committee rather than the Chairman (in any capacity), *see* 2 U.S.C. §§ 1301(9)(B), 1408(b), and that he exhaust his claim administratively before bringing suit, *see id.* §§ 1401, 1408(a).  The Court, of course, is not bound by "'the label which a plaintiff applies to a pleading.'"  *Johnson v. United States*, 547 F.2d 688, 691 (D.C. Cir. 1976) (quoting *Aktiebolaget Bofors v. United States*, 194 F.2d 145, 148 (D.C. Cir. 1951)).[13]  Nor can Mr. Podliska, through clever drafting or "artful pleading," circumvent the "thorough remedial scheme" Congress already has provided to him.  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976); *see, e.g.*, *Ethnic Emps. of Lib. of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) ("[T]he district court properly dismissed those constitutional claims that simply restated . . . claims of retaliation for the invocation of Title VII rights.").

### 1.     The CAA Prohibits Retaliation Against Former Employees Who Exercise Their Rights Under the CAA.

The CAA makes it "unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee . . . because the covered employee has initiated proceedings, [or] made a charge . . . under [the CAA]."  2 U.S.C. § 1317(a).  Like the CAA's substantive anti-discrimination provisions, Section 1317 applies to both "former

---

[13] *Accord Olaniyi v. Dist. of Columbia*, 763 F. Supp. 2d 70, 90 (D.D.C. 2011); *Edmonds v. United States*, 436 F. Supp. 2d 28, 35 (D.D.C. 2006); *Arbitraje Casas de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 168-69 (D.D.C. 2003); *Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 550 (D.D.C. 1981).

employee[s]" and current employees alike.  *Id.* §§ 1301(3)-(4); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 345 (1997) (holding that term "employees" in Title VII's anti-retaliation provision includes "former employees").[14]

Section 1317, like Title VII's anti-retaliation provision, also protects against more than just reprisals occurring strictly within the workplace and reprisals affecting solely the terms and conditions of employment.  *See, e.g.*, *Turner v. U.S. Capitol Police Bd.*, 983 F. Supp. 2d 98, 107 (D.D.C. 2013); *Joyce v. Office of Architect of Capitol*, 966 F. Supp. 2d 15, 23 (D.D.C. 2013); *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 56 (D.D.C. 2011); *see also Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) ("[A]n alleged act of retaliation by the Government need not be related to the plaintiff's employment in order to state a claim of discrimination under Title VII.").  After all, "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (applying Title VII); *see also Robinson*, 519 U.S. at 346 (explaining that "exclusion of former employees from the protection of [Title VII's anti-retaliation provision] would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims").

Allegedly retaliatory conduct thus may be actionable under the CAA if "a reasonable employee would have found the challenged action materially adverse," i.e., when the conduct "well might have dissuaded a reasonable worker from making or supporting a charge of

---

[14]  Although Section 1317 "contains no express tie to other statutes, courts routinely refer to Title VII case law in evaluating claims of retaliation under the CAA."  *Joyce v. Office of Architect of Capitol*, 106 F. Supp. 3d 163, 168 (D.D.C. 2015).

discrimination." *Burlington*, 548 U.S. at 68 (quotation marks omitted); *accord Newton v. Office of Architect of Capitol*, 905 F. Supp. 2d 88, 93 (D.D.C. 2012) (same); *Hollabaugh v. Office of Architect of Capitol*, 847 F. Supp. 2d 57, 66 (D.D.C. 2012) (same); *Moran*, 820 F. Supp. 2d at 56 (same); *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 101-02 (D.D.C. 2011) (same).

For instance, and critically here, actionable retaliatory conduct can include false, misleading, or pejorative statements made to the press and others about a former employee's job performance. *See, e.g.*, *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (recognizing as "retaliatory" employer's allegedly "false report to the D.C. Office of Unemployment Compensation contesting [employee's] unemployment benefits"); *accord Butt v. United Bhd. of Carpenters & Joiners of Am.*, 512 F. App'x 233, 235, 237 (3d Cir. 2013) (letter forwarded to press "explaining that [plaintiffs] had been laid off previously for poor work performance"); *Bragg v. Office of Dist. Att'y*, 704 F. Supp. 2d 1032, 1052 (D. Colo. 2009) (disclosure to local newspaper of "highly pejorative comments regarding Plaintiff"); *Persichitte v. Univ. of N. Colo.*, No. 05-cv-1508, 2006 WL 2790407, at *6 (D. Colo. Sept. 27, 2006) (disclosure of "false or misleading information about [plaintiff] to a newspaper which wrote a story describing her alleged misuse of state funds").

### 2.     Count V Must Be Dismissed Under the CAA.

As a result of Mr. Podliska's *factual* allegations, *see Blue*, 2015 WL 9466228, at *1, Count V effectively asserts a claim of retaliation for which Section 1317 provides him both a cause of action and potential remedies, *see* 2 U.S.C. § 1317(b) ("The remedy available for a violation of subsection (a) of this section shall be such legal or equitable remedy as may be appropriate to redress a violation of subsection (a) of this section."). Yet properly construed as a CAA retaliation claim, Count V must be dismissed on two independent, dispositive grounds.

*First*, Count V fails to state a claim because Mr. Podliska asserts the claim against Chairman Gowdy rather than the Committee as the "employing office" (i.e., the suable entity) under the CAA.  *See* 2 U.S.C. §§ 1301(9)(B), 1408(b); *see, e.g.*, *Moore v. Capitol Guide Bd.*, 982 F. Supp. 35, 40 (D.D.C. 1997).  *Second*, Count V must be dismissed for lack of subject-matter jurisdiction because Mr. Podliska has not sought counseling on, nor mediated, this claim. *See* 2 U.S.C. §§ 1401(1)-(2), 1402; *see also Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 705 (D.C. Cir. 2009) ("[I]t is apparent from the plain terms of the text that Congress intended counseling and mediation to be jurisdictional requirements."); *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 72 (D.D.C. 2011) ("[V]iolations of § 1317 are subject to the same exhaustion of administrative remedies before a district court has subject-matter jurisdiction over the claim.").  It is Mr. Podliska's burden to establish this Court's subject matter jurisdiction, *see Arpaio v. Obama*, 797 F.3d 11, 18 (D.C. Cir. 2015), *cert. denied*, --- S. Ct. ----, No. 15-643, 2016 WL 207283 (Jan. 19, 2016), and he has failed to demonstrate that he exhausted his administrative remedies before suing on this claim, *see generally* Compl. ¶ 53 (alleging that, "[o]n August 5, 2015, Plaintiff made a timely request for counseling"); *id.* ¶ 55 (alleging that, "[o]n September 10, 2015, Plaintiff initiated mediation); *id.* ¶ 59 (alleging that retaliatory defamation began "on or about October 10, 2015").

### B.   Count V Alternatively Must Be Dismissed Because the Availability of Relief Under the CAA Precludes Any Due Process Claim.

Under longstanding D.C. Circuit precedent, federal employees may not bring constitutional claims challenging conduct that is actionable under federal employment statutes. *See, e.g.*, *Ethnic Emps.*, 751 F.2d at 1415 ("[T]his circuit has repeatedly held that federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII."); *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983) ("Despite

coverage under Title VII, the Kizas complainants contend that they may pursue, additionally or alternately, a claim directly under the fifth amendment.  This argument is unavoidably foreclosed by precedent."); *Morris v. W.M.A.T.A.*, 702 F.2d 1037, 1040 (D.C. Cir. 1983) (similar); *Terveer v. Billington*, 34 F. Supp. 3d 100, 121 (D.D.C. 2014) ("This Circuit has specifically held that *Brown* preclusion applies when a federal employee seeks, as Plaintiff does, to bring *constitutional* claims that could be brought by federal employees under Title VII.").[15]

Here, as explained above, Mr. Podliska could have brought the claim asserted in Count V against the Committee pursuant to Section 1317.  *See supra* Argument, Part II.A.  Notwithstanding Mr. Podliska's decision to forego a remedy under the CAA, the *availability* of that statutory relief forecloses his "due process" claim against Chairman Gowdy.  *See, e.g.*, *Rogler v. Biglow*, 610 F. Supp. 2d 103, 105 (D.D.C. 2009) ("[Plaintiff] cannot recast her Title VII retaliation claims as constitutional claims.  Because that is precisely what she has done here, the Court will dismiss her constitutional claims with prejudice." (citation omitted)), *aff'd sub nom. Rogler v. Gallin*, 402 F. App'x 530 (D.C. Cir. 2010); *see also Hoey v. Dist. of Columbia*, 540 F. Supp. 2d 218, 230-31 & n.6 (D.D.C. 2008) (dismissing due process claim where "[t]he allegedly defamatory statements [were] made . . . in direct response to inquiries concerning [the employee's] demotion," were therefore actionable under D.C. statutory law, but plaintiff had not exhausted claim administratively as required by statute).  On this basis alone, the Court should dismiss Count V with prejudice.

---

[15] *See also, e.g.*, *Townsend v. Dep't of Navy*, No. 10-5332, 2011 WL 3419567, at *1 (D.C. Cir. Mar. 23, 2011) (per curiam), *aff'g Townsend v. Mabus*, 736 F. Supp. 2d 250 (D.D.C. 2010); *Ames v. Johnson*, --- F. Supp. 3d ----, No. 13-cv-1054, 2015 WL 4880635, at *6 (D.D.C. Aug. 14, 2015); *King v. Holder*, 941 F. Supp. 2d 83, 92 (D.D.C. 2013); *Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 840 F. Supp. 2d 192, 199 (D.D.C. 2012); *Small v. Emanuel*, 840 F. Supp. 2d 23, 29 (D.D.C. 2012); *McDonald v. Salazar*, 831 F. Supp. 2d 313, 332-33 (D.D.C. 2011); *Kittner v. Gates*, 783 F. Supp. 2d 170, 174 (D.D.C. 2011).

**C.      Even if the CAA Did Not Preclude Mr. Podliska's Due Process Claim, Count V Still Fails to State a Claim Upon Which Relief May Be Granted.**

On its merits, Count V strains to avoid two clear limitations on due process claims brought by plaintiffs challenging the stigma arising from their loss of at-will government employment. *First*, at-will employees – including Mr. Podliska – have no protected liberty or property interest in their continued employment or reemployment, inasmuch as they can be fired "at any time and for any reason, or for no reason at all." *McCormick v. Dist. of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014) (quotation marks omitted); *see, e.g.*, *Bishop v. Wood*, 426 U.S. 341, 348 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 578 (1972). "[O]ne cannot be deprived unlawfully of something to which one had no legally protected right before the deprivation." *McCormick*, 752 F.3d at 987. *Second*, "[d]efamation, by itself, is . . . not a constitutional deprivation," because there is no "constitutional protection for the interest in reputation." *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991); *see, e.g.*, *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). Thus, any "damage flow[ing] from injury caused by the defendant to a plaintiff's reputation . . . is not recoverable in a[n individual capacity] action." *Siegert*, 500 U.S. at 234.

Courts recognize two "narrow exceptions" to the "general rule" that "'persons whose future employment prospects have been impaired by government defamation 'lack . . . any constitutional protection for the interest in reputation.'" *McGinnis v. Dist. of Columbia*, 65 F. Supp. 3d 203, 212-13 (D.D.C. 2014) (quoting *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003)); *see also McCormick*, 752 F.3d at 987 ("[T]he availability of such an action in the case of an at-will employee is at best very narrow."). The first exception – a "reputation-plus" claim – requires "the conjunction of official defamation and adverse employment action." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). The second

exception – a "stigma or disability" claim – "provides a remedy where the terminating employer imposes upon the discharged employee 'a stigma or other disability that foreclosed [the employee's] freedom to take advantage of other employment opportunities.'" *McCormick*, 752 F.3d at 988 (quoting *O'Donnell*, 148 F.3d at 1140). This "second theory, which is not always distinct from the first, . . . 'does not depend on official speech' but [rather] a 'stigma or disability arising from official action.'" *Id.* (quoting *O'Donnell*, 148 F.3d at 1140)).

Mr. Podliska's due process claim invokes both of these "narrow exceptions." His claim falls equally short on both.

### 1.   Mr. Podliska Has Not Sufficiently Pled a "Reputation-Plus" Claim.

Whether Chairman Gowdy's statements were defamatory for purposes of Mr. Podliska's due process claim hinges on D.C. law. *See Campbell v. Dist. of Columbia*, --- F. Supp. 3d ----, No. 12-cv-1769, 2015 WL 5188618, at *6 n.5 (D.D.C. Sept. 4, 2015). As explained above, those statements were privileged under D.C. law. *See supra* at pp. 6-7. But even if the statements were not privileged, Mr. Podliska's reputation-plus claim founders on several independent grounds.

#### a.   Statements About Mr. Podliska's Poor Job Performance Are Not Actionable.

The D.C. Circuit and courts in this Circuit recognized long ago – and have held repeatedly since – that a reputation-plus claim "cannot be based on defamation related to a plaintiff's job performance." *Fonville v. Dist. of Columbia*, 38 F. Supp. 3d 1, 14 (D.D.C. 2014); *see, e.g.*, *Mazaleski v. Treusdell*, 562 F.2d 701, 714 (D.C. Cir. 1977) (holding that "unsatisfactory job performance and insubordination . . . are [not] of such a serious and derogatory nature as to require procedural due process protection"); *Matthews v. Hesburgh*, 504 F. Supp. 108, 116 (D.D.C. 1980) ("[C]harges of substandard performance do not amount to

accusations of dishonesty or immorality or anything remotely approaching the nature of the

degrading and unsavory stigmas which would expose an employee to public embarrassment and

ridicule."), *aff'd*, 672 F.2d 895 (D.C. Cir. 1981).

"Rather, to implicate constitutional interests under the reputation-plus theory,

the . . . defamation must 'call into serious question those personal characteristics that are central

or enduring in nature,' such as 'accusations of dishonesty, the commission of a serious felony,

manifest racism, serious mental illness, or a lack of intellectual ability.'" *Fonville*, 38 F. Supp.

3d at 14 (quoting *Alexis v. Dist. of Columbia*, 44 F. Supp. 2d 331, 339 (D.D.C. 1999)); *see also*

*Mazaleski*, 562 F.2d at 714 & nn.32-36 (citing cases).  These "characteristics imply an inherent

or at least a persistent personal condition, which both the general public and a potential future

employer are likely to want to avoid," whereas allegations of "[i]nadequate job performance

. . . suggest[] a *situational* rather than an intrinsic difficulty; as part of one's biography it invites

inquiry, not prejudgment." *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987) (emphasis

added).[16]  Consequently, "statements that an employee was demoted or fired for 'disruptive

conduct,' 'improper and substandard job performance,' failure to meet minimum standards in

professional relationships, 'highly unethical' professional conduct, 'unsatisfactory performance,'

and 'deficiencies in . . . professional conduct,' do not violate an employee's constitutional

rights." *Fonville*, 38 F. Supp. 3d at 15 (quoting *Mazaleski*, 562 F.2d at 714); *see also Doe v.*

---

[16]  Statements actionable:  *See, e.g.*, *Walker v. Jones*, 733 F.2d 923, 933 (D.C. Cir. 1984) (allegations that plaintiff "had misappropriated and skimmed funds from [her workplace]"); *Rolles v. Civil Serv. Comm'n*, 512 F.2d 1319, 1320, 1325 (D.C. Cir. 1975) (charges "amounted to accusations of dishonesty" where airman's official reprimand "alleged that a voucher prepared by [him] was incorrect or false and that he diverted an Air Force aircraft to Andrews Air Force Base for his personal benefit"); *McGinnis*, 65 F. Supp. 3d at 210-11 (statements that employee "deliberately and consciously made false statements . . . during the recruitment process," "blatantly failed to truthfully and completely disclose information during the recruitment process," omitted material fact "during her physical examination," and lied about material fact "on two medical certifications" (brackets and quotation marks omitted)); *Alexis*, 44 F. Supp. 2d at 339 (statements that "branded [plaintiffs] as 'lazy' and 'incompetent'").

*Rogers*, --- F. Supp. 3d ----, No. 12-cv-1229, 2015 WL 5923612, at *27 (D.D.C. Oct. 9, 2015)

("[A] plaintiff is not deprived of his liberty interest when the employer has alleged merely

improper or inadequate performance, incompetence, neglect of duty or malfeasance." (quotation

marks omitted)).[17]

Here, all of the allegedly defamatory statements made by Chairman Gowdy – that

Mr. Podliska *"*mishandled classified information," "focused on Clinton improperly," and "was a

lousy employee," Compl. ¶¶ 60-62, 66 (quotation marks omitted) – concerned Mr. Podliska's job

performance as a congressional investigator.[18]  None of these statements imply that Mr. Podliska

suffers from "an inherent or at least a persistent personal condition, which both the general

public and a potential future employer are likely to want to avoid," but instead "suggest[] a

*situational* rather than an intrinsic difficulty" that, at worst, "invites inquiry, not prejudgment."

*Harrison*, 815 F.2d at 1518 (emphasis added).

---

[17]  Statements not actionable:  *See, e.g.*, *Hutchinson v. C.I.A.*, 393 F.3d 226, 231 (D.C. Cir. 2005) (statements suggesting plaintiff lost job due to "cognitive skills deficit, limited insight, and grandiose self view"); *Harrison*, 815 F.2d at 1518 (fact that plaintiff "dismissed for an 'unsatisfactory job performance' . . . does not carry with it the sort of opprobrium sufficient to constitute a deprivation of liberty"); *Mervin v. F.T.C.*, 591 F.2d 821, 828 (D.C. Cir. 1978) (per curiam) ("FTC officials communicated to [plaintiff]'s prospective employers their belief that he did not adequately and efficiently perform his duties at the FTC"); *Knehans v. Alexander*, 566 F.2d 312, 314 n.2 (D.C. Cir. 1977) (alleged "finding" plaintiff "was not 'good enough' to be promoted"); *Fonville*, 38 F. Supp. 3d at 15 ("statements relate[d] to plaintiff's 'unacceptable' behavior, during a single incident in which he lost his temper and exercised poor judgment, [and] which did not meet [employer]'s expectations for his command staff"); *Holman v. Williams*, 436 F. Supp. 2d 68, 78-79 (D.D.C. 2006) (statements to newspaper "that plaintiff was fired because of the discrimination complaints [against him]," "his inability to get along with staff," and that "the situation in [plaintiff's department] was extremely contentious in the time leading up to [his] termination" (quotation marks omitted)).

[18]  Mr. Podliska cannot rely on the statements of others – such as unnamed Committee staffers, *see, e.g.*, Compl. ¶¶ 59-60, 102 – to support his individual capacity claim against Chairman Gowdy.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *DeBrew v. Atwood*, 792 F.3d 118, 131 (D.C. Cir. 2015) ("The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct." (quotation marks omitted)); *see, e.g.*, *Kartseva v. Dep't of State*, 37 F.3d 1524, 1530 (D.C. Cir. 1994) (rejecting due process claim against individual defendants who had not "participated" in alleged wrongdoing).

Moreover, the phrase "mishandled classified information" is not a term of art; it potentially encompasses a broad range of conduct.  In his Complaint, Mr. Podliska identifies only two *criminal* statutes that even potentially are implicated by the phrase "mishandled classified information":  18 U.S.C. §§ 798 and 1924.  *See* Compl. ¶¶ 66 n.11, 98.[19]  However, Chairman Gowdy's statements neither suggest nor imply that Mr. Podliska "knowingly and willfully communicate[d], furnish[ed], transmit[ed], or otherwise ma[de] available to an unauthorized person . . . any classified information," 18 U.S.C. § 798(a), or that Mr. Podliska "knowingly remov[ed] [classified] documents or materials without authority and with the intent to retain such documents or materials at an unauthorized location," *id.* § 1924(a) – the latter of which, in any event, is a misdemeanor, *see id.* §§ 1924(a), 3559(a)(6)).[20]

Accordingly, no reasonable person could infer from Chairman Gowdy's statements about Mr. Podliska poor job performance that Mr. Podliska violated sections 798 or 1924.  *See, e.g.*, *Washburn v. Lavoie*, 357 F. Supp. 2d 210, 215-16 (D.D.C. 2004) (dismissing defamation claim where "[t]he defendants merely expressed what they believed to be true: that plaintiff, *for whatever reason*, had recorded noise emanating from their house, and that such tapings were a

---

[19]  The Complaint invokes section 1924 only obliquely, by referencing General David Petraeus's April 23, 2015 guilty plea to one of count of violating that statute.  Compl. ¶ 66 n.11.  That violation involved more than simply "mishandling classified information."  *See* Factual Basis ¶¶ 12-33, *United States v. David Howell Petraeus*, No. 3:15-cr-47 (W.D.N.C. Mar. 3, 2015) (ECF No. 3), *available at* http://www.justice. gov/sites/default/files/opa/press-releases/attachments/2015/03/03/petraeus-factual-basis.pdf (last visited Feb. 5, 2016); Bill of Information, *United States v. David Howell Petraeus*, No. 3:15-cr-47 (W.D.N.C. Mar. 3, 2015) (ECF No. 1), *available at* http://www.justice.gov/sites/default/files/opa/press-releases/ attachments/2015/03/03/petraeus-bill-of-information.pdf (last visited Feb. 5, 2016) (alleging that General Petraeus "unlawfully and knowingly remove[d] [classified] documents and materials without authority and with the intent to retain such documents and materials at unauthorized locations, aware that these locations were unauthorized for the storage and retention of such classified documents and materials").

[20]  Indeed, Mr. Podliska repeatedly has insisted that *he believes* he "did not mishandle classified information" because *he believes* the information at issue was not "classified."  Compl. ¶¶ 41, 44, 95; *accord* Scheiber, et al., Ex. A at 2 (noting that Mr. Podliska "disputes the charge"); Tapper & Diamond, Ex. B at 1 (noting that Mr. Podliska "strongly denies" he "put[] classified information on an unclassified system").

violation of 18 U.S.C. § 2511(2)(d) [requiring a criminal or tortious purpose]" (emphasis

added)); *accord Browning v. Clinton*, 292 F.3d 235, 247-48 (D.C. Cir. 2002) (rejecting claim

that allegedly defamatory statements "plainly accus[ed] [plaintiff] of criminal conduct – perjury"

where "no reasonable person would be able to infer that [defendant] was accusing [plaintiff] of

deceitfulness, let alone perjury"); *Croddy v. F.B.I.*, No. 00-cv-651, 2006 WL 2844261, at *3

(D.D.C. Sept. 29, 2006) (finding "reports that Plaintiffs failed polygraph examinations" not

defamatory even though reports "may imply that [plaintiffs] lied or had used drugs").

       b.      The Alleged Defamation Did Not "Accompany" a "Termination."

Even if Chairman Gowdy's statements about Mr. Podliska's poor job performance could

support a due process claim, Mr. Podliska has not demonstrated – nor can he demonstrate – that

the alleged defamation "*accompanied . . . a discharge* from government employment."  *Mosrie v.*

*Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983) (emphases added); *see also Paul*, 424 U.S. at 706

("[T]he Court has never held that the mere defamation of an individual . . . was sufficient to

invoke the guarantees of procedural due process absent an accompanying loss of government

employment."); *id.* at 710 ("[T]he defamation had to occur in the course of the termination of

employment."); *O'Donnell*, 148 F.3d at 1140 (reputation-plus claim requires "the conjunction of

official defamation and adverse employment action").

     *First*, Mr. Podliska was, at worst, constructively discharged from his employment with

the Committee.  As explained above, Mr. Podliska was given the choice either to resign or be

terminated and remained on the payroll pending his official separation from the Committee.  *See*

*supra* pp. 3-4.  While he remained on the payroll, Mr. Podliska tendered his resignation.  *See id.*

at 4.  For due process purposes, not even a forced resignation counts as the "official action" needed to transform ordinary defamation into a constitutional tort.[21]

*Second*, even if Mr. Podliska's employment formally had been terminated in June 2015, Chairman Gowdy's allegedly defamatory statements in October 2015 – over *three months* later – did not "accompany[]" Mr. Podliska's termination.  *Paul*, 424 U.S. at 706.

While the Supreme Court has yet to "address . . . the temporal nexus between the termination and the allegedly stigmatizing statements" needed to support a reputation-plus claim, *Campanelli v. Bockrath*, 100 F.3d 1476, 1483 n.8 (9th Cir. 1996), a majority of Circuits have held that post-termination defamation must be at least "roughly contemporaneous" with the termination to be actionable.[22]  The D.C. Circuit has not yet adopted this standard expressly, but the Court has explained that "the conceptual basis for reputation-plus claims . . . presumably

---

[21]  *See, e.g.*, *Siegert*, 500 U.S. at 228, 234 (plaintiff "agreed to resign . . . and thereby avoid a termination that might damage his reputation" and, thus, "[t]he alleged defamation was not uttered incident to the termination of Siegert's employment . . . , since he voluntarily resigned from his position"); *Kartseva*, 37 F.3d at 1527 ("[W]hen, as in Siegert's case, an alleged governmental defamation is uttered apart from any particular action involving the subject's employment, *i.e.*, subsequent to a voluntary resignation, it cannot be the basis for a due process claim . . . ."); *Lawrence v. Acree*, 665 F.2d 1319, 1326 (D.C. Cir. 1981) ("[Plaintiff's] voluntary retirement breaks any nexus between the offending performance evaluation and damage to a constitutionally protected interest."); *De Sousa v. Dep't of State*, 840 F. Supp. 92, 109-11 (D.D.C. 2012) (rejecting claim despite allegation that plaintiff "was effectively forced to resign" (quotation marks omitted)); *Evans v. Dist. of Columbia*, 391 F. Supp. 2d 160, 168 (D.D.C. 2005) ("Because resignation from one's position, even under the threat of termination, does not carry the same stigma as an official action such as termination, it does not have so negative an effect on future employment opportunities as to raise due process concerns."); *M.K. v. Tenet*, 196 F. Supp. 2d 8, 15 (D.D.C. 2001) (rejecting claim where plaintiff "chose to retire after being told that he must retire or risk losing his pension" and thus "ha[d] not alleged that the government negatively altered his employment status"); *accord Goecks v. Pedley*, 437 F. App'x 505, 507 (7th Cir. 2011); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988); *Gillespie v. Hocker*, No. 15-cv-51, 2015 WL 4468922, at *3 n.3 (D. Del. July 22, 2015); *Myers v. Delaware Cnty., Ohio*, No. 2:07-cv-844, 2008 WL 4862512, at *8 (S.D. Ohio Nov. 7, 2008); *Popovic v. United States*, 997 F. Supp. 672, 680 (D. Md. 1998).

[22]  *See, e.g.*, *Orelski v. Bowers*, 303 F. App'x 93, 94 (3d Cir. 2008); *Ridpath v. Bd. of Govs. Marshall Univ.*, 447 F.3d 292, 312 & n.20 (4th Cir. 2006); *Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 727 (10th Cir. 2000); *Campanelli*, 100 F.3d at 1482; *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir. 1999); *abrogated on other grounds*, *Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012); *Mertik v. Blalock*, 983 F.2d 1353, 1363 (6th Cir. 1993); *Hadley v. Cnty. of DuPage*, 715 F.2d 1238, 1246 (7th Cir. 1983).

rests on the fact that official criticism will carry much more weight if the person criticized is *at the same time* demoted or fired." *O'Donnell*, 148 F.3d at 1140 (emphasis added); *accord Siegert*, 500 U.S. at 234 (statements "written several weeks" after loss of employment not actionable). Consistent with the D.C. Circuit's understanding, courts in this Circuit have permitted reputation-plus claims to proceed when the allegedly defamatory statements were made within mere days to a week of the adverse employment action. *See, e.g.*, *Campbell*, 2015 WL 5188618, at *2-3, *6 (employer "d[id] not dispute that . . . certain statements about [plaintiff] 'accompanied' the termination" where statements made within week of putting plaintiff on administrative leave and then terminating her); *Fonville v. Dist. of Columbia*, 448 F. Supp. 2d 21, 24, 29 (D.D.C. 2006) (statements appeared in newspaper one day after demotion); *Alexis*, 44 F. Supp. 2d at 338-39 (statements made on same day of termination).[23]

Here, allegedly defamatory statements made over *three months* after Mr. Podliska's alleged termination do not comport with this Circuit's case law regarding reputation-plus claims because the two events did not occur "at the same time." *O'Donnell*, 148 F.3d at 1140. Indeed,

---

[23] In *Doe v. U.S. Department of Justice*, 753 F.2d 1092 (D.C. Cir. 1985), and *Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984), the D.C. Circuit allowed reputation-plus claims to proceed based on post-termination statements that *might* have occurred more than just a few days after the termination. However, neither decision specifies the lapses in time because neither analyzes whether the alleged defamation was sufficiently contemporaneous to the termination to be actionable. *See Doe*, 753 F.2d at 1097-98, 1115-16 (plaintiff terminated on May 26, 1981, and Department "subsequent[ly] spread[] . . . the charges"), *aff'g in part and vacating in part*, 602 F. Supp. 871, 873 & n.2 (D.D.C. 1983) ("Counsel could provide nothing more than vague allegations of publication at an unspecified time by a Justice Department attorney now deceased . . . ."); *Walker*, 733 F.2d at 933 ("Walker's complaint is lean with respect to the facts of her employment-plus-reputation claim, but she has said enough to enter the court's door and receive a focused answer."), *rev'g Walker v. Jones*, 557 F. Supp. 366, 367 (D.D.C. 1983) (plaintiff terminated on June 30, 1982; allegedly defamatory statements followed; and "Complaint . . . filed on September 23, 1982"). The decision in *Peter B. v. C.I.A.* proves similarly vague on this point. 620 F. Supp. 2d 58, 72 (D.D.C. 2009) (defamatory remarks placed in personnel file suffice when "file . . . is publicly available to future employers" because, "although the defamation has occurred after the status change, it is . . . being offered as the official reason for the status change").

such temporally attenuated statements cannot satisfy even the more elastic "roughly contemporaneous" standard applied by other courts.[24]

*Finally*, the alleged defamation did not "accompany" Mr. Podliska's separation from the Committee insofar as Chairman Gowdy made his statements directly in response to press inquiries seeking comment on Mr. Podliska's *own* public statements concerning his termination. *See, e.g.*, *LaForgia*, 2004 WL 2884524, at *8-9 (although "Mayor's critical remarks at the News 12 Westchester interview relate[d] to Plaintiff's termination, they were in direct response to questions pertaining to [plaintiff's] *Journal News* interview" about her termination, and thus "did not occur in the course of Plaintiff's termination" less than two weeks earlier); *Ogburn v. Elrod*, No. 87-cv-4492, 1989 WL 24127, at *2 (N.D. Ill. Mar. 13, 1989) (allegedly defamatory statements to press about plaintiff's termination not within course of termination when made "only after [plaintiff] opened the door with his own [press] statements").

---

[24] *See, e.g.*, *Orelski*, 303 F. App'x at 94 (two-and-a-half months was "a long delay [which] eviscerates any temporal nexus between the statements and the termination"); *Brennan v. Hendrigan*, 888 F.2d 189, 196 (1st Cir. 1989) (two-month delay fatal to due process claim); *Ewers v. Bd. of Cnty. Comm'rs*, 802 F.2d 1242, 1248 (10th Cir. 1986) (statements made three weeks after termination); *Gentile v. Wallen*, 562 F.2d 193, 198 (2d Cir. 1977) (statements made three months after termination); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 359 (D. Md. 2011) ("[A]n e-mail sent two months after an employee's termination cannot be characterized as temporally related to the termination, so as to be characterized as made 'in the course of termination.'"); *Robinson v. Smith*, No. 09-cv-138, 2010 WL 3463594, at *11 (D. Nev. Aug. 27, 2010) (statements made "several months after Plaintiff resigned"); *Sampson v. Sch. Dist. of Lancaster*, No. 05-cv-6414, 2009 WL 1675083, at *9 (E.D. Pa. June 15, 2009) (statements made "over a month *after* Plaintiff's termination of employment"); *LaForgia v. Davis*, No. 01-cv-7599, 2004 WL 2884524, at *9 (S.D.N.Y. Dec. 14, 2004) (statements made less than two weeks after termination); *Malapanis v. Regan*, 340 F. Supp. 2d 184, 194 (D. Conn. 2004) (statements made at press conference approximately three months after termination of contract); *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02-cv-9303, 2003 WL 22176077, at *3 (N.D. Ill. Sept. 18, 2003) ("[D]efamatory statements made weeks (let alone months) before or after termination are not statements made in the context of termination."); *Pindell v. Wilson-McKee*, 60 F. Supp. 2d 1244, 1255 (D. Wyo. 1999) ("In this case, as in *Siegert*, the statement at issue was not uttered incident to plaintiff's termination but was issued several weeks later.").

### 2.   Mr. Podliska Has Not Sufficiently Pled a "Stigma or Disability" Claim.

A "stigma or disability" claim (sometimes called a "stigma-plus" claim) requires a

plaintiff to identify a stigmatizing official act that has caused "some tangible change in [his]

status." *O'Donnell*, 148 F.3d at 1141.[25]   "One such change in status, of course, is an adverse

employment action." *Id.*   But Mr. Podliska's claim does not rely on the loss of his Committee

job.   Instead, his claim hinges solely on Chairman Gowdy's allegedly "false and defamatory

statements about [him], including that . . . he mishandled classified information," Compl. ¶ 108,

which statements allegedly have "imposed a major roadblock to [his] obtaining full-time

employment" "working on foreign policy and security issues for a federal defense agency" or

"federal defense contractors," *id.* ¶ 104, 108.[26]   However, Mr. Podliska fails to show that he

suffered any change in status, let alone that some stigma flowing from an "official action" caused

his alleged change in status.

### a.   Whatever Stigma Mr. Podliska Faces, He Inflicted It on Himself.

The stigma needed for a "stigma or disability" claim self-evidently must be caused by the

government.   *See McCormick*, 752 F.3d at 988 (stigma must "aris[e] from official action"

(quotation marks omitted)); *McGinnis*, 65 F. Supp. 3d at 203 (plaintiff must show "why the

government action has the effect of precluding her from future employment"); *id.* at 215

---

[25]   *See also Kartseva*, 37 F.3d at 1527 ("[G]overnment action that potentially constrains future employment opportunities must involve a tangible change in status to be actionable under the due process clause."); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 397 (D.C. Cir. 1990) (similar); *Doe*, 2015 WL 5923612, at *25 (explaining that "stigma-plus theory" involves "certain government actions (stigmas) that cause a change in the plaintiffs' status under the law (plus)").

[26]   Even if Mr. Podliska's "stigma or disability" claim did rely on his separation from the Committee as the requisite "tangible change in [his] status," the claim still would fail because – in addition to the reasons below – the "reputational harm" he alleges did not "occur[] in conjunction with" his separation, *O'Donnell*, 148 F.3d at 1141; *see also supra* Argument, Part II.C.1.b (discussing contemporaneousness required for reputation-plus claims).

(plaintiff must show "that the government action is at fault for [his] difficulty"); *Aguirre v.*

*S.E.C.*, 671 F. Supp. 2d 113, 119 (D.D.C. 2009) ("[T]he 'stigma or disability' must be caused

either by the government's action or by statements contemporaneous with that action.").  Thus, a

plaintiff's inability to find employment in his chosen field cannot give rise to a "stigma or

disability" claim when his difficulty "might easily be explained in other ways," *Taylor v.*

*Resolution Trust Corp.*, 56 F.3d 1497, 1506-07 (D.C. Cir. 1995), such as "'[t]he reaction of

others to unfavorable publicity about [him],'" *Doe*, 2015 WL 5923612, at *29 (quoting *Mosrie*,

718 F.2d at 1162).

A plaintiff therefore cannot base a "stigma or disability" claim on *his own* voluntary

statements to the press sharing previously unpublished derogatory remarks by the government.

*See, e.g.*, *Walsh v. Suffolk Cnty. Police Dep't*, No. 06-cv-2237, 2008 WL 1991118, at *12

(E.D.N.Y. May 5, 2008) (rejecting "stigma or disability" claim where "the plaintiff, in an effort

to demonstrate the unfairness of his situation, provided all the material details to the press" and,

"[t]hus, it was *the plaintiff* who made the disclosure to a third party of the allegedly stigmatizing

statements by self-publicizing such statements to the *Daily News* in an article that ran . . . prior to

any self-reporting [by plaintiff] to future employers"), *aff'd*, 341 F. App'x 674 (2d Cir. 2009).[27]

That is precisely what Mr. Podliska seeks to accomplish here.  Before Chairman Gowdy

made any statements to the press about Mr. Podliska's separation from the Committee, i.e.,

---

[27]  *Accord Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (rejecting "stigma or disability" claim
where "[plaintiff] himself told a number of people about the alleged [stigmatizing] comment and stated to
potential employers and eventually a newspaper that he believed it was the reason for his termination");
*Finnegan v. Bd. of Educ. of Enlarged City Sch. Dist. of Troy*, No. 92-cv-732, 1993 WL 729846, at *5-7
(N.D.N.Y. Nov. 18, 1993) (rejecting claim where (i) "it was plaintiff and his wife who gave or showed
copies of the [allegedly defamatory] October 15 letter to numerous print media," (ii) "they appeared on
the national television show 'Hard Copy,' and that segment of the program included a close-up of
excerpts of the October 15 letter which plaintiff or his wife had provided," and (iii) "plaintiff, his wife,
and his attorney later appeared on yet another national television show, 'Donahue,' during which the
substance of the letter was discussed"), *aff'd*, 30 F.3d 273 (2d Cir. 1994).

before October 11, 2015, Mr. Podliska already had shared a draft of his complaint and given statements to the press revealing the reasons he allegedly was given for his termination, including that he "mishandl[ed] classified information." *See supra* pp. 4-5. Thus, by the time Chairman Gowdy spoke to the press on October 11 about Mr. Podliska's separation from the Committee, the allegedly stigmatizing statements about Mr. Podliska had been widely publicized *as a result of his own statements*. *See id.* pp. 5-6; *see also* App., *infra*, at 1a-2a. Chairman Gowdy's allegedly defamatory statements, at most, merely repeated what Mr. Podliska already had told the press himself at least a day earlier.

Moreover, Mr. Podliska's draft complaint and his statements to the press on or before October 10 asserted that he had been fired for defying the Committee's investigative agenda (setting aside the parties' dispute over what that agenda was). *See, e.g.*, Scheiber, et al., Ex. A at 1 (stating that complaint alleged "[Mr. Podliska's] superiors opposed his efforts to conduct a comprehensive investigation"); Tapper & Diamond, Ex. B at 1 (stating that "lawsuit . . . alleg[es] that [Mr. Podliska] lost his job in part because he resisted pressure to focus his investigative efforts"). In other words, Mr. Podliska's own public statements all but admitted to prospective employers that he had been insubordinate – a theme that continues to feature prominently in the Complaint, where Mr. Podliska admits that "he was unwilling to go along with the" Committee's investigative focus. Compl. ¶ 26.[28] Thus, Chairman Gowdy's October 11 statement to NBC

---

[28] Indeed, numerous allegations in the Complaint reflect Mr. Podliska's distorted view that he somehow was conducting *his own* investigation. *See, e.g.*, Compl. ¶ 23 ("Plaintiff's investigation"); *id.* ¶ 26 ("his comprehensive, thorough, and objective investigation"); *id.* ¶ 32 ("his investigations for the Benghazi committee"); *id.* ¶ 37 ("the investigation Plaintiff had been conducting"); *id.* ¶ 38 ("Plaintiff's objective, professional, and thorough investigative efforts"). The Committee, not Mr. Podliska, was conducting an investigation. *See generally* H.R. Res. 567 § 3(a), 113th Cong. (2014) ("The *Select Committee* is authorized and directed to conduct a full and complete investigation and study and issue a final report of *its* findings to the House . . . ." (emphases added)).

News that Mr. Podliska "wouldn't do what his supervisors instructed him to do" was no revelation.[29]

Mr. Podliska's unprovoked efforts to gin up publicity about his separation from the Committee – *before* Chairman Gowdy made any public comments on the matter – distinguishes this case from others in this Circuit where the employer landed the first stigmatizing blow. *See, e.g.*, *Payne v. Dist. of Columbia*, 773 F. Supp. 2d 89, 94, 96 (D.D.C. 2011) (employer's statement to press first public suggestion that plaintiff "was dishonest, a liar and terminated for reasons related to performance"); *Holman*, 436 F. Supp. 2d at 72, 80 (employer first reported to press "that plaintiff had been fired for cause"). Moreover, Mr. Podliska's propensity to air his grievances so publicly, on its own, might explain the alleged reticence of prospective employers in the intelligence field to hire (or rehire) him. Simply put, Mr. Podliska cannot predicate a claim about alleged harm to his future employment prospects where his own conduct was the initial and precipitating cause of that alleged harm. *See Taylor*, 56 F.3d at 1507 (rejecting claim because harm "might easily be explained in other ways in light of [plaintiff's] record").

> b.   Mr. Podliska Has Not Alleged Sufficiently Broad Preclusion from Future Employment in His Chosen Profession.

Even assuming that Chairman Gowdy's statements to the press caused the stigma of which Mr. Podliska complains, Mr. Podliska still would have to show that the Chairman's conduct either "(1) constitutes a formal bar, automatically excluding [Mr. Podliska] from h[is] chosen trade or profession; or (2) has the broad effect of largely precluding [Mr. Podliska] from h[is] chosen career." *Campbell v. Dist. of Columbia*, 972 F. Supp. 2d 38, 45 (D.D.C. 2013).

---

[29] *See* Ari Melber, *Ex-Benghazi Investigator Alleges Rep. Gowdy Violated Federal Law*, NBC News (Oct. 12, 2015) (embedded video clip from 0:50 to 0:59), *available at* http://www.nbcnews.com/news/us-news/ex-benghazi-investigator-alleges-rep-gowdy-violated-federal-law-n443166  (last visited Feb. 5, 2016) (cited at Compl. ¶¶ 62 n.7, 64 n.9).

Mr. Podliska claims only the latter.  *See* Compl. ¶¶ 105, 108.  "The key inquiry then is this:  Has the government, by attacking personal . . . reputation, achieved in substance an alteration of status that, if accomplished through formal means, would constitute a deprivation of liberty?" *Trifax*, 314 F.3d at 644.

This threshold is rigorous:  Informal official action must "ha[ve] the effect of seriously affect[ing], if not destroy[ing] a plaintiff's ability to pursue his chosen profession, or substantially reduc[ing] the value of his human capital." *O'Donnell*, 148 F.3d at 1141 (quotation marks omitted); *see also Taylor*, 56 F.3d at 1506-07 (explaining that this "standard . . . is high"). A plaintiff may not sue "purely on the basis of the stigma associated with being fired." *O'Donnell*, 148 F.3d at 1139 (citing *Paul*, 424 U.S. at 711); *see also Siegert*, 500 U.S. at 233-34 (defamation not "constitutional deprivation" just because it causes "serious impairment of [one's] future employment opportunities").  Nor may a plaintiff sue "if [he] has merely lost one position in h[is] profession but is not foreclosed from reentering the field." *Kartseva*, 37 F.3d at 1529; *see also Mazaleski*, 562 F.2d at 713 ("[T]he effect of government action on future employment must extend beyond a disadvantage or impediment."); *O'Donnell*, 148 F.3d at 1141-42 ("step [back] on . . . career path" insufficient).  "Financial loss and loss of some employment opportunities do not, therefore, amount to an alteration of a legal right . . . even if some of the job opportunities lost are for public jobs . . . ." *Mosrie*, 718 F.2d at 1162.  Here, Mr. Podliska has not sufficiently pled broad preclusion from his chosen profession for at least four reasons.

*First*, Mr. Podliska admits that he continues to work in the federal intelligence field as an Intelligence Officer in the Air Force Reserve, a position for which he "currently holds . . . the security clearances necessary for his position" and is "require[d] . . . to perform training and

duties as an integrated member of a Combatant Command . . . organization." Compl. ¶ 9. "A plaintiff's employment in his chosen field, even if temporary, suffices to defeat his 'stigma or disability' constitutional defamation claim." *Payne v. Dist. of Columbia*, 4 F. Supp. 3d 80, 92 (D.D.C. 2013); *see also, e.g.*, *Alexis*, 44 F. Supp. 2d at 342 (rejecting claim where plaintiffs admittedly "had opportunities, albeit temporary ones, to work within their professions," even if "the positions . . . were understandably unsatisfactory to them"); *cf. McGinnis*, 65 F. Supp. 3d at 215 ("stigma or disability" claim fails if plaintiff "obtained a similar job after her termination").

*Second*, Mr. Podliska has not alleged that he has been *rejected* from reemployment with the federal defense agency for which he previously worked. Although "[a]lleging broad preclusion is not a mathematical exercise," a plaintiff at least "must allege that []he has applied for and *been rejected from* other positions in h[is] field." *McGinnis*, 65 F. Supp. 3d at 215 (emphasis added). Here, however, Mr. Podliska alleges only that he "has not *yet* been able to *secure* employment" with his prior federal defense employer after having applied to return, not that his reemployment application has been rejected. Compl. ¶ 98 (emphases added); *see also id.* ¶ 104 (similar).[30]

*Third*, in light of the deficiencies above, Mr. Podliska's conclusory assertion that "the stigma that Chairman Gowdy intentionally imposed upon [him] . . . has imposed a major roadblock to [his] obtaining full-time employment," Compl. ¶ 108, does not satisfy the factual pleading standard announced by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

---

[30] But even if Mr. Podliska's reemployment application actually had been rejected, "a single rejection alone is insufficient to establish that the Plaintiff's ability to seek employment was seriously affected or destroyed." *Evangelou v. Dist. of Columbia*, 63 F. Supp. 3d 96, 104 (D.D.C. 2014); *accord McGinnis*, 65 F. Supp. 3d at 215 (plaintiff alleged that she unsuccessfully "ha[d] applied for numerous positions in law enforcement" (quotation marks omitted)); *Alexis*, 44 F. Supp. 2d at 342 (rejecting claim where plaintiff "provide[d] the court with no evidence illustrating either the number or nature of his attempts to obtain employment either within his chosen field or outside of it"); *see also McCormick*, 752 F.3d at 989 (plaintiff cited "testimony to the effect that he can never again be employed in the corrections field").

and *Bell Atlantic Corporation v Twombly*, 550 U.S. 554 (2007).  That standard requires

Mr. Podliska to support his complaint "with adequate factual support to 'state a claim to relief

that is plausible on its face.'"  *Blue*, 2015 WL 9466228, at *4 (quoting *Iqbal*, 556 U.S. at 678).

Although a handful of courts in this Circuit – but not the D.C. Circuit – have said that a plaintiff

need only allege that official action placed a "significant roadblock" in his path to support a

"stigma or disability" claim, only three decisions have dealt with this standard after the Supreme

Court's rulings in *Iqbal* and *Twombly*, and all three are distinguishable.  Two decisions involved

additional factual allegations, lacking here, that demonstrated the plausibility of the plaintiff's

claimed "roadblock."[31]  The third decision relied on the plaintiff's *termination*, not simply

reputational harm, as the "official action" supporting the claim.[32]  Thus, without more factual

support, Mr. Podliska alleges little more than "that he has been unable to find employment in his

chosen field, a difficulty that if true might easily be explained in other ways in light of his

record."  *Taylor*, 56 F.3d at 1507.

   *Finally*, in the same *Iqbal-Twombly* vein, Mr. Podliska has not pled sufficient facts to

show that his alleged difficulty getting rehired at his prior federal defense agency plausibly is

"due to the damage to his reputation" allegedly caused by Chairman Gowdy.  Compl. ¶ 104.

Mr. Podliska conspicuously omits when exactly he applied for reemployment there, thus making

it impossible to infer even a temporal nexus between his inability to secure his reemployment

---

[31]  In *McGinnis*, the plaintiff alleged "that she ha[d] applied for numerous positions in law enforcement, but ha[d] not been hired by any law enforcement agency."  65 F. Supp. 3d at 215-16 (quotation marks omitted).  In *Campbell*, the plaintiff made "specific reference to at least one instance in which she was told by a potential employer that, while she was a 'perfect fit,' her reputation presented too much of a public and political liability risk."  972 F. Supp. 2d at 46.

[32]  *See Payne*, 773 F. Supp. 2d at 96*; see also O'Donnell*, 148 F.3d at 1141 ("[A] plaintiff who . . . seeks to make out a claim of interference with the right to follow a chosen trade or profession that is based exclusively on reputational harm must show that the harm occurred in conjunction with, or flowed from, some tangible change in status.  One such change in status . . . is an adverse employment action."); *supra* at p. 28 & n.36.

and Chairman Gowdy's statements.  *Cf. Clayton v. Dist. of Columbia*, --- F. Supp. 3d ----,

No. 11-cv-1889, 2015 WL 4639558, at *6 (D.D.C. Aug. 4, 2015) (discussing temporal proximity

as evidence of causation in context of retaliation under Title VII).

> ### 3. Mr. Podliska's Due Process Claim Fails Under Both Theories Because He Did Not Request a Name-Clearing Hearing Before Filing Suit.

Mr. Podliska complains that, prior to making allegedly "false and defamatory statements"

to the press, Chairman Gowdy "did not provide [him] with any process to demonstrate that [he]

did not engage in the misconduct that Chairman Gowdy alleged."  Compl. ¶ 103.  To be sure, the

D.C. Circuit recognizes that "the appropriate remedy" for reputation-plus and "stigma or

disability" claims "is a hearing in which the dismissed employee is given an opportunity to refute

the charges and clear his name."  *Lyons v. Barrett*, 851 F.2d 406, 410 (D.C. Cir. 1988); *accord

Aguirre*, 671 F. Supp. 2d at 120; *M.K. v. Tenet*, 99 F. Supp. 2d 12, 28 (D.D.C. 2000).  But

Mr. Podliska's failure to seek that opportunity *before* filing suit bars his due process claim here.

A clear majority of Circuits to address this question require a plaintiff affirmatively to

seek and be denied a post-termination name-clearing hearing *before* he or she can bring suit for

an alleged due process violation.[33]  The D.C. Circuit has not clearly taken a side in this debate,

nor, apparently, has any court in this Circuit.  Although the D.C. Circuit held in *O'Donnell* that a

plaintiff need not "explicitly" request a name-clearing hearing in the *complaint* in order to be

awarded that *remedy* by the court, 148 F.3d at 1140 n.4, the Court did so on the basis of its

---

[33]  *See, e.g.*, *Buntin v. City of Boston*, --- F.3d ----, No. 15-1667, 2015 WL 9466582, at *4 (1st Cir. Dec. 29, 2015) ("[T]he government must have failed to comply with the employee's request for a name-clearing hearing."); *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006); *Winskowski v. City of Stephen*, 442 F.3d 1107, 1112 (8th Cir. 2006); *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002); *Baden v. Koch*, 799 F.2d 825, 830 (2d Cir. 1986); *see also Holscher v. Olson*, No. 07-cv-3023, 2008 WL 2645484, at *13 (E.D. Wash. June 30, 2008); *but see, e.g.*, *Bjorklund v. Miller*, 467 F. App'x 758, 767-68 (10th Cir. 2012); *cf. Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 n.8 (3d Cir. 1996) (declining to decide question because plaintiff sufficiently had requested "an opportunity to respond to the fabricated statements"), *as discussed in Hill v. Borough of Kutztown*, 455 F.3d 225, 239 n.19 (3d Cir. 2006).

decision in *Doe*, where "the plaintiff sought, but was systematically denied, an opportunity to address the charges that resulted in her dismissal and stigmatized her professional reputation," and further sought a name-clearing hearing implicitly in her complaint, 753 F.2d at 1103-04.[34] Although the Court in *Lyons* explained that "[t]he obligation to offer [a name-clearing hearing] rest[s] with the [employer]," 851 F.2d at 410, that explanation also relied on *Doe* where, again, the plaintiff "requested, but was refused, an opportunity to confront the sources of the allegations and to produce evidence on her own behalf," 753 F.2d at 1112; *see also id.* at 1112 n.23 ("It is undisputed . . . that the Department refused Doe anything approximating a 'hearing' after it completed its investigation and decided to terminate her.").  Notwithstanding this uncertainty in the law of this Circuit, several sound reasons justify requiring plaintiffs at least to request a name-clearing hearing before they can sue, consistent with the majority view in other circuits.

*First*, "[a]llowing an employee to claim damages for being deprived of a hearing never requested would greatly expand government employers' potential liability and force such employers prophylactically to offer name-clearings when it is not at all clear that the employee is entitled to – or even desires – one." *Winskowski*, 442 F.3d at 1111.

An employer has no constitutional obligation to afford an at-will employee a name-clearing hearing before firing him, even for cause.  *See McCormick*, 752 F.3d at 988 ("Were we to hold that the termination of an at-will employee without hearing is a deprivation of due

---

[34] Courts disagree over what *O'Donnell* actually says.  *Compare Winskowski*, 442 F.3d at 1111 ("[T]he *O'Donnell* court was apparently addressing a possible D.C. Circuit requirement that plaintiffs suing for a procedural due process violation seek *in their litigation* a name-clearing hearing as a *remedy*."), *with Quinn*, 293 F.3d at 322 n.2 (suggesting that *O'Donnell* requires plaintiff at least implicitly to seek name-clearing hearing before bringing suit).  In any event, the *O'Donnell* Court was responding solely to "the District's claim" in that case, 148 F.3d at 1140 n.4, i.e., that the plaintiff could not recover damages for the alleged due process violation because a name-clearing hearing was his only remedy, but he had not "requested such relief" below, Br. for Appellees at 3, *O'Donnell v. Barry*, No. 97-7129 (D.C. Cir. Feb. 9, 1998), *available at* 1998 WL 35241356.

process, we would effectively eliminate from the law the well-recognized status of at-will employee."); *accord Rosenstein v. City of Dallas*, 876 F.2d 392, 396 n.8 (5th Cir. 1989) ("A name-clearing hearing is not a prerequisite to publication, and the [government] is not required to tender one prior to disclosing the charges or discharging the employee."). But post-termination hearings serve no purpose when the terminated employee does not "challenge[] the substantial truth" behind the reasons for his or her discharge. *Codd v. Velger*, 429 U.S. 624, 627-28 (1977); *see also id.* at 627 ("[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation.").

The *employee* – not the employer – is in the best position to know whether he truly disputes the employer's reasons for the discharge. It therefore makes sense for employees to shoulder the *de minimis* burden of having to ask for a name-clearing hearing before they can sue. Otherwise, employers would be left to guess whether an at-will employee fired for cause *might* challenge the basis for the firing. And because guessing wrong could expose the employer to significant money damages claims, employers reflexively might give a hearing to *every* employee fired for cause – incurring needless expense in many cases and undermining "the well-recognized status of at-will employ[ment]." *McCormick*, 752 F.3d at 988. An employee's simple request for a name-clearing thus performs an important signaling function, alerting the employer to an actual dispute and the consequent need to treat the disputed information with extra care until the employee has had the opportunity to challenge it.

*Second*, placing the *de minimis* burden on at-will employees of requesting a post-termination hearing avoids "reward[ing] employees for lying in wait and later asserting a right that the employer had no reason to suspect the employee wanted to exercise in the first place."

*Winskowski*, 442 F.3d at 1111.  That perverse incentive is particularly evident in cases, like this one, where the alleged defamation occurs (i) many months after the employee's separation from his employer, and (ii) only in direct response to media requests for comment about the employee's own public statements about his termination.

Because Mr. Podliska here did not request – and therefore was not denied – a name-clearing hearing before filing suit, his due process claim should be dismissed.

### 4.     Mr. Podliska's Due Process Claim Also Fails Under Both Theories Because He Received All the Process He Was Due.

Even if Mr. Podliska sufficiently had pled "the deprivation of h[is] liberty interest under the 'reputation-plus' and 'stigma or disability' theories, h[is] procedural due process claim would still fail if []he had received a constitutionally sufficient post-termination opportunity to seek a 'name-clearing' hearing." *Campbell*, 2015 WL 5188618, at *10; *see McCormick*, 752 F.3d at 989.  Although the D.C. Circuit "has not set forth specific standards for how name-clearing hearings should be conducted," *Lyons*, 851 F.2d at 411, the basic requirements are clear enough: (i) "notice . . . of the charges" against the plaintiff, and (ii) "a meaningful opportunity [for the plaintiff] to respond," i.e., "an opportunity to confront the sources of the allegations and to produce evidence on [his] own behalf." *Doe*, 753 F.2d at 1112; *see also Tabman v. F.B.I.*, 718 F. Supp. 2d 98, 102 (D.D.C. 2010); *M.K.*, 99 F. Supp. at 28.  Mr. Podliska received both here.

Mr. Podliska was notified on June 19, 2015, about the "security violation."  Compl. ¶ 41. Sometime between June 19 and June 26, Mr. Podliska allegedly confronted the Security Manager about the determination that he had committed a "security violation."  *See id.* ¶¶ 42, 44. At the June 26 meeting with Messrs. Kiko and Donesa, a week after receiving notice of the "security violation," Mr. Podliska renewed his disagreement with that determination.  *See* Donesa Aff. ¶ 17; *see, e.g.*, *Graham v. U.S. Dep't of Justice*, No. 02-cv-1231, 2002 WL

38

32511002, at *5 (D.D.C. 2002) (finding sufficient process where "plaintiff was interrogated about the alleged [Intelligence Oversight Board] violation before any adverse action was taken, and that he was given the chance to offer a signed, sworn statement to present his version of events"), *aff'd in part sub nom. Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004). Furthermore, in September 2015, Mr. Podliska formally requested mediation pursuant to the CAA, *see* Compl. ¶ 55, the express purpose of which was to "resolv[e] the dispute between [Mr. Podliska] and the [Committee]," 2 U.S.C. § 1403(b)(2). That dispute necessarily involved Mr. Podliska's "security violation," inasmuch as he claims that "[t]he allegations were completely false and merely a pretext for discrimination." Compl. ¶ 41. Mr. Podliska, "Benghazi Committee staffers," and their respective counsel "participated in mediation with the Office of Compliance." *Id.* ¶ 55.

Accordingly, Mr. Podliska plainly received notice of the charges against him, and had several opportunities over the nearly four months that followed to confront his accusers about the "security violation." While Mr. Podliska did not get a reversal of the Committee's decision, that outcome was "not guaranteed by the Fifth Amendment." *Kursar v. T.S.A.*, 751 F. Supp. 2d 154, 172 (D.D.C. 2010), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011); *see also M.K.*, 99 F. Supp. 2d at 28 ("Such a hearing, whatever its outcome, does not affect the government's personnel decision . . . . "); *Harper v. Blumenthal*, 478 F. Supp. 176, 187 n.11 (D.D.C. 1979) ("[T]he validity of the dismissal is not at issue [in a name-clearing hearing]."); *accord Segal v. City of New York*, 459 F.3d 207, 216 (2d Cir. 2006) ("Because an at-will employee lacks a property interest in continued employment, she has no right to a particular outcome following an adequate name-clearing hearing; the government is simply required to provide her with an opportunity to salvage her name.").

Even now, in addition to challenging the reasons for his termination under the CAA in this case, *see generally* Compl. ¶¶ 21-47, 70-77, Mr. Podliska could have pursued an action (either administrative or judicial) challenging Chairman Gowdy's allegedly defamatory statements as retaliation under the CAA, *see supra* Argument, Part II.A-B; 2 U.S.C. §§ 1317, 1401, 1404-08.  A CAA action plainly "would meet the requirements of a name-clearing hearing," notwithstanding Mr. Podliska's choice to forego such remedies.  *McCormick*, 752 F.3d at 990 (finding sufficient process where plaintiff , under D.C. statutory law, "could have pursued an action for review, including one for severance, in Superior Court (or in the district court once the case was removed)"); *see, e.g.*, *Tabman*, 718 F. Supp. 2d at 102 (rejecting due process claim where plaintiff "did not pursue the process offered to him"); *see also Aguirre*, 671 F. Supp. 2d at 120 (noting that "[a] hearing before the MSPB can provide an adequate opportunity to address the charges against [plaintiff] and to clear [his] name" (quotation marks omitted)).

### 5.    Count V Cannot Proceed Against Chairman Gowdy Personally.

Beyond the many fatal defects on the face of Mr. Podliska's due process claim, Count V cannot proceed here against Chairman Gowdy in his *individual* capacity – the only capacity alleged in the Complaint, *see* Compl. at 1 – for several reasons.

*First*, Mr. Podliska wrongly demands "[a]n order requiring Chairman Gowdy to provide [him] an opportunity to clear his name."  Compl. at 29, ¶ q.  When an employee is entitled to a name-clearing hearing, that obligation falls upon *the employer* – i.e., the agency.  *See Moore v. Agency for Int'l Dev.*, 80 F.3d 546, 548 (D.C. Cir. 1996) (reaffirming that "a name-clearing hearing is ordered and conducted by an agency, not by an individual" (citing *Lyons*, 851 F.2d at 410-11)).  Here, Mr. Podliska's employer was the Committee, not Chairman Gowdy.  *See*

Compl. ¶ 15. Chairman Gowdy therefore has no individual-capacity obligation, or ability, to afford Mr. Podliska a name-clearing hearing.

*Second*, Mr. Podliska wrongly seeks other declaratory and injunctive relief from Chairman Gowdy personally for his purely official conduct. *See* Compl. at 28-29, ¶¶ f, h, p-q. Such relief can only be granted, if at all, against federal officials in their *official* capacities. *See Davis*, 973 F. Supp. 2d at 27 n.2; *Hatfill*, 519 F. Supp. 2d at 26-27; *Vanover*, 77 F. Supp. 2d at 99; *see generally supra* Argument, Part I.A.

*Third*, Mr. Podliska demands money damages from Chairman Gowdy personally for the alleged violation of his right to due process. *See* Compl. at 29, ¶ m. That relief – a remedy pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) – would be extraordinary, inasmuch as "there is . . . no precedent in the Supreme Court or this Circuit holding that procedural due-process violations necessarily permit a damages remedy." *Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, --- F. Supp. 3d ----, No. 14-cv-1162, 2016 WL 107914, at *12 (D.D.C. Jan. 8, 2016). This Court should not create that unprecedented remedy here.

A "freestanding damages remedy for a claimed constitutional violation . . . is not an automatic entitlement," and "in most instances" the Supreme Court has "found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The D.C. Circuit likewise has "tread carefully before recognizing *Bivens* causes of action when plaintiffs have invoked them in new contexts." *Meshal v. Higgenbotham*, 804 F.3d 417, 421 (D.C. Cir. 2015). "[C]ourts should not afford *Bivens* remedies if 'any special factors counsel[ ] hesitation.'" *Id.* at 425 (quoting *Wilkie*, 551 U.S. at 550). "Federal employment constitutes the sort of 'special factor' that makes a *Bivens* remedy inappropriate." *Zimbelman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000) (quoting

*Bush v. Lucas*, 462 U.S. 367, 389 (1983)) (rejecting *Bivens* remedy for alleged denial of name-clearing hearing); *see also Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000) (same).  So does "the existence of a comprehensive remedial scheme" that "reflect[s] Congressional judgment about the type and magnitude of relief available."  *Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008).

Both of these "special factors" apply here.  Mr. Podliska's due process claim plainly arises from his federal employment.  Moreover, Congress has enacted several comprehensive remedial schemes governing federal employment, including the Civil Service Reform Act and the CAA.  *See Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012) (CSRA); *Packer v. U.S. Comm'n on Sec. & Cooperation in Europe*, 843 F. Supp. 2d 44, 48 (D.D.C. 2012) (CAA).  The extraordinary creation of a *Bivens* remedy is thus not justified here.  *See, e.g.*, *Maye v. Reno*, 231 F. Supp. 2d 332, 339 (D.D.C. 2002) (denying *Bivens* remedy for reputation-plus/"stigma or disability" claim).

### D.    Chairman Gowdy Is Entitled to Qualified Immunity.

Even if the Complaint sufficiently pled that Chairman Gowdy violated Mr. Podliska's due process rights, and even if the Court permitted Mr. Podliska to pursue an extraordinary *Bivens* remedy against him, the Chairman still would be immune from this suit unless Mr. Podliska could show that the Chairman's statements "violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'"  *Dukore v. Dist. of Columbia*, 799 F.3d 1137, 1144 (D.C. Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  As a matter of law, Mr. Podliska cannot make that showing.

The "clearly established" question turns on "the state of the law not with 20–20 hindsight, but at the time of the challenged conduct."  *Id.*  "[A] right will be held to have been clearly established at the time of an alleged violation [only] if it would have been 'clear to a

42

reasonable officer that his conduct was unlawful in the situation that he confronted.'" *Id.*
(quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  However, the Court "must consider the
right asserted 'not as a broad general proposition, but in a particularized sense so that the
contours of the right are clear.'" *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012));
*see also  Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2015) ("[C]ourts [must] not . . . define
clearly established law at a high level of generality, since doing so avoids the crucial question
whether the official acted reasonably in the particular circumstances that he or she faced."
(citations and ellipsis omitted)).  For instance, a plaintiff cannot broadly claim a "well-
established and protected right . . . to be heard before being slandered and defamed." *McGinnis*,
65 F. Supp. 3d at 217; *accord Alexis*, 44 F. Supp. 2d at 39 (similar).  Although courts "do not
require a case directly on point, . . . existing precedent must have placed the . . . constitutional
question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011); *see also O'Donnell*,
148 F.3d at 1142 ("[I]n the light of preexisting law[,] the unlawfulness must be apparent."
(quotation marks omitted)).  The precedent that matters for qualified immunity purposes is
"cases from the Supreme Court and [the D.C. Circuit], and, if neither provides an
answer, . . . cases from other courts exhibiting a consensus view." *Fenwick v. Pudimott*, 778
F.3d 133, 138 (D.C. Cir. 2015) (quotation marks omitted).

Here, the particularized right at issue is a former at-will employee's claimed entitlement
to a name-clearing hearing from the head of his former employer, before the latter may respond
publicly to the employee's press statements about the reasons for his termination.  Not only was
"the unlawfulness" of Chairman Gowdy's conduct far from "apparent" under controlling law
extant in October 2015, *O'Donnell*, 148 F.3d at 1142, just the opposite was true, *see generally*

*supra* Argument, Part II.C.1-4.  Qualified immunity therefore also bars Count V against

Chairman Gowdy.

### III.   BOTH COUNTS IV AND V MUST BE DISMISSED BECAUSE THEY NECESSARILY IMPLICATE LEGISLATIVE MATTERS THAT ARE PRIVILEGED UNDER THE SPEECH OR DEBATE CLAUSE.

The merits of both of Mr. Podliska's claims against Chairman Gowdy hinge on the truth

or falsity of the Chairman's statements about Mr. Podliska's poor job performance as a

congressional investigator.  Mr. Podliska shoulders the ultimate burden of proving the alleged

falsity of those statements.  *See Codd*, 429 U.S. at 627 (plaintiff must show statements

"substantially false" to implicate liberty interest); *Doe*, 753 F.2d at 1108 n.15 (similar);

*Kendrick*, 659 A.2d at 819 ("[I]n a defamation case the plaintiff has the burden of proving that

the challenged statements are both false and defamatory.").  Chairman Gowdy, as the defendant,

potentially would shoulder the burden of disputing Mr. Podliska's proof to avoid liability.  *See,

e.g.*, Fed. R. Civ. P. 56(a).

As the Committee explains in its Memorandum of Points and Authorities, however,

Mr. Podliska cannot dispute his failings as a congressional investigator without inquiring into

legislative activities absolutely privileged by the Speech or Debate Clause, U.S. Const. art. I, § 6,

cl. 1.  *See generally* Comm. Mem. at pp. 7-21; *Fields*, 459 F.3d at 16 (where lawsuit questions

"conduct part of or integral to the legislative process," "the action most likely must be

dismissed"); *cf. Howard v. Office of Chief Administrative Officer of U.S. House of

Representatives*, 720 F.3d 939, 955 (D.C. Cir. 2013) (finding dismissal not warranted just

"because [plaintiff] may face difficulties in proving her case without delving into protected

legislative activities").  Yet even if Mr. Podliska somehow could show the alleged falsity of

Chairman Gowdy's statements without inquiring into or divulging privileged legislative matters,

Chairman Gowdy could not defend himself without "being forced to produce . . . evidence of

legislative activities," which the Speech or Debate Clause also forbids. *Howard*, 720 F.3d at 955 (Kavanaugh, J., dissenting); *accord United States v. Rostenkowksi*, 59 F.3d 1291, 1303 (D.C. Cir. 1995) (recognizing that immunity under Speech or Debate Clause implicated where proof of legislative acts "is necessary" to defense); *United States v. Swindall*, 971 F.2d 1531, 1546 (11th Cir. 1992) (Speech or Debate Clause immunity implicated where defendant cannot rebut evidentiary inference without "justify[ing] his legislative actions").

Under these circumstances, where "the defendant will be unable to adequately rebut the plaintiff's assertions without revealing privileged information, . . . the plaintiff's Fifth Amendment claim cannot go forward." *Edmonds v. U.S. Dep't of Justice*, 323 F. Supp. 2d 65, 80 (D.D.C. 2004), *aff'd*, 161 F. App'x 6 (D.C. Cir. 2005). On this basis alone, Mr. Podliska's claims against Chairman Gowdy must be dismissed.

## CONCLUSION

For the reasons stated above, the Court should dismiss Mr. Podliska's claims against Chairman Gowdy (Counts IV and V) with prejudice and without leave to amend.

Respectfully submitted,

KERRY W. KIRCHER, D.C. Bar No. 386816
General Counsel
WILLIAM PITTARD, D.C. Bar No. 482949
Deputy General Counsel
TODD B. TATELMAN, VA Bar No. 66008
Senior Assistant Counsel
ELENI M. ROUMEL, SC Bar No. 75763
Assistant Counsel
 */s/ Isaac B. Rosenberg*
ISAAC B. ROSENBERG, D.C. Bar No. 998900
Assistant Counsel
KIMBERLY HAMM, D.C. Bar No. 1020989
Assistant Counsel
SARAH K. CURRAN (Admitted to MD Bar)
Staff Attorney

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
Phone: (202) 225-9700
Fax:    (202) 226-1360
isaac.rosenberg@mail.house.gov

*Counsel for Defendant the Honorable Trey Gowdy,*
*Chairman of the Select Committee on the Events*
*Surrounding the 2012 Terrorist Attack in Benghazi*

February 5, 2016

**APPENDIX**

1.   Daily Kos, *(Updated): Republican Staffer on Benghazi Committee Admits Probe of Clinton Politically Motivated* (Oct. 10, 2015, 4:09 p.m.), http://www.dailykos.com/story/2015/10/10/1430514/-Breaking-Republican-Staffer-On-Benghazi-Committee-Admits-Probe-of-Clinton-Politically-Motivated (last visited Feb. 5, 2016) ("Podliska alleges that the committee's staff director told him he was fired for three reasons:  using work email to send a social invitation to colleagues, assigning an 'unauthorized project' to an intern and allegedly putting classified information on an unclassified system.  Podliska, an intelligence officer who was hired for his expertise with the intelligence community, strongly denies the latter.  He also disputes the legitimacy of the other two reasons cited to him by the committee, in particular assigning any 'unauthorized projects' to interns.").

2.   Beth Ethier, *House Benghazi Staffer Says He Was Fired for Complaining About Hillary Obsession*, Slate: The Slatest (Oct. 10, 2015, 7:17 p.m.), http://www.slate.com/blogs/the_slatest/2015/10/10/major_bradley_podliska_benghazi_committee_investigator_says_he_was_fired.html (last visited Feb. 5, 2016). ("The reasons given for his firing, Podliska told Tapper, don't add up:  'Podliska alleges that the committee's staff director told him he was fired for three reasons:  using work email to send a social invitation to colleagues, assigning an 'unauthorized project' to an intern and allegedly putting classified information on an unclassified system.  Podliska, an intelligence officer who was hired for his expertise with the intelligence community, strongly denies the latter.  He also disputes the legitimacy of the other two reasons cited to him by the committee, in particular assigning any 'unauthorized projects' to interns.'").

3.   The Guardian, *Fired Benghazi Investigator Says GOP-Led House Committee Is Partisan* (Oct. 10, 2015, 7:19 p.m.), http://www.theguardian.com/us-news/2015/oct/10/benghazi-investigation-hillary-clinton-fired-employee (last visited Feb. 5, 2016) ("Podliska was fired after 10 months on the committee.  He disputed what he said were the reasons given for his termination:  using work email to send a social invitation to colleagues, assigning an 'unauthorized project' to an intern and allegedly putting classified information on an unclassified system.").

4.   David Urbanski, *Fired Benghazi Investigator Says House Probe Is Partisan*, The Blaze (Oct. 10, 2015, 7:29 p.m.), http://www.theblaze.com/stories/2015/2010/10/fired-benghazi-investigator-says-house-probe-is-partisan/ (last visited Feb. 5, 2016) ("Podliska was fired after 10 months on the committee.  He disputed what he said were the reasons given for his termination:  using work email to send a social invitation to colleagues, assigning an 'unauthorized project' to an intern and allegedly putting classified information on an unclassified system.  He contended that another reason he was fired was for taking leave because of a deployment; such a dismissal would be illegal.").

5.      Reena Flores, *Fired Benghazi Investigator Says House Probe Is Partisan*, CBS News, Oct. 10, 2015 (7:51 p.m.), http://www.cbsnews.com/news/fired-benghazi-investigator-says-house-probe-is-partisan/ (last visited Feb. 5, 2016) ("According to a draft of the lawsuit obtained by the Times, Podliska was told by a majority staffer that he was being terminated for three reasons:  mishandling classified information, inviting colleagues to a reception sponsored by a trade group, and handing a project to an intern without proper authorization.  The ex-staffer denied to CNN that he ever mishandled classified information and argued against the legitimacy of the other reasons.").

6.      Patrick Howley, *Benghazi Committee: Spurned Staffer Lying About Why He Was Fired, Trying to 'Blackmail' Us*, Breitbart News (Oct. 10, 2015), http://www.breitbart.com/big-government/2015/10/10/benghazi-committee-spurned-staffer-lying-fired-trying-blackmail-us/ (last visited Feb. 5, 2016) ("Podliska said that a superior told him he was fired for using work email for social purposes, failing to secure classified information, and giving an intern an 'unauthorized assignment' to do.  Podliska denied to CNN that he handled classified information on a system that was not classified, and also denied the 'unauthorized assignment' bit.").

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 5, 2016, I electronically filed the foregoing Motion of

Defendant the Honorable Trey Gowdy to Dismiss Counts IV and V of the Complaint

("Motion"), and the accompanying Memorandum of Points and Authorities in Support of the

Motion, via the CM/ECF system of the U.S. District Court for the District of Columbia, which I

understand caused service on all registered parties.

*/s/ Isaac B. Rosenberg*
Isaac B. Rosenberg
